IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| GREEN GARDEN PRODUCE, LLC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Court No. 1:24-cv-00114 <br><br> Before: _____, <br> Judge |

## COMPLAINT

Plaintiff Green Garden Produce, LLC, ("Plaintiff" or "Green Garden"), by and through its undersigned counsel, alleges and states as follows:

### ADMINISTRATIVE DETERMINATION TO BE REVIEWED

1. Plaintiff, Green Garden, seeks review of the final affirmative circumvention determination issued by the International Trade Administration ("ITA") of the U.S. Department of Commerce ("Commerce") in the Circumvention Inquiry on the Antidumping Duty Order on Fresh Garlic from the People's Republic of China that determined that small and large garlic chunks imported by Plaintiff are merchandise altered in form or appearance in such minor aspects that they should be included within the scope of Antidumping Duty Order A-570-831 pursuant to section 781(c) of the Tariff Act of 1930, as amended (the "Tariff Act"), 19 U.S.C. § 1677j(c), and 19 C.F.R. § 351.226(j). The affirmative final determination was published in the Federal Register on June 13, 2024. See Fresh Garlic From the People's Republic of China: Affirmative Final

1

Determination of Circumvention of the Antidumping Duty Order, 89 Fed. Reg. 50256 (June 13, 2024) ("Final Determination").

## JURISDICTION

2. This action is filed pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(ii) and 1516a(a)(2)(B)(vi). The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c).

## STANDING

3. Plaintiff is an importer of small and large garlic chunks from China. Small and large garlic chunks were made subject to the antidumping duty order on fresh garlic products from China (A-570-831) through the Circumvention Determination. Plaintiff participated in the Commerce proceeding that resulted in the Circumvention Determination. Therefore, Plaintiff is an interested party as described in Section 771(9)(A) of the Tariff Act, 19 U.S.C. § 1677(9)(A), and accordingly have standing to bring this action under 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

## TIMELINESS OF ACTION

4. Section 516A(a)(2)(a)(ii) of the Tariff Act requires that, in actions contesting a determination by Commerce pursuant to 516A(a)(2)(B)(vi), the summons must be filed within thirty (30) days after the date of mailing of the determination. 19 U.S.C. § 1516a(a)(2)(A)(ii). Rather than mail the Circumvention Determination, Commerce provided notice through publication in the ITA's ACCESS portal on June 10, 2024, and publication in the Federal Register on June 13, 2024. See Circumvention Determination, 89 Fed. Reg. 50256.

5. This action was timely commenced within thirty (30) days of the date of publication of Commerce's Circumvention Determination through the filing of a summons on July 8,

2024. This Complaint therefore is timely filed as it is filed within thirty (30) days of the filing of the summons, pursuant to 19 U.S.C. § 1516a(a)(2)(A)(ii) and pursuant to Rules 3(a)(2) and 6(a) of this Court.

## HISTORY OF THE ADMINISTRATIVE PROCEEDINGS

6. On February 16, 2023, pursuant to section 781(c) of the Tariff Act, (19 U.S.C. § 1677j(c)) and 19 CFR 351.226(c), the Fresh Garlic Producers Association and its individual members (collectively "Petitioners") filed a circumvention inquiry request alleging that small and large garlic chunks were circumventing the Antidumping Duty Order: Fresh Garlic From the People's Republic of China, 59 Fed. Reg. 59209 (Nov. 16, 1994) ("the Order") and, accordingly, should be included within the scope of the Order. See Petitioners' Letter, Fresh Garlic from the People's Republic of China – Petitioners' Request for Circumvention Ruling Pursuant to Section 781(c) of the Tariff Act of 1930, as Amended, dated February 16, 2023 ("Petitioners' Circumvention Request").

7. The circumvention inquiry request was submitted in the course of a scope inquiry initiated following the filing of a Scope Ruling Application by Plaintiff on September 23, 2022. See Green Garden's Letter, "Scope Ruling Application," dated September 23, 2022 ("Scope Ruling Request").

