# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

<table>
<tr><td>

**GREEN GARDEN PRODUCE, LLC,**
     ***PLAINTIFF***

**v.**

**UNITED STATES,**
     ***DEFENDANT.***

</td><td>

**Ct. No. 1:24-cv-00114-MMB**

</td></tr>
</table>

## PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD PURSUANT TO RULE 56.2

Pursuant to Rule 56.2 of the Rules of this Court, Plaintiff Green Garden Produce, LLC ("Green Garden"), by and through its undersigned counsel, respectfully moves this Court for judgment on the agency record in favor of Green Garden and for an order remanding to the United States Department of Commerce's ("Commerce") to issue a decision that small and large garlic chunks imported by Plaintiff are not subject to the Antidumping Duty Order on Fresh Garlic Products from China (A-570-831).

For the reasons fully set forth in the accompanying Brief, herein incorporated by reference, Commerce's decision is an unlawful

expansion of the scope of an antidumping order, goes against the weight of evidence on the record,  and is in disaccord with the law. Plaintiff hereby moves that the Court grant this motion for judgment on the agency record.

DATED: January 15, 2025

Respectfully Submitted,

**LIANG + MOONEY, PLLC**
/s/ Shanshan Liang
Shanshan Liang, Esq.
Fla. Bar No. 112991
2104 Delta Way, Suite #1
Tallahassee, FL 32303
Telephone: (850) 893-0670
Email: sliang@customscourt.com
*Counsel for Green Garden Produce, LLC*

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **GREEN GARDEN PRODUCE, LLC,** | **Ct. No. 1:24-cv-00114-MMB** |
| *PLAINTIFF* | |
| **v.** | |
| **UNITED STATES,** | |
| *DEFENDANT.* | |

*BRIEF IN SUPPORT OF PLAINTIFF'S RULE 56.2*

*MOTION FOR JUDGMENT UPON THE AGENCY RECORD*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..........................................................3

**I. Administrative Determination Sought to be Reviewed.............5**

**II. Issues of Law Presented..................................................5**

**III. Statement of Relevant Facts.........................................8**

**IV. Legal Argument...........................................................14**

a. Standard of review and summary of arguments................................14

b. Commerce acted ultra vires by expanding the scope of the Order..... 15

c. Commerce's affirmative circumvention determination is not based on substantial evidence..........................................................20

    1. Commerce's decision on citric acid is not supported by substantial evidence............................................... 22

    2. Commerce's minor alterations decision is not supported by substantial evidence.......................................... 34

        i. Commerce ignored evidence that in-scope garlic has different end users and channels of distribution................. 35

        ii. Commerce ignored evidence of a significant value added through modification............................................ 37

**V. Conclusion – Request for Court Order and Relief Sought...... 43**

# TABLE OF AUTHORITIES

## Cases

*Baroque Timber Industries (Zhongshan) Co., Ltd. v. U.S.*,
  971 F.Supp.2d 1333 (CIT 2014).......................................................21

*Deacero S.A. de C.V. v. United States*,
  817 F.3d 1332 (Fed. Cir. 2016)..............................................18, 19

*Downhole Pipe & Equip., L.P. v. United States*,
  776 F.3d 1369 (Fed. Cir. 2015)...................................................21

*Ericsson GE Mobile Communications, Inc. v. United States*,
  60 F.3d 778 (Fed.Cir.1995)............................................................16

*Koyo Seiko Co. v. United States*,
  92 F.3d 1162 (Fed. Cir. 1996).......................................................23

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983)..........................................................................21

*Novosteel SA v. United States*,
  284 F.3d 1261  (Fed. Cir. 2002).....................................................21

*Shenzhen Xinboda Indus. Co. v. United States*,
  279 F. Supp. 3d 1265 (CIT 2017)..................................................21

*Smith Corona Corp. v. United States*,
  915 F.2d 683 (Fed.Cir.1990).........................................................16

*Wheatland Tube Co. v. United States*,
  161 F.3d 1365 (Fed. Cir. 1998)..............................................15, 16

## Statutes

19 U.S.C. § 1677j...........................................................5, 8, 15, 16, 17

19 C.F.R. § 351.308.......................................................................31

19 C.F.R. § 351.226.....................................................................5, 8, 13, 43

19 U.S.C. § 1516a(b)(1)(B)(i)........................................................14

## Other Authorities

*Antidumping Duty Order: Fresh Garlic From the People's Republic of China,*
    59 Fed. Reg. 59209 (Nov. 16, 1994)..........................................5, 6, 8

*Fresh Garlic from the People's Republic of China: Initiation of Circumvention Inquiry on the Antidumping Duty Order,*
    88 Fed. Reg.  37510 (Jun. 1, 2023)......…………….……………..10

*Fresh Garlic From the People's Republic of China: Preliminary Affirmative Determination of Circumvention,*
    88 Fed. Reg. 77959 (November 14, 2023) ………………..............12

*Notice of Scope Rulings: A-570-831: Fresh Garlic From China,*
    88 Fed. Reg. 60434, 60434 (Sept. 1, 2023).......................................9

*Fresh Garlic From the People's Republic of China: Affirmative Final Determination of Circumvention of the Antidumping Duty Order,*
    89 Fed. Reg. 51495 (Jun. 7, 2024)...................................................13

## I.    Administrative Determination Sought to be Reviewed

Plaintiff Green Garden Produce, LLC ("Green Garden" or
"Plaintiff") challenges the United States Department of Commerce's
("Commerce") Affirmative Final Determination of Circumvention of the
Antidumping Duty Order ("Final Circumvention Determination") that
small and large garlic chunks imported by Plaintiff (the "Inquiry
Merchandise") are merchandise altered in form or appearance in such
minor aspects that they should be included within the scope of
Antidumping Duty Order: Fresh Garlic from the People's Republic of
China (A-570-831), 59 Fed. Reg. 59209 (November 16, 1994) pursuant to
section 781(c) of the Tariff Act of 1930, as amended (the "Tariff Act"), 19
U.S.C. § 1677j(c), and 19 C.F.R. § 351.226(j). *See* Appx1016-1037.

## II.   Issues of Law Presented

*In casu*, there are two questions of law: 1) whether Commerce
acted *ultra vires* by expanding the scope of Antidumping Duty Order
A-570-831 (the "Order"), and 2) whether Commerce's Final
Circumvention Determination is supported by substantial evidence
from the administrative record.