8. On March 17, 2023, Commerce deferred the decision to initiate this circumvention inquiry until the ongoing scope inquiry regarding large and small garlic chunks imported by Plaintiff was complete. See Memorandum, Fresh Garlic from the People's Republic of China: Extension of Time to Determine Whether to Initiate Circumvention Inquiry, dated March 17, 2023.

3

9. On April 13, 2023, Commerce officials held a videoconference and in-person meeting with counsel to the petitioners regarding their February 16, 2023, request that Commerce conduct a minor alterations circumvention inquiry. See Memorandum, <u>Meeting with Petitioners' Counsel</u>, dated April 13, 2023.

10. The final scope ruling, issued on June 1, 2023, and served on June 13, 2023, determined that the small and large garlic chunks imported by Plaintiff from China are outside the scope of the Order A-570-831. <u>See</u> Memorandum, <u>Antidumping Duty Order on Fresh Garlic from the People's Republic of China: Final Scope Ruling on Green Garden Produce's Large and Small Garlic Chunks</u>, dated June 1, 2023 ("Final Scope Ruling"); <u>see</u> <u>also</u> <u>Notice of Scope Rulings</u>, 88 Fed. Reg. 60434, 60434 (Sept. 1, 2023).

11. The scope language of the Order reads as follows:

> The products subject to this antidumping duty order are all grades of garlic, whole or separated into constituent cloves, whether or not peeled, fresh, chilled, frozen, provisionally preserved, or packed in water or other neutral substance, but not prepared or preserved by the addition of other ingredients or heat processing. The differences between grades are based on color, size, sheathing and level of decay.
>
> The scope of this order does not include: (a) Garlic that has been mechanically harvested and that is primarily, but not exclusively, destined for non-fresh use; or (b) garlic that has been specially prepared and cultivated prior to planting and then harvested and otherwise prepared for use as seed.

<u>See</u> the Order, 59 Fed. Reg. at 59209.

12. On June 1, 2023, Commerce initiated the circumvention inquiry of the antidumping duty (AD) Order on fresh garlic from China based on the allegations filed by the Petitioners. See <u>Fresh Garlic from the People's Republic of China: Initiation of Circumvention Inquiry on the Antidumping Duty Order</u>, dated June 1, 2023.

4

13. On July 10, 2023, Plaintiff filed timely comments arguing that their small and large garlic chunks should be ruled outside the scope of the order on the basis of no minor alteration and because they are expressly excluded from the scope because they are preserved by the addition of another ingredient – citric acid. See <u>Fresh Garlic from the People's Republic of China, Case No. A-570-831 Green Garden Produce LLC's Comments to Fresh Garlic Producers Association's Request for Circumvention Inquiry</u>, dated July 10, 2023, at 7-8 ("Green Garden's Circumvention Inquiry Comments").

14. In Green Garden's Circumvention Inquiry Comments, Plaintiff cited numerous authorities, such as: (1) Customs Ruling N262027, which confirms that garlic chunks coated with citric acid are properly classified as "vegetables prepared or preserved otherwise than by vinegar or acetic acid," (see Green Garden's Circumvention Inquiry Comments, at 8-9, Exhibit 1); (2), the Food and Drug Administration's ("FDA") definition of "preservative" (see Exhibit 9 to the Scope Ruling Request attached to Green Garden's Circumvention Inquiry Comments as Exhibit 1);, and (3) a scientific paper stating that one of the most prominent preservatives used in food preparation is citric acid (see Exhibit 10 to the Scope Ruling Request attached to Green Garden's Circumvention Inquiry Comments as Exhibit 1). The record is clear that Plaintiff informed Commerce of the use of citric acid to preserve the small and large garlic chunks at issue considering that Plaintiff specifically cited Customs Ruling N262027 to demonstrate the usage, in addition to providing FDA documentation and the scientific article to support its argument as to the purpose of the citric acid.