The first question should be answered in the affirmative: Commerce expanded the scope of the Order to cover goods that were expressly excluded from the scope, which is an act outside of its statutory authority. Namely, Commerce used a minor alterations analysis to determine that the Inquiry Merchandise - garlic chunks preserved by the addition of citric acid - is within the scope of the Order, although garlic "prepared or preserved by the addition of other ingredients or heat processing" is expressly excluded from the scope. *See* 59 Fed. Reg. 59209 (November 16, 1994). Effectively, this determination is a veto of an express exclusion to the scope of the Order. It follows, then, that the determination is *ultra vires* because Commerce lacks the authority to expand the scope of an antidumping order to cover goods that are explicitly excluded.

The second question should be answered in the negative: Commerce's Final Circumvention Determination is not supported by substantial evidence because it ignores important issues, fails to consider evidence on the record, and improperly draws adverse inferences. Specifically, Commerce decided that there is insufficient

record evidence to support a finding that the Inquiry Merchandise are preserved by citric acid. *See* Appx1028.

However, evidence concerning citric acid preservation entered the record as early as Green Garden's Comments on Fresh Garlic Producers Association's Request for Circumvention Inquiry ("Circumvention Inquiry Comments"), which added the initial Scope Ruling Application and relevant arguments therein to the agency record. *See* Appx1049-1054, Appx1064, Appx1068-1069, Appx1071-1074, Appx1079, Appx1082, Appx1084, Appx1094-1095, Appx1146, Appx1153-Appx1159, *et al*.

Furthermore, Commerce inappropriately applied adverse inferences against Plaintiff and the questionnaire respondents in relying on Petitioners and I Love Produce's unsubstantiated arguments. Finally, Commerce dismissed, without consideration, important issues raised by Plaintiff concerning the marketability of the Inquiry Merchandise. Consequently, Commerce's Final Circumvention Determination is based on incomplete consideration of the administrative record and improper consideration of adverse inferences. As such, Commerce's Final Circumvention Determination is not based

on evidence adequate to support its conclusion and is therefore not

based on substantial evidence.

## III.    Statement of Relevant Facts

The scope language of *Antidumping Duty Order: Fresh Garlic*

*From the People's Republic of China* ("the Order") reads as follows:

> *The products subject to this antidumping duty order are all*
> *grades of garlic, whole or separated into constituent cloves,*
> *whether or not peeled, fresh, chilled, frozen, provisionally*
> *preserved, or packed in water or other neutral substance, but*
> *not prepared or preserved by the addition of other ingredients*
> *or heat processing. The differences between grades are based*
> *on color, size, sheathing and level of decay.*
>
> *The scope of this order does not include: (a) Garlic that has*
> *been mechanically harvested and that is primarily, but not*
> *exclusively, destined for non-fresh use; or (b) garlic that has*
> *been specially prepared and cultivated prior to planting and*
> *then harvested and otherwise prepared for use as seed.*

*See* 59 Fed. Reg. at 59209 (November 16, 1994).

On February 16, 2023, pursuant to section 781(c) of the Tariff Act

(19 U.S.C. § 1677j(c)) and 19 CFR 351.226(c), the Fresh Garlic

Producers Association and its individual members (collectively

"Petitioners") filed a circumvention inquiry request alleging that small

and large garlic chunks were circumventing the Order and, accordingly,

should be included within the scope of the Order. *See* Appx2031. The

circumvention inquiry request was submitted in the course of a scope inquiry initiated following the filing of a Scope Ruling Application by Plaintiff on September 23, 2022. *See* Appx1068.

On March 17, 2023, Commerce deferred the decision to initiate this circumvention inquiry until the ongoing scope inquiry regarding large and small garlic chunks imported by Plaintiff was complete. *See* Appx2224.

On June 1, 2023, the Final Scope Ruling on Green Garden Produce's Large and Small Garlic Chunks ("Final Scope Ruling") was issued, and it was served on June 13, 2023. The Final Scope Ruling determined that the small and large garlic chunks imported by Plaintiff from China are outside the scope of the Order A-570-831. *See* Appx1345; *see also Notice of Scope Rulings*, 88 Fed. Reg. 60434, 60434 (Sept. 1, 2023).

On June 1, 2023, Commerce initiated the circumvention inquiry of the Antidumping Duty Order on Fresh Garlic from China based on the allegations filed by the Petitioners. *See Fresh Garlic From the People's Republic of China: Initiation of Circumvention Inquiry on the*

*Antidumping Duty Order*, 88 Fed. Reg. 37510 (Jun. 8, 2023) and Appx2246-2248.

On July 10, 2023, Plaintiff timely filed Circumvention Inquiry Comments arguing that their small and large garlic chunks should be ruled outside the scope of the order on two basis: 1) they are not minorly altered and 2) they are expressly excluded from the scope because they are preserved by the addition of another ingredient – citric acid. *See* Appx1045, Appx1051.

In Green Garden's Circumvention Inquiry Comments, Plaintiff cited numerous authorities, such as: (1) Customs Ruling N262027, which confirms that garlic chunks coated with citric acid are properly classified as "vegetables prepared or preserved otherwise than by vinegar or acetic acid," (*see* Appx1052-1053, Appx1094-1095); (2), the Food and Drug Administration's ("FDA") definition of "preservative" (*see* Appx1140, Appx1146, Appx1148); and (3) a scientific paper stating that citric acid is one of the most prominent preservatives used in food preparation (*see* Appx1153-1154). Plaintiff informed Commerce of the use of citric acid to preserve the Inquiry Merchandise. *See* Appx1052. Plaintiff specifically cited Customs Ruling N262027 to demonstrate this

usage, in addition to providing FDA documentation and the scientific article to support its argument as to the purpose of the citric acid. *See* Appx1140, Appx1146, Appx1148, and Appx1153-1154.

On July 19, 2023, Commerce issued questionnaires to Fenjun Foodstuff Co., Ltd. ("Fenjun") and Qingdao Deeshenghengxin Food Co., Ltd. ("Hengxin") (collectively the "Inquiry Respondents"). *See* Appx2260, Appx2302. On August 23, 2023, Fenjun and Hengxin submitted their answers to the initial questionnaires.  *See* Appx2401, Appx1770.