15. Commerce issued questionnaires to Fenjun Foodstuff Co., Ltd. ("Fenjun") and Qingdao Deeshenghengxin Food Co., Ltd. ("Hengxin") on July 19, 2023. On August 23, 2023,

Fenjun and Hengxin submitted their answers to the initial questionnaires. I Love Produce LLC ("I Love Produce"), a manufacturer, producer, or wholesaler in the United States of a domestic like product, filed its rebuttal comments as an interested party on September 1, 2023. Following a request from Plaintiff, Fenjun, and Hengxin, Commerce found that I Love Produce's comments focused on Green Garden's Circumvention Inquiry Comments submitted on July 10, 2023, not the questionnaire responses submitted by Fenjun and Hengxin, and were thus untimely. See Letter, <u>Fresh Garlic from the People's Republic of China: Rejection of I Love Produce's Untimely Rebuttal Comments</u>, dated September 14, 2023; Memorandum, <u>Fresh Garlic from the People's Republic of China: Rejection Memo</u>, dated September 14, 2023. I Love Produce's comments were struck from the record. Id.

16. On November 14, 2023, Commerce issued its preliminary determination on the anti-circumvention inquiry. See <u>Fresh Garlic From the People's Republic of China: Preliminary Affirmative Determination of Circumvention</u>, 88 Fed. Reg. 77959 (November 14, 2023) ("Preliminary Determination"). On December 5, 2023, Plaintiff presented its comments on the Preliminary Determination and once again asserted that the garlic chunks were preserved using citric acid. See <u>Fresh Garlic from the People's Republic of China (A-570-831): Green Garden Produce, LLC's Comments on Commerce's Preliminary Affirmative Determination of the Circumvention for Small and Large Garlic Chunks</u>, dated December 5, 2023, at 4-7 ("Green Garden's Comments on the Preliminary Determination"). In both the Final Scope Ruling and the Preliminary Determination, Commerce failed to address Plaintiff's argument that the garlic in question is preserved by the addition of another ingredient. Id. at 4; Memorandum,

<u>Antidumping Duty Order on Fresh Garlic from the People's Republic of China: Final Scope Ruling on Green Garden Produce's Large and Small Garlic Chunks</u>, dated June 1, 2023 ("Final Scope Ruling"); Preliminary Determination; Final Scope Ruling.

17. On June 7, 2024, Commerce issued its final determination, rejecting Plaintiff's arguments and finding that there was insufficient record evidence to show that the garlic was preserved through the addition of citric acid and that the slicing of the garlic constituted a minor alteration for the purposes of the circumvention inquiry. <u>See</u> Memorandum, <u>Issues and Decision Memorandum for the Final Affirmative Circumvention Determination of the Antidumping Duty Order on Fresh Garlic from the People's Republic of China</u>, dated June 7, 2024, at 6-7, 9-10 ("Final Determination Memo").

## STATEMENT OF CLAIMS

### Count I

18. Plaintiff hereby realleges and incorporates by reference paragraphs 1-17.

19. Commerce unlawfully expanded the scope of the antidumping order A-570-831 on fresh garlic from China by contradicting an express exclusion. The small and large garlic chunks imported by Plaintiff are preserved by the addition of citric acid. <u>See</u> Green Garden's Circumvention Inquiry Comments, at 7-10. The scope of the antidumping order expressly excludes garlic "prepared or preserved by the addition of other ingredients or heat processing." <u>See</u> the Order, 59 Fed. Reg., at 59209.

20. Section 781 of the Tariff Act, 19 U.S.C. § 1677j, does not provide a statutory basis for expanding the scope of the Order to include products explicitly excluded by the plain language of the scope. <u>Wheatland Tube Co. v. United States</u>, 161 F.3d 1365, 1371 (Fed. Cir. 1998) ("Section 1677j(c) does not apply to products unequivocally excluded from the

order in the first place."); Deacero S.A. de C.V. v. United States, 817 F.3d 1332, 1338 (Fed. Cir. 2016) ("In Wheatland, we held that minor alteration inquiries are inappropriate when the antidumping duty order expressly excludes the allegedly altered product.").

21. Commerce's Final Determination hinges on a purported omission of evidence in the record regarding citric acid as a preservative, but this is inaccurate. See Final Determination Memo, at 6 ("Commerce [. . .] finds that the respondents have not made any comment on the function or purpose of citric acid in the production process of small and large garlic chunks."). However, Plaintiff timely submitted comments explaining the preservative use of citric acid in its July 10, 2023, submission. See Green Garden's Circumvention Inquiry Comments, at 7-10, Exhibit 1.