On September 1, 2023, a manufacturer, producer, or wholesaler in the United States of a domestic like product, I Love Produce, LLC ("I Love Produce"), filed rebuttal comments to Inquiry Respondents' questionnaire answers. Following a request from Plaintiff and the Inquiry Respondents, Commerce found that I Love Produce's comments pertained to Green Garden's July 10, 2023 Circumvention Inquiry Comments, not the questionnaire responses submitted by the Inquiry Respondents, and were thus untimely. *See* Appx2490-2492. Because the time to respond to Green Garden's Circumvention Inquiry Comments had already expired, I Love Produce's untimely comments were stricken from the record. *Id.*

During the preceding scope ruling inquiry, Commerce said in its Preliminary Scope Ruling: "[w]e do not need to resolve whether the addition of citric acid in the production process results in the product being excluded from the scope of the *Order*, because we have already determined [the product] to be out-of-scope as described above." *See* Appx1320. Commerce's Preliminary Scope Ruling did not consider whether the Inquiry Merchandise was outside the scope of the Order by reason of preservation by the addition of citric acid. *See id.* Therefore Commerce needs to consider whether the preservation by the addition of citric acid results in the Inquiry Merchandise being expressly excluded from the scope of the Order, thus, the Inquiry Merchandise cannot be brought back to the scope of the Order through circumvention inquiry. Commerce did not do so in the Preliminary Determination.

On November 14, 2023, Commerce issued its preliminary determination on the anti-circumvention inquiry. *See* Appx1014-1015, *Fresh Garlic From the People's Republic of China: Preliminary Affirmative Determination of Circumvention*, 88 Fed. Reg. 77959 (November 14, 2023) ("Preliminary Determination"). Commerce preliminarily determined that the Inquiry Merchandise was

12

circumventing the order. *Id*. In its Preliminary Determination,
Commerce failed to consider Plaintiff's argument that the Inquiry
Merchandise is not subject to antidumping duties as it is expressly
excluded from the Order because it is preserved by the addition of citric
acid: it cited the *Wheatland* case which Plaintiff relied on in making the
citric acid preservation argument then immediately moved on to the
discussion of 351.226(j) factors. *See* Appx1009-1010.

On December 5, 2023, Plaintiff presented its comments on the
Preliminary Determination and once again asserted that the garlic
chunks were preserved using citric acid. *See* Appx2570, Appx2573-2576.
("Green Garden's Comments on the Preliminary Determination").

On June 7, 2024, Commerce issued its Final Circumvention
Determination. *See* 89 Fed. Reg. 51495 (Jun. 7, 2024). It found that
there was insufficient record evidence to show that the Inquiry
Merchandise was preserved through the addition of citric acid. *See*
Appx1022, Appx1026-1028. It also found that reducing in size of garlic
to produce the Inquiry Merchandise constituted a minor alteration. *See*
Appx1034.

Commerce addressed the issue of citric acid in its Final
Circumvention Determination in a quick fashion: "Commerce continues
to find that small and large garlic chunks are altered in minor respects,
because the record does not support a finding that the inquiry
merchandise is preserved by the addition of citric acid." *See*
Appx1024-1028. Commerce merely cited a lack of record evidence, in
complete disregard of replete arguments and evidence in the
Circumvention Inquiry Comments, Inquiry Respondents' questionnaire
responses, and Plaintiff's Comments on the Preliminary Determination.
*See* Appx1027-1028.

## IV.    Legal Argument

*a. Standard of review and summary of arguments*

Pursuant to 19 U.S.C. § 1516a(b)(1)(B)(i), determinations by
Commerce will be held unlawful when they are unsupported by
substantial evidence on the record or otherwise not in accordance with
the law. Commerce's Final Circumvention Determination should be held
unlawful because it is neither in accordance with the law, nor is it
supported by substantial evidence. First, the Final Circumvention
Determination is contrary to law because Commerce acted *ultra vires*

14

when it expanded the scope of the Order to cover the Inquiry

Merchandise, which is expressly excluded. Second, the Final

Circumvention Determination is not supported by substantial evidence

on the record because it ignores evidence that contradicts its findings,

ignores important issues, and improperly draws adverse inferences.

Therefore, Commerce's Final Circumvention Determination cannot be

upheld.

b. *Commerce acted ultra vires by expanding the scope of the Order*

19 U.S.C. § 1677j grants Commerce authority to conduct

anti-circumvention inquiries when in-scope merchandise may be

impliedly removed from the literal scope of an order via a minor

alteration. However, when a product is expressly excluded from the

scope of an order, an anti-circumvention inquiry "can only lead to an

absurd result." *Wheatland Tube Co. v. United States*, 161 F.3d 1365,

1371 (Fed. Cir. 1998). Such an inquiry would necessarily cause an order

to both *include* and *exclude* the same product. *Id*.

Consequently, anti-circumvention inquiries are only appropriate

when alterations would render a product impliedly excluded from the

scope of the order - that is, when the altered merchandise would no

longer fit the order's literal scope. When a product is expressly excluded from the scope, even through minor alterations, Commerce lacks the statutory basis to make an affirmative circumvention determination for that product; such a determination would be an impermissible expansion of the order. *See Id*. The *Wheatland* court says:

> (S)ection 1677j(c) includes within the scope of an antidumping duty order products that are so insignificantly changed from a covered product that they should be considered within the scope of the order even though the alterations remove them from the order's literal scope…It does not, however, abrogate the cases prohibiting changing or interpreting orders contrary to their terms… Section 1677j(c) does not to (sic) apply to products unequivocally excluded from the order in the first place.
>
> *Id*.

*See also Ericsson GE Mobile Communications, Inc. v. United States*, 60 F.3d 778, 782 (Fed.Cir.1995) (Commerce may interpret orders, but not change them.); *Smith Corona Corp. v. United States*, 915 F.2d 683, 686 (Fed.Cir.1990) (Commerce may not interpret orders contrary to their terms). Therefore, Commerce's anticircumvention inquiry on an expressly excluded product is *ultra vires*.

The facts of *Wheatland* are important to understanding the exact nature of this rule. In *Wheatland*, Commerce declined to conduct an

16

anti-circumvention inquiry, despite the protests of a petitioner. *See* 161

F.3d 1365. The order in question read as follows:

> *The scope is not limited to standard pipe and fence tubing, or those types of mechanical and structural pipe that are used in standard pipe applications. All carbon steel pipes and tubes within the physical description outlined above are included within the scope of this investigation, except line pipe, oil country tubular goods, boiler tubing, cold-drawn or cold-rolled mechanical tubing, pipe and tube hollows for redraws, finished scaffolding, and finished rigid conduit. Standard pipe that is dual or triple certified/stenciled that enters the U.S. as line pipe of a kind used for oil or gas pipelines is also not included in this investigation.*

*Id.* at 1367.