22. The Final Determination Memo states that Green Garden, Fenjun, and Hengxin alleged that "Fenjun and Hengxin's questionnaire responses contain no information about the purpose or function of citric acid." See Final Determination Memo, at 6. While it is true that Plaintiff and the questionnaire respondents, Fenjun and Hengxin, put forth this argument, it was proffered as a reason to reject I Love Produce's September 1, 2023, comments on the grounds of untimeliness since they rebutted arguments contained in Green Garden's Circumvention Inquiry Comments, not in the questionnaires themselves. See Green Garden, Fenjun, and Hengxin's Letter, Request to Reject and Strike "Fresh Garlic from the People's Republic of China: - Comments on Questionnaire Response of Fenjun, Hengxin, dated September 5, 2023 ("Request to Reject I Love Produce's Comments"). The deadline for filing comments to Green Garden's Circumvention Inquiry Comments had already passed. It is categorically untrue that "[i]t is only after arguments to the contrary made prior to the Preliminary Determination were struck from

8

the record that Green Garden claimed that citric acid is used to preserve small and large garlic chunks." See Final Determination Memo, at 6 (Commerce stating that Green Garden first put forth its argument about preservation after I Love Produce argued to the contrary); see also Green Garden's Circumvention Inquiry Comments, at 7-10 (wherein Green Garden presented its argument related to the addition of citric acid), Exhibit 1 (Green Garden's Scope Ruling Request wherein Green Garden discussed the use of citric acid as a preservative, especially on p. 12 of the Scope Ruling Request [p. 36 of the file submitted as Green Garden's Circumvention Inquiry Comments] and Exhibits 9 and 10 to the Scope Ruling Request [pp. 96-118 of the file submitted as Green Garden's Circumvention Inquiry Comments]).

23. Plaintiff informed Commerce that the use of the citric acid was for preservation in a timely manner. This matter is in the record. See id. Commerce based its Final Determination upon a lack of record evidence from Fenjun and Hengxin regarding the argument that the addition of citric acid as a preservative excludes Plaintiff's large and small garlic chunks from the scope, but the Final Determination ignores the record evidence timely filed by Plaintiff. See Final Determination Memo, at 6.

24. Because Commerce controls the questionnaire and the record, any perceived inadequacy of evidence is due to Commerce's own failure to request more information, considering Plaintiff included this argument and supplied sufficient evidence regarding the matter of the addition of citric acid. See, e.g., Green Garden's Circumvention Inquiry Comments, at 7-10, Exhibit 1.

25. Commerce's decision effectively misconstrues Plaintiff's argument that I Love Produce's September 1, 2023 comments were untimely because they addressed issues not discussed

9

in Fenjun's and Hengxin's questionnaires as evidence that Plaintiff has not provided sufficient record evidence as to the preservative function of the addition of citric acid to its small and large garlic chunks. Plaintiff is not at fault and should not be prejudiced for Commerce's failure to request more information if the evidence offered by Plaintiff was perceived to be insufficient. I Love Produce's rebuttal comments which specifically discuss information stricken from the record are the only pieces of evidence in the record contesting the use of citric acid as a preservative. Because it is highly inappropriate to utilize stricken materials as though they are in the record, it is uncontradicted in the actual record that citric acid is used as an additional ingredient for preservation.

26. Commerce's Final Determination is not supported by substantial evidence because the record contains evidence of Green Garden's addition of an ingredient – citric acid – to preserve the large and small garlic chunks.

27. Since Plaintiff's products are excluded from the scope of the Order due to the addition of citric acid as a preservative, they are products expressly excluded from the antidumping duty order.

28. Commerce cannot, under Section 781 of the Tariff Act, 19 U.S.C. § 1677j, expand the scope of the Order to include Green Garden's small and large garlic chunks that are prepared or preserved by the addition of other ingredients and therefore explicitly excluded.

29. Thus, the Final Determination by Commerce in its circumvention inquiry is not in accordance with the law, it is inequitable, and, for those reasons, it should be reversed and remanded.