Six months after publication of the order, domestic producers

petitioned Commerce to conduct an anti-circumvention inquiry for

minor alterations. *Id.* at 1368. The domestic producers argued that

pipes used for standard pipe application were circumventing the order

by undergoing minor alterations in order to qualify as "line pipe," which

is expressly excluded. *Id.* Commerce disagreed, reasoning that "minor

alteration inquiries are inappropriate where the antidumping order

expressly excludes the allegedly altered product." *See Id.* at 1370. The

Federal Circuit upheld Commerce's actions as consistent with the limits

of its authority under Section 1677j(c). *Id* at 1371. The court found that

to accept the domestic producer's interpretation, and conduct an minor

alterations analysis, would be contrary to the terms of the order.

Therefore, it was not within Commerce's authority to conduct the

petitioned minor alteration analysis. *See Id*.

In a more recent case, *Deacero S.A. de C.V. v. United States*, the

Federal Circuit distinguished its decision in *Wheatland* while

nonetheless upholding its principles. 817 F.3d 1332 (Fed. Cir. 2016). In

*Deacero*, the scope of the order was as follows:

> *For purposes of this investigation, the merchandise covered*
> *by these investigations is certain hot-rolled, carbon steel and*
> *alloy steel products, in coils, of approximately round cross*
> *section, between 5.00 mm (0.20 inch) and 19.0 mm (0.75*
> *inch), inclusive, in solid cross-sectional diameter.*

*Id*. at  1334.

Commerce initiated an anti-circumvention inquiry to determine

whether steel wire rod of 4.75mm was circumventing the order via

minor alteration. *Id*. at 1335. Commerce made an affirmative

determination of circumvention.  *Id*. On appeal, the Court of

International Trade ("CIT") reversed and remanded to Commerce. *Id*.

The CIT's reasoning was based primarily on *Wheatland*, finding that

steel wire rod of 4.75mm was expressly excluded from the scope. *Id*. at

1336. On remand, Commerce subsequently returned a negative determination, which was upheld by the CIT. *Id*. On appeal, the Federal Circuit reversed, saying:

> *Unlike Wheatland, the duty order at issue contains no explicit exclusion of small-diameter steel wire rod. Although the scope of the duty order sets a cross-sectional range (5.00 mm to 19.00 mm), that cannot be read to expressly exclude for purposes of anti-circumvention inquiries all products outside that range.*

> *Id*. at 1338.

Consequently, the *Deacero* court found that Commerce's minor alterations inquiry was within Commerce's authority because the scope language contained an implied, not explicit, exclusion for the accused merchandise. *See Id*.

*In casu*, Commerce has used a minor alteration inquiry to determine that the Inquiry Merchandise is circumventing the scope of the Order. However, like the order in *Wheatland* which explicitly excluded line pipe, this Order explicitly excludes the Inquiry Merchandise: "The products subject to this antidumping duty order are all grades of garlic…*but not prepared or preserved by the addition of other ingredients*…" (Emphasis added). Furthermore, unlike in *Deacero*, where the specification "5.00mm to 19.00mm" was merely inclusive, the

specification "not prepared or preserved by the addition of other ingredients" expressly excludes all garlic preserved by the addition of other ingredients, thereby excluding the Inquiry Merchandise from the scope of the Order. Commerce itself admitted in its Preliminary Scope Ruling in this case that "the plain language of the scope excludes garlic that has been *prepared or preserved by the addition of other ingredients…*" *See* Appx1320.

Because garlic preserved by the addition of other ingredients is expressly excluded from the Order, it necessarily follows that a minor alteration inquiry on such a product is *ultra vires*. The Inquiry Merchandise is, in fact, prepared or preserved with the addition of other ingredients: citric acid. As such, it is explicitly excluded from the scope of the Order. Therefore, Commerce acted *ultra vires* in conducting a minor alteration inquiry. Ultimately, its affirmative determination of circumvention constitutes an unauthorized expansion of the scope of the Order, which cannot be allowed to stand.

*c. Commerce's affirmative circumvention determination is not based on substantial evidence*

The standard for substantial evidence demands "more than a mere scintilla" and that which a "reasonable mind might accept as adequate

to support a conclusion." *Downhole Pipe & Equip., L.P. v. United States*, 776 F.3d 1369, 1374 (Fed. Cir. 2015) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence also requires that: "Commerce's determinations must be based on actual evidence. Theory will not suffice. The Court of Appeals has underscored this principle, explaining that '[i]t is well established that speculation does not constitute 'substantial evidence.'" *Shenzhen Xinboda Indus. Co. v. United States*, 279 F. Supp. 3d 1265, 1305 (CIT 2017) (quoting *Novosteel SA v. United States*, 284 F.3d 1261, 1276 (Fed. Cir. 2002)). Moreover, "[a] determination cannot be considered reasonable if the agency has 'entirely failed to consider an important aspect of the problem' before it." *Baroque Timber Industries (Zhongshan) Co., Ltd. v. U.S.*, 971 F. Supp. 2d 1333 (CIT 2014) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

Here, Commerce's Final Circumvention Determination lacks substantial evidence for two reasons: 1) without addressing evidence provided by Plaintiff, Commerce concluded that there was insufficient evidence to find that Inquiry Merchandise is preserved by citric acid;

and 2) Commerce failed to consider the issue of how additional processing of the Inquiry Merchandise affects its marketability.

### 1. Commerce's decision on citric acid is not supported by substantial evidence.

Commerce's determination that the Inquiry Merchandise is not preserved by citric acid cannot be supported by substantial evidence. Commerce ignored evidence and improperly applied adverse inferences. Specifically, Commerce ignored all record evidence that the Inquiry Merchandise is produced by adding citric acid, which functions to preserve the garlic. This is a critical error because garlic that is preserved by the addition of ingredients is explicitly excluded from the scope of the Order. Under *Wheatland*, an anticircumvention inquiry cannot proceed when the product is expressly excluded from the scope. Therefore, Commerce erred in disregarding this evidence.

Regarding adverse inferences, Commerce alleged an insufficiency in the record evidence about the preservative functions of citric acid. It proceeded to fill this alleged insufficiency by assuming information adverse to Plaintiff and the Inquiry Respondents: Commerce relied totally on Petitioners and I Love Produce's unsubstantiated claims that there is no information on the purpose or function of citric acid. This

was arbitrary and capricious because, when conducting an inquiry, Commerce must "fairly request" information before resorting to adverse inferences. *Koyo Seiko Co. v. United States*, 92 F.3d 1162, 1165 (Fed. Cir. 1996). Because the record does not reflect that Commerce fairly requested such information, its application of adverse inferences was in error.

In this case, Plaintiff argued to Commerce that, because the Inquiry Merchandise is preserved by the addition of citric acid, it is expressly outside the scope of the order, and therefore, under *Wheatland*, the circumvention inquiry was inappropriate. Commerce acknowledged this rule, but dismissed it, citing a supposed lack of evidence that Plaintiff's product was preserved by citric acid. *See* Appx1027.