**Count II**

30. Plaintiff hereby realleges and incorporates by reference paragraphs 1-17.

31. Commerce failed to adequately analyze the record evidence in this case as it pertains to the factors considered in a minor alterations circumvention inquiry.

32. First in its Preliminary Determination and then in its Final Determination (p. 13), Commerce determined that that Plaintiff's small and large garlic chunks only differ by the additional step of trimming/dicing the garlic and that "the physical characteristics of the inquiry merchandise are the same as that of in-scope fresh garlic, except in terms of their size." See Final Determination, at 13; see also Preliminary Determination 5-6. However, in this matter, it is precisely the size of the product that determines its uses and distinguishes these products from in scope products. Commerce failed to properly consider the effect the change in size has on the marketability of the product and on their end uses. See Green Garden's Circumvention Inquiry Comments, at 13-15; see also Final Determination, at 13; Preliminary Determination, at 5-6.

33. Additionally, Commerce failed to adequately consider the record evidence regarding the end uses of the in-scope products and the large and small garlic chunks imported by Plaintiff. Without competent record evidence or an adequate explanation in their memoranda, Commerce appears to consider all cooking uses of garlic to be substantially similar, despite the myriad uses garlic may have in cooking, and the fact that "chunking" the garlic changes the end use possibilities and the expectations of the end consumer.

34. Although there may be some overlaps, the fact that the in-scope merchandise is used as a food product and for seasoning is insufficient on its own to conclude that the expectations of ultimate consumers and use of the merchandise is the same just because the large and

small garlic chunks are also further processed to make downstream products used for seasoning. See Green Garden's Circumvention Inquiry Comments, at 15-17; see also Final Determination, at 13; Preliminary Determination, at 6.

35. In Green Garden's Circumvention Inquiry Comments, Plaintiff argued that the large and small garlic chunks are "sold predominantly to institutional users in 35 to 50-pound bulk bags" to institutional users that are distinct from the wholesalers/distributors who purchase the in-scope garlic to then sell to supermarkets, grocery stores, and restaurants. See Green Garden's Circumvention Inquiry Comments, at 17-19. Plaintiff made it clear that it "does not engage in distribution and retailing of garlic for general consumer use." Id. at 19. Commerce does not address the distinctions addressed in Plaintiff's arguments in its memoranda. See Preliminary Determination, at 6; Final Determination, at 13-14.

36. As to cost of modification, Plaintiff argued that the cost of modification to produce large and small IQF garlic chunks was about 13% and 17% of the cost of producing them, respectively, therefore, the cost of modification relative to the total value of imported merchandise was significant. See Green Garden's Circumvention Inquiry Comments, at 19. Fenjun and Hengxin's questionnaire responses also support such statement. However, because Green Garden's large and small IQF garlic chunks were made from low quality garlic cloves, Green Garden's garlic chunks were cheaper than garlic cloves. See Id. However, Commerce found that the factor of cost of modification supported a finding that the inquiry merchandise was minorly altered because the lower grade garlic used for diced garlic provides no added value to the merchandise. See Preliminary Determination, at 7. Commerce ignores the record evidence that modification added value to the low-quality garlic cloves.

37. Commerce's decision goes against the weight of the evidence and omits key factors that should have been considered more carefully, therefore resulting in a decision not in accordance with the law, therefore, it should be reversed and remanded.

## **PRAYER FOR RELIEF**

WHEREFORE, for all the foregoing reasons, Plaintiff respectfully requests that this Court:

1) hold that Commerce's Final Determination is unsupported by record evidence and is otherwise not in accordance with law; and,

2) remand the Final Determination with instructions to issue a new determination consistent with the Court's decision; and

3) provide such other relief as this Court deems just and proper.

Respectfully submitted,

**LIANG + MOONEY, PLLC**
/s/ Shanshan Liang
Shanshan Liang, Esq.
Fla. Bar No. 112991
2104 Delta Way, Suite #1
Tallahassee, FL 32303
Telephone: (850) 893-0670
Email: sliang@customscourt.com
*Counsel for Green Garden Produce, LLC*