Commerce's evidence cannot be found to be adequate to support its Final Circumvention Determination because Commerce's conclusion hinges on a demonstrably false accusation of failure to provide evidence on the record. Commerce says: "Commerce…finds that the respondents have not made *any comment on the function or purpose of citric acid* in the production process of small and large garlic chunks," (Emphasis

23

added); and "[i]t is only after arguments to the contrary made prior to the Preliminary Determination were struck from the record that Green Garden claimed that citric acid is used to preserve small and large garlic chunks." *See* Appx1027.

The actual contents of the administrative record beg to differ. Plaintiff provided evidence regarding the addition of citric acid to the Inquiry Merchandise as far back as its Circumvention Inquiry Comments. *See* Appx1051-1054. In support of the preservative nature of citric acid, Plaintiff cited authorities such as: (1)  Customs Ruling N262027, which confirms that garlic chunks coated with citric acid are properly classified as "vegetables prepared or preserved otherwise than by vinegar or acetic acid," (*See* Appx1072, Appx1094-1095); (2) the FDA definition of "preservative" (*See* Appx1079, Appx1140); and (3) a scientific paper stating that one of the most prominent preservatives used in food preparation is citric acid (*See* Appx1079, Appx1153).

Therefore, as early as September 23, 2022, in its Scope Ruling Application, and as early as July 10, 2023, in the circumvention inquiry, Green Garden claimed that the Inquiry Merchandise is prepared or preserved by the addition of citric acid, identified citric acid as the one

of the most common food preservatives, and described that preservatives "prevent food spoilage…; slow or prevent changes in color, flavor, or texture and delay rancidity; maintain freshness." *See* Appx1070-1071, Appx1073-1074, Appx1079. Green Garden also cited a U.S. Customs and Border Protection ruling that frozen garlic chunks, coated in citric acid are "preserved" by citric acid, which maintains the quality of the garlic. *See* Appx1072.

Green Garden's Circumvention Inquiry Comments plainly state the preservative mechanism of the citric acid applied to the Inquiry Merchandise: "[t]he citric acid coating does serve to maintain the garlic chunks in their existing state by preventing the formation of Clostridium botulinum," (a bacterium that contributes to food spoilage). *See* Appx1053. To support this assertion, Plaintiff attached an additional academic article about the effects of citric acid on clostridium botulinum. *See* Appx1290 ("Citric acid concentrations of 10 - 50 mmol/l [approximately 0.19% - 0.96% citric acid solutions] at PH 5.2 inhibited growth from both [*Clostridium botulinum*] vegetative bacteria and spore inocula …"). The claim that the addition of citric acid serves to preserve garlic chunks was made long before the I Love Produce's

argument was struck from the record. The record evidence contradicts Commerce's claim that "[i]t is only after arguments to the contrary made prior to the Preliminary Determination were struck from the record that Green Garden claims that citric acid is used to preserve small and large garlic chunks." *See* Appx1027.

Furthermore, the fact that Plaintiff adds citric acid to the Inquiry Merchandise was never genuinely disputed by the interested parties. Petitioners and other adverse parties admit that Green Garden provided evidence that the Inquiry Merchandise was coated in citric acid; their arguments merely attack the conclusion that citric acid is a preservative in this case. *See* Appx2594-2599 (Petitioners argue that 0.3% citric acid solution is not sufficient to qualify as a preservative, not that Green Garden did not provide evidence of citric acid's addition to the Inquiry Merchandise.); *and see* Appx2617 (I Love Produce, LLC argues that there is "a lack of factual evidence on how it used citric acid in their (*sic*) production process," but also that the "production processes and their products would be unlikely to meet the FDA standards for low-acid canned foods.").

26

Commerce itself admitted that Green Garden made "comments regarding the issue that garlic chunks are preserved by adding citric acid" at the initiation of the circumvention inquiry. *See* Appx2490. Yet, in seemingly total disregard for the administrative record, Commerce asserted in its Final Circumvention Determination that Plaintiff has "not made any comment on the function or purpose of citric acid." *See* Appx1027.

The end result of Commerce's investigation is an administrative record that consists solely of Plaintiff's evidence demonstrating that its product is preserved by the addition of citric acid, rather than any evidence disproving that Plaintiff's product is coated with citric acid. Petitioners, in their rebuttal comments, merely call into question the preservative effects of what they deem a "miniscule 0.3 percent citric acid solution." *See* Appx2596. Yet, Petitioners' criticisms are based on pure speculation, with no evidence cited to rebut Plaintiff's evidence.

Petitioners do in fact make generous use of citations in their comments; however, these citations do not lead to contrary evidence, but rather to Plaintiff's evidence. Their sole purpose is pointing out what the evidence does not say. *See* Appx2596 ("Thus, the FDA publication

27

relied on by Green Garden stands for nothing more than that citric acid can be a preservative depending on how it is used in a specific application.") *and* Appx2597 ("This article also identifies one potential use of citric acid as a preservative, but again states nothing about whether using a nearly 100 percent water-based solution with only 0.3 percent citric acid to blanch reflects preservation by the citric acid.").

In the same comments, Petitioners also call into question Customs Ruling N262027, where citric acid was used to coat garlic cloves after blanching and before freezing. *See* Appx1094-1095. Though the U.S. Customs and Border Protection found that the purpose of the 0.1 percent citric acid was "to preserve the cloves and their color," Petitioners bluntly state, without support, that "the citric acid is not used to preserve the garlic (which is instead achieved through freezing)." *See* Appx1094, *compare* Appx2598. Petitioners do not address the fact that Plaintiff's citric acid solution is more concentrated than that discussed in N262027 (0.3% citric acid as opposed to 0.1%), nor do they cite any authority supporting the inference that food products may only be preserved by citric acid or by freezing, but not both. Petitioners'

reasoning, ultimately relied on by Commerce in its Final Circumvention Determination, is supported only by speculation.

In addition to Petitioners' speculation, Commerce itself makes factual errors on the administrative record that undermine its conclusion. Namely, Commerce mischaracterizes Plaintiff's objection to untimely comments made by I Love Produce, treating such objection as an admission of a lack of evidence by Green Garden. On September 1, 2023, I Love Produce submitted its rebuttal comments to questionnaires issued by Commerce. *See* Appx2492. Upon request from Plaintiff, Commerce struck these comments from the administrative record on September 14, 2023. Commerce found that the comments were impermissible rebuttals, since they were not directed to the questionnaire responses, but rather to Green Garden's Circumvention Inquiry Comments, for which the response deadline had already expired. *See* Appx2490-2492.

In arguing to strike the comments as untimely, Plaintiff pointed out that I Love Produce's comments focused on rebutting the preservative properties of citric acid. *See* Appx2456. Because neither citric acid, preservatives, nor additives were addressed by Commerce in

29

the questionnaires, Plaintiff contended that I Love Produce's comments were untimely as they addressed Green Garden's Circumvention Inquiry Comments, not the questionnaire responses. *Id.* It was within this context that Plaintiff said: "*Fenjun and Hengxin's* questionnaire responses contain no information about the purpose or function of citric acid." *Id.* (emphasis added). Commerce agreed that the comments were untimely because I Love Produce was actually responding to Green Garden's Inquiry Comments after the deadline had passed. *See* Appx2490-2492. Commerce struck these comments from the record. *Id.*

Without any warning or explanation, Commerce later weaponized Plaintiff's rightful objection to I Love Produce's untimely comments in order to justify its disregard for *Wheatland*. Commerce recycles, without context, Plaintiff's quote, "Fenjun and Hengxin's questionnaire responses contain no information about the purpose or function of citric acid," to claim that Plaintiff has admitted a lack of evidence on the record. *See* Appx1027. Commerce then says: "[i]t is only after arguments to the contrary made prior to the Preliminary Determination were struck from the record that Green Garden claimed that citric acid is used to preserve small and large garlic chunks." *Id.*

Given that Plaintiff first argued the case for the addition of citric acid as far back as its Scope Ruling Application in the antecedent scope ruling proceeding and then in the Circumvention Inquiry Comments in the circumvention inquiry, Commerce's assertion is demonstrably false. *See* Appx1047, Appx1049-1052. Plaintiff has argued that citric acid is added as a preservative to the product since the very beginning.

Turning to adverse inferences, even if the record were missing important factual information, Commerce was not authorized to draw adverse inferences as it did. 19 CFR § 351.308 provides that it can only be used when "the Secretary finds that an interested party 'has failed to cooperate by not acting to the best of its ability to comply with a request for information'." In this case, Commerce makes no finding that either Plaintiff or Inquiry Respondents failed to cooperate by not acting to the best of their abilities. Therefore, adverse inference is inappropriate. Nonetheless, Commerce proceeded to make its determination by using other information - unsubstantiated arguments proffered by Petitioners and I Love Produce.

Commerce did not make, neither in its initial questionnaires, nor in its supplemental questionnaires, any inquiries about the purpose or

31

use of citric acid. Inquiry Respondents, Fenjun and Hengxin, were fully cooperative with Commerce's investigation and timely provided all requested information that was available.

Yet, Commerce accused the Inquiry Respondents of failing to produce information relating to the function or purpose of citric acid which was not asked in the questionnaires. Commerce said: "Commerce… finds that respondents have not made any comment on the function or purpose of citric acid… no further responses from the respondents have identified the purpose or function of citric acid… there is insufficient record evidence to conclude that [the Inquiry Merchandise] is preserved by the addition of other ingredients." *See* Appx1027.

If Commerce felt that the evidence already provided by Plaintiff was insufficient to determine whether citric acid was used as a preservative, it was within Commerce's authority to request such information from the interested parties. Moreover, *Koyo* requires Commerce to request such information before drawing adverse inferences. Yet, without providing any justification, Commerce waited

until it had made its final determination before making any mention of a supposed lack of evidence.

By concluding that, because there is a "lack of evidence," the Inquiry Merchandise is not preserved by citric acid, Commerce drew an adverse inference against respondents. Then, Commerce summarily disregarded *Wheatland*, justifying such disregard by determining that the Inquiry Merchandise is not preserved by citric acid. Because Commerce did not fairly request this information from the Inquiry Respondents, Commerce's application of adverse inferences was arbitrary and capricious.

In summary, because Commerce ignored the evidence provided by Plaintiff, made significant factual errors, and impermissibly drew adverse inferences, its decision cannot be supported by substantial evidence. If the Inquiry Merchandise were found to be preserved by citric acid, *Wheatland* would control, and this single fact would be dispositive of the entire inquiry. Yet, despite Plaintiff having raised the issue since the beginning, Commerce evaded the issue by citing a lack of evidence at the eleventh hour. Commerce then inferred, without justification, that the Inquiry Merchandise was not preserved by the

addition of ingredients. For these reasons, Commerce's Final

Circumvention Determination should be held unlawful, as it cannot be

supported by substantial evidence under these circumstances.

## 2. Commerce's minor alterations decision is not supported by substantial evidence.

In its Preliminary Determination and then in its Final

Circumvention Determination, Commerce determined that Plaintiff's

small and large garlic chunks only differ by the additional step of

trimming/dicing the garlic and that "the physical characteristics of the

inquiry merchandise are the same as that of in-scope fresh garlic,

except in terms of their size." *See* Appx1010-1011; *see also* Appx1034. In

making such a determination, Commerce concludes, without substantial

evidence, that the size of the garlic has no effect on the Inquiry

Merchandise's end uses and its end users. However, Commerce's Final

Circumvention Determination is riddled with errors and conclusory

dismissals of evidence provided by Plaintiffs. As a result, the Final

Circumvention Determination provides no genuine reasoning for its

conclusions and is not supported by substantial evidence.

*i. Commerce ignored evidence that in-scope garlic has different end users and channels of distribution*

Commerce's Final Circumvention Determination erroneously ignores evidence that the size of chunked garlic is a factor that determines this product's uses and distinguishes these products from in-scope products. Without substantial record evidence and an adequate explanation in their memoranda, Commerce declares that all garlic products used as a "food product or seasoning" are substantially similar. *See* Appx1011. For this reason, Commerce determined that the end users, their expectations, and the channels of distribution of the Inquiry Merchandise are the same. *See* Appx1034-1035.

Record evidence that refutes this blanket conclusion went unaddressed. Plaintiff entered evidence on the record such as the International Trade Commission ("ITC") Investigation No. 731-TA-683, *Fresh Garlic From The People's Republic of China* (the "ITC Investigation"). *See* Appx1418. In the ITC Investigation, the ITC found that fresh garlic "may be used or cooked, whole (such as in baked garlic), or in cloves. In such instances, it is valued for its appearance as well as flavor." *See* Appx1476. Plaintiff argued that the Inquiry Merchandise is not valued for its appearance, showing that a lower

grade of garlic is used to make garlic chunks since the visual aesthetic appeal is not material. *See* Appx1060-1061. Additionally, Plaintiff pointed out that cutting the cloves into chunks eliminates all uses requiring clove and whole garlic, such as those identified by the ITC Investigation. *Id*. As such, Plaintiff asserted that end users have fundamentally different expectations. *Id*. Commerce summarily dismissed these arguments without even addressing the ITC Investigation. *See* Appx1011, Appx1034.

In addition to diverse consumer expectations, Green Garden submitted that its products meet the needs of a vastly different consumer base than that of fresh garlic. *See* Appx1062. In Green Garden's Circumvention Inquiry Comments, Plaintiff argued that the large and small garlic chunks are "sold predominantly to institutional users in 35 to 50-pound bulk bags." *Id*. Green Garden reasoned that these consumers are wholly distinct from the wholesalers and distributors who purchase the in-scope garlic to then sell to supermarkets, grocery stores, and restaurants. *Id*. Plaintiff stated that it "does not engage in distribution and retailing of garlic for general consumer use." *See* Appx1062-1063.

Moreover, Plaintiff reiterated that, when dealing with institutional users, aesthetic appearance of the garlic is immaterial; this allows lower grade garlic to be chunked and packed in bulk bags as opposed to the way fresh garlic appears in grocery stores and restaurants. *See* Appx1062. Commerce relegates this issue in its memoranda without explanation. *See* Appx1011; Appx1034-1035.

In essence, Commerce concludes that if the in-scope merchandise is used as a food product and for seasoning, then the expectations of ultimate consumers and the use of all similar merchandise must be the same. Commerce's "one size fits all" approach to this issue cannot be justified by substantial evidence, especially given the record evidence that the Inquiry Merchandise has a different consumer base from fresh garlic. Therefore, Commerce's Final Circumvention Determination as it relates to end users and channels of distribution must be found unlawful for want of substantial evidence.

ii. *Commerce ignored evidence of a significant value added through modification*

Commerce found that the Inquiry Merchandise was minorly altered because the modification process added little to no value compared to cloves and whole fresh garlic. *See* Appx1011-1012.

37

Commerce erred in doing so because it neglected to consider evidence that the modification of the garlic into chunks adds significant value to Plaintiff's product. Without addressing the value added by reducing the low grade garlic beyond the constituent clove to small and large chunks, Commerce reframed the issue and decided that Plaintiff's choice of low grade garlic as a raw material, rather than consumer grade garlic as a raw material, adds no value.

In its initial Circumvention Inquiry Comments, Plaintiff argued that the cost of modification to produce large and small garlic chunks was about 13% and 17% of the total cost of producing them, respectively. *See* Appx1063. This evidence was corroborated by Hengxin and Fenjun's questionnaire responses, which stated that the sale prices of Inquiry Merchandise is 20% and 21.3% higher, respectively, when compared to the sale price of the low grade garlic without any modification. *See* Appx2428, Appx1798. Therefore, the record evidence shows that the modification process adds significant value to the Inquiry Merchandise: as much as 21.3%.

Nonetheless, on Petitioners' suggestion, Commerce took note of the average unit value for imports of garlic of the same HTSUS heading

as the Inquiry Merchandise (Heading 2004.90.85.75, Garlic, reduced in size beyond the clove, whether or not individually quick frozen). *See* Appx1011. Commerce found that the average unit value of these imports is lower than that of in-scope merchandise. *Id*. In response, Plaintiff explained that its large and small individually quick frozen garlic chunks are not made from consumer grade garlic, but rather from garlic cloves of a lower grade, which may be of inconsistent sizes, shapes, colors, and conditions. *See* Appx1063-1064. These lower grade cloves are not suitable for general consumer use for the reasons detailed above*, inter alia*, aesthetic defects. Thus, they are less expensive. Evidence on the record showed that Inquiry Merchandise was 10% to 50% less expensive than fresh, consumer grade garlic because Inquiry Merchandise was made from lower-value raw materials. *See* Appx1963, Appx1990-1992, *compare* Appx1994-1995; *and see* Appx2000-2001.

If Plaintiff had performed the same modifications using in-scope merchandise as the raw material, rather than lower-grade garlic, the sale price of Inquiry Merchandise would be greater than that of in-scope merchandise. Record evidence demonstrates that the modification process increases the value of the raw materials by as much as 21.3%.

Consequently, although the Inquiry Merchandise is ultimately less expensive than consumer grade in-scope merchandise, the modification generates a significant increase in value from low grade garlic, which was much less expensive to begin with.

The essence of Plaintiff's argument on the agency record is best understood using the visual aid below:



In the graphic above, there are three kinds of garlic: 1) consumer grade garlic, whole or separated into constituent cloves; 2) lower grade garlic, whole or separated into constituent cloves; 3) low grade garlic, cut into chunks (reduced in size beyond the constituent clove). Low grade garlic is 50% the value of consumer grade garlic because the low grade garlic

is visually defective. Low grade garlic chunks are also less valuable than consumer grade garlic, but have a 20% increase in value compared to uncut, low grade garlic. Therefore, while the modification does not render the low grade garlic chunks more valuable than consumer grade garlic, it nonetheless adds significant value compared to uncut, low grade garlic.

In its Final Circumvention Determination, Commerce acknowledged that the Inquiry Respondents represented that the sale price  is between 20 and 21.3% higher than the value of the raw materials. *See* Appx1011-1012. Commerce also noted that lower grade garlic is used, which is 10%-50% less valuable than consumer grade garlic. *See* Appx1012. Then, with brevity, Commerce concluded: "[a]s a result, the lower grade garlic used for diced garlic provides no added value to the merchandise and we preliminarily find that this factor supports a finding that the inquiry merchandise is minorly altered." *Id*.

Commerce provided no record evidence for this conclusion, nor did it explain its reasoning. In fact, Commerce's reasoning does not logically flow into its conclusion. First, Petitioners alleged a low cost of modification to reduce the size of garlic. Petitioners do so by citing a

lower import value for Inquiry Merchandise in comparison to consumer grade garlic, rather than conducting a more accurate comparison of import price between Inquiry Merchandise and low grade garlic, the raw material actually used in production. *See* Appx2038. Plaintiff pointed out that the lower import value of the Inquiry Merchandise when compared to consumer grade garlic was due to the use of less expensive raw materials. *See* Appx1063-1064. The value of the Inquiry Merchandise is significantly higher than the value of raw, low grade garlic. Then, Inquiry Respondents submitted evidence that there is a significant value added to raw, low grade garlic when modified beyond the whole bulb or constituent cloves to chunks (the Inquiry Merchandise) - as much as 21.3%. *See* Appx2428, Appx1798. However, Commerce's conclusion does not address whether the *reduction in size to chunks* adds value to raw, low grade garlic, but rather whether *using less expensive raw materials* adds value.

Consequently, Commerce does not address Plaintiff's argument that reducing the garlic in size to chunks adds significant value and that such added value is not as readily apparent due to Plaintiff's use of lower grade garlic as a raw material. Instead, Commerce invents a new

factor not enumerated in 19 CFR § 351.226(j), namely, whether using low grade garlic instead of consumer grade garlic adds value to the Inquiry Merchandise, instead of *the cost of modification* relative to the total value of the imported products. Commerce then makes a conclusory determination on this issue instead. Therefore, its finding pertaining to the lack of added value of the Inquiry Merchandise cannot stand as it is not supported by substantial evidence.

## V.    Conclusion – Request for Court Order and Relief Sought

This Court should find Commerce's Final Circumvention Determination unlawful, as it is not in accordance with the law and is not supported by substantial evidence.

The Final Circumvention Determination is contrary to the law because, under the *Wheatland* standard, Commerce is not authorized to conduct a minor alterations inquiry when the merchandise subject to the inquiry is expressly excluded from the scope of the relevant order. In this case, the scope of the Order expressly excludes garlic products that are preserved by the addition of ingredients. Record evidence shows that Plaintiff's product is preserved by the addition of citric acid and is therefore expressly excluded from the scope of the Order. Therefore,

Commerce was without authority to conduct a minor alterations analysis.

The Final Circumvention Determination is not based on substantial evidence because Commerce refused to consider the available evidence that Plaintiff's product is preserved by citric acid. Commerce acknowledged *Wheatland*, but declined to apply the rule because it alleged insufficient evidence. In doing so, Commerce ignored relevant record evidence provided by Plaintiff. Commerce also penalized Plaintiff for objecting to untimely comments, wrongfully treating such objection as an admission of insufficient evidence. Finally, Commerce drew adverse inferences against Plaintiff and the Inquiry Respondents to fill the alleged insufficiency in the record without ever requesting the relevant information. Therefore, Commerce's Final Circumvention Determination as it pertains to the finding that the Inquiry Merchandise is not preserved by the addition of citric acid cannot be supported by substantial evidence.

Furthermore, the Final Circumvention Determination lacks substantial evidence because Commerce failed to consider Plaintiff's evidence related to the minor alteration factors. Commerce concluded,

44

without evidence and without addressing Plaintiff's arguments, that
the consumers of the Inquiry Merchandise were the same as those of
in-scope merchandise. Similarly, Commerce concluded that expectations
of Plaintiff's consumers were the same as those of in-scope merchandise.
Lastly, Commerce concluded, ignoring Plaintiff's evidence, that use of
lower grade garlic is immaterial to the price difference between scope
and inquiry merchandise.

Overall, Commerce's Final Circumvention Determination in this
matter represents a mishandling of record evidence and
outcome-deterministic reasoning. Commerce must have decided, at
some point, that the Inquiry Merchandise should be included in the
scope of the Order, regardless of the law and the evidence. It is for this
reason that Commerce disregarded *Wheatland* and evidence supporting
Plaintiff's application. It is also for this reason that Commerce
summarily dismissed Plaintiff's evidence about ultimate consumers and
cost of modification without explanation. Plaintiff and Inquiry
Respondents cooperated diligently with Commerce throughout the
entire process. If there is indeed insufficient evidence on the record to

support a conclusion in favor of Plaintiff, it was because Commerce wanted there to be insufficient evidence.

For all the reasons herein stated, we respectfully request this Court grant Plaintiff, Green Garden Produce LLC's, motion and enter judgment on the agency record in favor of Plaintiff, remand the Final Circumvention Determination with instructions to issue a new determination that the Inquiry Merchandise is not subject to antidumping duties, and provide such other relief as this Court deems just and proper.

Dated: January 15, 2025

Respectfully submitted,

**LIANG + MOONEY, PLLC**
/s/ Shanshan Liang
Shanshan Liang, Esq.
Fla. Bar No. 112991
2104 Delta Way, Suite #1
Tallahassee, FL 32303
Telephone: (850) 893-0670
Email: sliang@customscourt.com
*Counsel for Plaintiff Green Garden Produce, LLC*

**Certificate of Compliance with Word Limitation**

I hereby certify that the document contains 7588 words, excluding the parts of the document that are exempted from the word count, and therefore is in compliance with the word limitations set forth in this Court's Chambers Procedures.

Executed: January 15, 2025

/s/ Shanshan Liang
Shanshan Liang, Esq.

## CERTIFICATE OF SERVICE

A true and accurate copy of the foregoing was electronically filed on January 15, 2025, via the Court's ECF filing system, which automatically serves notice on counsel of record.

<u>/s/ Shanshan Liang</u>
Shanshan Liang, Esq.

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

<table>
<tr><td>

**GREEN GARDEN PRODUCE, LLC,**
    *PLAINTIFF*

**v.**

**UNITED STATES,**
    *DEFENDANT.*

</td><td>

**Ct. No. 1:24-cv-00114-MMB**

</td></tr>
</table>

**[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD PURSUANT TO RULE 56.2**

Upon consideration of Plaintiff's Motion for Judgment on the Agency Record Pursuant to Rule 56.2 and upon all other papers and proceedings herein, and good cause appearing therefore, it is hereby:

**ORDERED** that Plaintiff's Motion for Judgment on the Agency Record is granted; and it is further

**ORDERED** that the  U.S. Department of Commerce's Final Circumvention Determination in its anti-circumvention inquiry relating to the Antidumping Duty Order: Fresh Garlic from the People's Republic of China (A-570-831) (the "Order") is unsupported by substantial record evidence and otherwise contrary law in respect to the

impermissible expansion of the scope of the Order and determinations on citric acid additives and minor alterations; and it is further

ORDERED that this upon remand, Commerce shall re-evaluate the applicability of *Wheatland Tube Co. v. United States*, 161 F.3d 1365 (Fed. Cir. 1998), and the evidence on the agency record relating to the use of citric acid as a preservative and Commerce's minor alterations determination; it is further

ORDERED that this action be remanded to the U.S. Department of Commerce to issue a new determination that the small and large garlic chunks imported by Plaintiff from the People's Republic of China are not subject to the Antidumping Duty Order on Fresh Garlic Products from China (A-570-831).

SO ORDERED this _____ day of _____, 2025
New York, New York

_____

Hon. Judge M. Miller Baker