**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

| | | |
|---|---|---|
| GREEN GARDEN PRODUCE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | Court No. 24-00114 |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| FRESH GARLIC PRODUCERS | ) | |
| ASSOCIATION, CHRISTOPHER | ) | |
| RANCH, L.L.C., THE GARLIC | ) | |
| COMPANY, and VALLEY GARLIC | ) | |
| | ) | |
| Defendant- Intervenor | ) | |
| | ) | |

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 56.2
MOTION FOR JUDGMENT ON THE AGENCY RECORD**

<table>
<tr><td></td><td>BRETT A. SHUMATE<br>Assistant Attorney General</td></tr>
<tr><td>Of Counsel:</td><td>PATRICIA M. McCARTHY<br>Director</td></tr>
<tr><td>FEE PAUWELS<br>Attorney<br>Department of Commerce<br>Office of Chief Counsel for Trade<br>Enforcement & Compliance<br>1401 Constitution Avenue, NW<br>Washington, DC 20230</td><td>REGINALD T. BLADES, JR.<br>Assistant Director<br><br>ISABELLE AUBRUN<br>Trial Attorney<br>Commercial Litigation Branch<br>U.S. Department of Justice<br>Civil Division<br>P.O. Box 480<br>Ben Franklin Station<br>Washington, D.C., 20044<br>Tel: (202) 305-0001</td></tr>
<tr><td>July 18, 2025</td><td>*Attorneys for Defendant*</td></tr>
</table>

TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... iii

RULE 56.2 STATEMENT .................................................................2

    I.    The Administrative Determination Under Review ...............2

    II.   Issues Presented For Review...................................................2

STATEMENT OF CASE ...................................................................3

    I.    Legal Framework for Circumvention
        Determinations................................................................3

    II.   Commerce Issues An Antidumping Duty Order on
        Fresh Garlic From China...........................................5

    III.  Commerce Initiates a Circumvention Inquiry on
        Small and Large Garlic Chunks from China
        Following a Scope Ruling on the Same ..................6

    IV.  Commerce Preliminarily Finds that Inquiry Garlic
        is Circumventing the Order...................................13

    V.   Commerce Makes Final Affirmative Circumvention
        Determination ........................................................16

SUMMARY OF ARGUMENT .................................................18

ARGUMENT ............................................................................20

    I.    Standard Of Review ...........................................................20

    II.   Commerce Correctly Determined that Green
        Garden's Inquiry Merchandise Is Excluded From the
        Scope of the Order...................................................21

    III.  Commerce's Determination Was Not Based on Facts
        Available with An Adverse Inference...................................30

        A.   Green Garden Failed To Exhaust Its
           Administrative Remedies With Respect To Its
           Argument That Commerce Resorted To The
           Facts Available And Applied Adverse
           Inferences .......................................................31

B.    Regardless, Commerce Did Not Base Its
Determination In This Circumvention Inquiry
On Facts Available With An Adverse Inference..........33

IV.    Commerce's Affirmative Circumvention
Determination Under The Minor Alterations
Provision Is Supported By Substantial Evidence.................37

CONCLUSION .........................................................................45

## TABLE OF AUTHORITIES

## CASES

*Atl. Sugar, Ltd. v. United States,*
    744 F.2d 1556 (Fed. Cir. 1984) ............................................................... 21

*Consolidated Edison v. NLRB,*
    305 U.S. 197 (1938) ................................................................................. 20

*Consolo v. Federal Maritime Comm'n,*
    383 U.S. 607 (1966) ................................................................................. 20

*Corus Staal v. United States,*
    502 F.3d 1370 (Fed. Cir. 2007) .......................................................... 31, 32

*Deacero S.A. De C.V. v. United States,*
    817 F.3d 1332 (Fed. Cir. 2016) ................................................................. 4

*Dorbest Ltd. v. United States,*
    604 F.3d 1363 (Fed. Cir. 2010) ............................................................... 32

*Fujitsu Gen. Ltd. v. United States,*
    88 F.3d 1034 (Fed. Cir. 1996) ................................................................. 20

*Koyo Seiko Co. v. United States,*
    92 F. 3d 1162 (Fed. Cir. 1996) ................................................................. 36

*Matsushita Electrical Industrial Co. v. United States,*
    750 F.2d 927 (Fed. Cir. 1984) ................................................................. 20

*Nippon Steel v. United States,*
    458 F.3d 1345 (Fed. Cir. 2006) .......................................................... 21, 34

*NTN Bearing Corp. of Am. v. United States,*
    997 F.2d 1453 (Fed. Cir. 1993) ............................................................... 36

*Pirelli Tyre Co. v. United States,*
  No. 2023-2266, 2025 WL 451382 (Fed. Cir. Feb. 11, 2025) ................ 39

*QVD Food Co., Ltd. v. United States,*
  658 F.3d 1318 (Fed. Cir. 2011) ............................................... 36

*SMA Surfaces, Inc. v. United States,*
  617 F.Supp.3d 1263 (Ct. Int'l Trade 2023) ........................... 36

*United States,*
  806 F. Supp 1008 (Ct. Int'l Trade 1992) .............................. 36

*Wheatland Tube Co. v. United States,*
  161 F.3d 1365 (Fed. Cir. 1998) ..................................... passim

## STATUTES

19 U.S.C. § 1677e(a) ...................................................... 33, 35

19 U.S.C. § 1677e(b) .................................................. 33, 34, 35

19 U.S.C. § 1677j ............................................................. 3

19 U.S.C. § 1677j(c) ................................................ 3, 6, 13, 27

19 U.S.C. § 1677m(d) ....................................................... 36

28 U.S.C. § 2637(d) ........................................................ 31

## REGULATIONS

19 C.F.R. § 351.226(f)(2) .............................................. 10, 12, 14

19 C.F.R. § 351.226(j) ................................................. 3, 13, 44

19 C.F.R. § 351.309(c)(2) ................................................... 32

19 C.F.R. § 361.226(j) ....................................................... 4

19 CFR 351.226(f)(3)....................................................................................24

Defendant, the United States, respectfully submits this response in opposition to the motion for judgment upon the agency record filed by plaintiff, Green Garden Produce, LLC (Green Garden), challenging the U.S. Department of Commerce's (Commerce) final affirmative determination in a circumvention inquiry pertaining to the antidumping duty Order on fresh garlic products from the People's Republic of China (China).

In its final results, Commerce made three determinations. Green Garden now challenges two of them. Relevant to this appeal, in its affirmative circumvention determination Commerce reasonably determined that (1) the inquiry merchandise is not explicitly excluded from the Order as garlic "preserved by the addition of other ingredients" due to preservation by citric acid, and (2) the inquiry merchandise underwent only minor alterations. Green Garden's arguments to the contrary are unpersuasive.

The United States respectfully requests the Court sustain Commerce's determination in its entirety, deny Green Garden's motion, and enter judgement in favor of the United States.

<u>RULE 56.2 STATEMENT</u>

I.     <u>The Administrative Determination Under Review</u>

Green Garden challenges *Fresh Garlic From the People's Republic of China: Affirmative Final Determination of Circumvention of the Antidumping Duty Order*, 89 Fed. Reg. 50,256 (Dep't of Commerce June 13, 2024) (P.R. 91) (Final Determination), and the accompanying Issues and Decision Memorandum dated June 7, 2024 (P.R. 90). The period of inquiry for this circumvention inquiry is January 1, 2019, through December 31, 2022. *See* Appx1024.

II.    <u>Issues Presented For Review</u>

1. Whether Commerce's determination that the record did not support a finding that Green Garden's large and small garlic chunks is preserved by the addition of citric acid is supported by substantial evidence and in accordance with law.

2. Whether Commerce relied on facts available with an adverse inference.

3. Whether Commerce's minor alteration analysis in its Final Circumvention Determination is supported by substantial evidence and in accordance with law.

STATEMENT OF CASE

I.  Legal Framework for Circumvention Determinations

Congress enacted 19 U.S.C. § 1677j to address and to combat the circumvention of antidumping and countervailing duty orders. One such determination concerns minor alterations to merchandise. Commerce may find that an importer is circumventing an existing antidumping or countervailing duty order when the imported merchandise that is of the same class or kind as that subject to an antidumping or countervailing duty order has been "altered in form or appearance in minor respects." *See* 19 U.S.C. § 1677j(c); *see also* 19 C.F.R. § 351.226(j). Under that statute, "Commerce's consideration of certain types of articles within the scope of an {antidumping duty} order will be a proper clarification or interpretation of the order instead of improper expansion or change even where these products do not fall within the order's literal scope." *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1370 (Fed. Cir. 1998). An affirmative circumvention determination, then, permits Commerce to impose a customs duty on inquiry merchandise as though it were subject to the Order even when that merchandise is not expressly covered by the literal scope of Order. *See Wheatland*, 161 F.

3d at 1371 ("{S}ection 1577j(c) requires the scope of the {Order} to
include the enumerated products plus minor alterations--products that
are so insignificantly changed from a covered product that they should
be considered within the scope of the order."). This provision was
implemented to "reflect{} Congress' concern that foreign producers were
circumventing antidumping duty orders by making minor alterations to
products falling within the scope of an order in an effort to take these
products outside of the literal scope." *Wheatland*, 161 F.3d at 1370-71.

The statute is silent regarding the factors that Commerce should
consider in determining whether an alteration is "minor." Congress has
therefore explained that Commerce should consider "such criteria as the
overall characteristics of the merchandise, the expectations of the
ultimate users, the use of the merchandise, the channels of marketing,
and the cost of any modification relative to the total value of the
imported product." S. Rep. No. 100-71, at 100 (1987). Commerce's
obligation to examine these five factors has since been codified in
Commerce's regulations, 19 C.F.R. § 361.226(j), and upheld by this
Court. *See, e.g.*, *Deacero S.A. De C.V. v. United States*, 817 F.3d 1332
(Fed. Cir. 2016) (finding that Commerce's minor alteration

circumvention determination was supported by substantial evidence and in accordance with law when Commerce applied the five factors to the record evidence of that case).

II.    Commerce Issues An Antidumping Duty Order on Fresh Garlic From China

In November 1994, Commerce published an antidumping duty Order on fresh garlic from China. *See* Appx1135-1137. The scope of the antidumping duty Order provides:

> The products subject to this antidumping duty order are all grades of garlic, whole or separated into constituent cloves, whether or not peeled, fresh, chilled, frozen, provisionally preserved, or packed in water or other neutral substance, but not prepared or preserved by the addition of other ingredients or heat processing. … The subject merchandise is used principally as a food product and for seasoning.

Appx1135.

During its investigation, the International Trade Commission (ITC) stated that fresh garlic "*may* be used or cooked, whole (such as in baked garlic), or in cloves. In such instances, it is valued for its appearance as well as flavor. {Fresh garlic} may also be used in chopped or pureed form." Appx1476; *see also* Appx1045-1755, 1418-1587 (emphasis added). In an explanatory footnote, the ITC stated that "{a}ccording to industry sources, these forms of processed fresh garlic

5

are often displayed alongside fresh garlic as an alternative to using unprocessed fresh garlic bulbs." Appx1432. This antidumping order is the basis for the scope and circumvention inquiries at issue in this case.

III.    Commerce Initiates a Circumvention Inquiry on Small and Large Garlic Chunks from China Following a Scope Ruling on the Same

On February 16, 2023, petitioners, Fresh Garlic Producers Association and its individual members (collectively, petitioners), formally requested that Commerce initiate a circumvention inquiry into whether small and large garlic chunks from China that were imported into the United States by Green Garden were circumventing the Order and therefore properly within the scope of the Order. Appx2031-2223. The petitioners alleged that Green Garden was circumventing the 1994 antidumping duty order on fresh garlic from China, relying on 19 U.S.C. § 1677j(c) to assert that small and large garlic chunks are a minor alteration to subject fresh garlic. Appx2031-2032.

In response to that request, however, Commerce explained that it would defer its decision of whether to initiate a circumvention inquiry until a previously-initiated scope inquiry into Green Garden's large and

small chunks of garlic was complete. *See* Appx2224.[1] The result of that

ongoing scope inquiry, Commerce detailed, would dictate whether an

inquiry into whether Green Garden's inquiry merchandise was

circumventing the Order was even necessary. *Id*; *see also* 19 CFR

351.226(d)(2)(i) ("if {Commerce} determines upon review of a request for

a circumvention inquiry that a scope ruling is warranted before the

Secretary can conduct a circumvention analysis, {Commerce}

may…defer initiation of the circumvention inquiry pending the

completion of any ongoing or new segment of the proceeding addressing

the scope issue.") Indeed, Commerce's scope inquiry in this case could

and would inform the requested circumvention inquiry. "[I]f the result

of that {scope inquiry} is that the product at issue is not covered by the

scope of the antidumping or countervailing duty order(s) at issue,

{Commerce} may immediately initiate the circumvention inquiry{.}" 19

CFR 351.226(d)(2)(i). Conversely, if the scope inquiry found that the

subject merchandise either was covered by the Order or was expressly

excluded by the terms of the order, Commerce would have no need to

---

[1] On September 23, 2022, Green Garden requested that Commerce initiate a scope inquiry into its imports or large and small chunks of garlic. *See* Appx1313.

determine whether the inquiry merchandise was circumventing the Order.

On June 2, 2023, Commerce completed its scope inquiry concluding in relevant part that large and small garlic chunks from China imported by Green Garden are outside the scope of the Order because the cloves were reduced in size beyond peeling. Appx1045-1755 (Green Garden Inquiry Letter), 1313-1322 (Preliminary Scope Ruling), 1345-1351 (Final Scope Ruling). Although Commerce observed that the "addition of citric acid in the blanching process does not necessarily exclude Green Garden's large garlic chunks and small garlic chunks from the Order," Appx1320, Commerce's determination did not rely on a finding about the express exclusions provided for in the Order. *See generally* Appx1345-1351. That is, Commerce did not need to reach the question of whether Green Garden's merchandise was expressly excluded from the scope because it instead found Green Garden's garlic was not covered by the literal scope of the Order in the first instance— because it was garlic reduced in size. *See* Appx1348-1349. "Commerce has repeatedly found that garlic cloves that have been reduced in size are not covered by the scope{}" and because Green Garden's

8

merchandise likewise was reduced in size by trimming the garlic cloves into chunks, Commerce found that Green Garden's product likewise was not covered by the Order. *See* Appx1349. . .

Because Commerce determined that Green Garden's large and small garlic chunks are outside of the Order in its Final Scope Ruling, Commerce recommended initiation of the deferred circumvention inquiry on June 8, 2023.  Appx2246-2240. The merchandise subject to the circumvention inquiry was small and large garlic chunks produced in China and exported to the United States (inquiry garlic). Appx2246. Specifically, Commerce defined the inquiry merchandise as

> "{s}mall chunks are small, peeled, trimmed and cut, blanched, and individually quick frozen (IQF) garlic chunks coated with citric acid. The size of the product is one-fourth of a large chunk. It is formed by trimming off the two ends of a garlic clove and cutting the resulting chunk into approximately four equal pieces. It is coated with citric acid aqua solution and frozen. Large chunks are large, peeled, trimmed, blanched, and IQF garlic chunks coated with citric acid. The size of the product is three-fourths of a garlic clove with the two ends of the garlic clove trimmed off. It is coated with citric acid aqua solution and frozen."

Appx1009, 1024. Commerce decided to initiate the circumvention inquiry "on a country-wide basis." Appx2246.. Commerce also announced that it would base respondent selection for the country-wide

inquiry on U.S. Customs and Border Protection (CBP) data and invited interested parties to submit comments regarding the CBP data and respondent selection. Appx2247-2248.

Within 30 days after the initiation of a circumvention inquiry, interested parties other than the applicant have one opportunity to submit comments and factual information to rebut, to clarify, or to correct factual information contained in a scope ruling application. *See* 19 C.F.R. § 351.226(f)(2).  On July 10, 2023, Green Garden submitted its comments on the request for a circumvention inquiry. *See* Appx1045-1756. In its submission, Green Garden argued that its inquiry garlic is expressly excluded from the Order because it is preserved by the addition of citric acid, and that inquiry garlic is significantly altered from subject garlic and therefore not minorly altered. Appx1051-1054, 1057-1064. Green Garden made no argument in its comments related to Commerce's decisions to initiate on a country-wide basis or to base respondent selection on CBP data. *See generally* Appx1045-1064.

On July 17, 2023, Commerce selected Fenjun Foodstuff Co., Ltd. (Fenjun) and Qingdao Deesheng Hengxin Food Co., Ltd. (Hengxin) (collectively, the respondents), the two companies with the highest

export volume of inquiry garlic from China to the United States as mandatory respondents for the circumvention inquiry. *See* Appx1757-1762. Commerce based its decision on the CBP entry data for each producer. Appx1760-1762. No party submitted comments on the CBP data or selection of mandatory respondents.

On August 23, 2023, both respondents submitted timely initial questionnaire responses to Commerce. *See* Appz2401-2449; Appx1770-1931. In their questionnaire responses, both respondent companies indicated that the production process of inquiry garlic involved blanching and cooling garlic cloves in a citric acid solution. Appx1782-1783, 1792, 1795; Appx2413, 2422, 2426. Neither respondent made claims or provided evidence regarding the purpose of citric acid in the blanching and cooling steps of their production processes. *See generally* Appx1770-1931; Appx2401-2449.

Green Garden did not comment on or provide factual information in response to the respondents' questionnaire responses. However, another interested party, I Love Produce, LLC (I Love Produce), submitted comments on the questionnaire responses on June 8, 2023; those comments were focused on the role of citric acid in inquiry garlic.

*See* Appx2490-2492 (Rejection of I Love Produce's Untimely Rebuttal Comments).

Green Garden and the respondents later submitted a request for I Love Produce's Comments to be removed from the record on the basis that the comments were not submitted to rebut, to clarify, or to correct factual information contained in the questionnaire responses. *See* Appx2455-2458 (Green Garden and Respondents' September 5, 2023 Request to Reject Comments on Questionnaire Responses). Commerce agreed that respondents' questionnaire responses contained no information about the purpose or function of citric acid and, therefore, rejected and removed I Love Produce's comments from the record pursuant to 19 C.F.R. § 351.226(f)(2) as an untimely response to the information about citric acid contained in Green Garden's July 10, 2023 submission. *See* Appx2490-2493.

On September 29, 2023, both respondents timely submitted supplemental questionnaire responses to Commerce. *See* Appx1170-1931, 2401-2449. Those supplemental questionnaire responses similarly did not address the purpose or function of citric acid.

IV.    Commerce Preliminarily Finds that Inquiry Garlic is
       Circumventing the Order

On November 14, 2023, Commerce published its preliminary

affirmative determination that inquiry garlic is circumventing the

antidumping duty Order because inquiry garlic is altered in form or

appearance in minor respects within the meaning of 19 U.S.C.

§ 1677j(c) and 19 C.F.R. § 351.226(j). Appx1000-1015. Applying the

factors set out in 19 C.F.R. § 351.226(j), Commerce explained that

inquiry garlic

> share the same physical characteristics as in-scope fresh
> garlic, with the exception that they have had their ends
> trimmed and/or have been sliced in half length and/or width
> wise... {t}he only difference is the additional step of
> trimming/dicing the garlic.

Appx1010 (internal citations omitted). Regarding the expectations

of the ultimate users and use of inquiry garlic as compared with in-

scope fresh garlic, Commerce found,

> {t}he petitioners provided evidence that the primary use of
> {inquiry garlic} is for making roasted garlic powder.
> {Respondents} also state{d} that the main uses of diced garlic
> is to make roasted garlic powder, dips, mashes, and salads…
> {D}iced garlic with the intention for making roasted garlic
> powder or garlic puree, could reasonably be substituted by
> garlic cloves.

Appx1011 (internal citations omitted). Because in-scope garlic is also "used principally as a food product and for seasoning," Commerce found the expectations of the ultimate user and the use of the inquiry garlic are the same as in-scope garlic. *Id*. Commerce also cited information provided by the petitioners and the respondents indicating that inquiry garlic goes through similar channels of marketing distribution for eventual use as garlic powder, dips, mashes, and salads, as well as garlic puree, as shown through various marketing materials. *Id*. Finally, Commerce found that the cost of modifying in-scope garlic into inquiry garlic did not increase the value of inquiry garlic. Appx1011-1012.

Consistent with its determination to undertake this circumvention inquiry on a country-wide basis, Commerce further found that the respondents were "representative of the experience of other producers and exporters of small and large garlic chunks." Appx1012. Commerce, therefore, applied its preliminary affirmative determination on a country-wide basis. *Id*.

Commerce invited interested parties to comment on the Preliminary Determination. On December 5, 2023, Green Garden

submitted comments. *See* Appx2570-2584. Green Garden claimed that "Green Garden's products are explicitly excluded from the scope of the antidumping order" because "Green Garden's {inquiry garlic} are preserved by the addition of citric acid{.}" Appx22573-74 (Green Garden's Dec. 5 2023 Comments). According to Green Garden, Commerce's preliminary determination that the inquiry garlic circumvented the Order improperly "brought {inquiry garlic} back within the scope in the context of {the} circumvention inquiry." Appx2573. Green Garden also claimed that inquiry garlic is "significantly altered" rather than simply minorly altered, as Commerce determined. Appx2576. Green Garden did not raise any arguments specifically responding to the respondents that submitted questionnaire responses, nor did Green Garden comment on Commerce's respondent selection methodology or the country-wide applicability of Commerce's finding to companies which were not selected for individual examination.

On December 19, 2023, the petitioners and I Love Produce submitted rebuttal comments arguing that the record did not support Green Garden's claims that its products were preserved by the addition

of citric acid because the record indicated only that citric acid "*can* be a preservative depending on how it is used in a specific application." *See* Appx2591-2613 *(*Petitioner's Dec. 19, 2023 Rebuttal Comments); Appx2614-2621 (I Love Produce's Dec. 19, 2023 Rebuttal Comments). Petitioners and I Love Produce further argued that Green Garden was incorrect in its assertion that inquiry garlic is "significantly altered," and they supported Commerce's preliminary finding that inquiry garlic is minorly altered from subject garlic. *See* Appx2603-2611; Appx2617-2618.

V.    Commerce Makes Final Affirmative Circumvention Determination

On June 13, 2024, Commerce published its final affirmative determination. Appx1016-1037. Commerce continued to find that the record evidence supported a finding that inquiry garlic was minorly altered and was circumventing the antidumping duty order. *Id.*

In its final determination, Commerce also found that the record did not support a finding that inquiry garlic is preserved by the addition of citric acid. Appx1027. Commerce highlighted that the respondents chosen for individual examination and found to be representative of other producers in the country did *not* comment on the function or

16

purpose of citric acid in the production process of inquiry garlic. *Id.*
Because there was not sufficient evidence to support a finding then that
the respondents' inquiry garlic was "prepared or preserved by the
addition of other ingredients or heat processing," Commerce found that
inquiry garlic was not explicitly excluded from the scope of the
antidumping duty order by nature of being preserved by the addition of
other ingredients. Appx1027-1028.

Commerce also continued to find that inquiry garlic was not
significantly altered from the garlic that was the subject of the
underlying antidumping duty order based on its analysis of the factors
of a minor alteration inquiry: (1) overall physical characteristics, (2)
expectations of ultimate users, (3) use of the merchandise, (4) channels
of marketing and distribution, and (5) cost of any modification relative
to the value of the imported products. Appx1034-1035. In this respect,
Commerce found that it had previously analyzed the record and
addressed arguments relating to the minor alteration factors in its
Preliminary Determination. Appx1034. Commerce found no basis to
depart from its preliminary findings on this point.

This appeal followed.

## SUMMARY OF ARGUMENT

Commerce's final results should be sustained in their entirety.

Commerce, in conducting its circumvention inquiry, acted within its discretion and consistently with the governing statutory and regulatory framework. Its final determination that Green Garden's inquiry garlic was circumventing the antidumping duty order on fresh garlic from China is supported by substantial evidence and is otherwise in accordance with the law. Specifically, in determining that inquiry garlic is a minor alteration of subject fresh garlic, Commerce applied the relevant statutory factors to conclude that inquiry garlic is a minor alteration of subject fresh garlic and therefore should be subject to the antidumping duty order.

In their opening brief, Green Garden contends that Commerce's application of the minor alteration provision was unlawful because Commerce "acted *ultra vires*" when it determined that there was insufficient evidence to find that the scope of the Order did not expressly exclude the inquiry garlic by the addition of citric acid as a preservative. This is not borne out by the record. Commerce found that the respondents, representing the experience of other producers of

inquiry garlic, had made no statement as to the function of citric acid in their production processes for inquiry garlic such that there was no basis to reach the conclusion that Green Garden advocates.

Green Garden also argues that Commerce's determination that the record did not support a finding that inquiry garlic was preserved by the addition of citric acid was an improper application of adverse inferences to the facts available. Because Green Garden failed to make this argument in the administrative proceeding, Green Garden waived its opportunity to now make this argument on appeal to this Court. And in any event, Green Garden misunderstands the finding made by Commerce, which did not resort to the facts available or apply an adverse inference to those facts; Commerce drew its conclusion from the information that was on the record.

Finally, Green Garden contends that Commerce's minor alteration determination is generally not supported by substantial evidence. Green Garden is incorrect. Commerce thoroughly considered the evidence before it and applied its well-established minor alteration analysis to that evidence to find that all of the factors of a minor

alteration analysis weighed in favor of a finding of circumvention, and appropriately made an affirmative circumvention determination.

ARGUMENT

## I.    Standard Of Review

This Court must sustain Commerce's determination, finding, or conclusion unless it is unsupported by substantial evidence. *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996). "Substantial evidence" is "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion reached." *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938). Substantial evidence may be "less that the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 619-20 (1966). To hold a decision supported by substantial evidence, the Court need only find evidence "which could reasonably lead to {Commerce's} conclusion," so that the conclusion was a "rational decision." *Matsushita Electrical Industrial Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984). A party challenging

20

Commerce's determination under the substantial evidence standard "has chosen a course with a high barrier to reversal," *Nippon Steel v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006), and the Court should sustain Commerce's factual determinations as long as they are reasonable and supported by the record as a whole, even if some record evidence detracts from the agency's conclusions. *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984).

II.    Commerce Correctly Determined that Green Garden's Inquiry Merchandise Is Excluded From the Scope of the Order

It is well established and undisputed that "Section 1677j(c) does not apply to products unequivocally excluded from the {antidumping} order in the first place." *Wheatland*, 161 F.3d at 1371; *see also* Pl. Br. at 16. The inverse holds true as well: if an article subject to a circumvention inquiry is not and *has not been* excluded from the order, then Commerce is free to undertake a circumvention inquiry and make an affirmative circumvention determination. In *Wheatland*, this Court and then the Federal Circuit affirmed Commerce's determination that Commerce was not required to undertake a circumvention inquiry when the product in question was already expressly excluded from the scope of the relevant Order. *See Wheatland*, 161 F. 3d at 1369.

In its opening brief, Green Garden argues that the scope of the Order expressly excludes garlic "preserved" by the addition of other ingredients, and that the citric acid added to Green Garden's inquiry garlic acts as a preservative. Pl. Br. at 19-20. Therefore, Green Garden asserts, Commerce could not lawfully undertake a circumvention inquiry and determine that inquiry garlic was circumventing the Order. *Id.* But this argument relies on the false premise that inquiry garlic is expressly excluded from the Order in the first instance. Commerce did not find that Green Garden's garlic fell under an express exclusion from the Order. Commerce made no finding as to whether the inquiry garlic was "prepared or preserved by the addition or other ingredients or heat processing." Appx1135; *see also* Appx1345-1351.

Rather, in its Final Scope Ruling concerning Green Garden's small and large chunks of garlic that preceded the circumvention inquiry at issue in this case, Commerce determined that Green Garden's merchandise fell outside the literal scope of the Order altogether.. *See generally* Appx1345-1351. Commerce did not need to answer whether Green Garden's merchandise was *expressly* excluded from the Order through one of the specified exclusions as garlic "prepared or preserved

by the addition of other ingredients or heat processing." Appx1135.

Instead, in response to Green Garden's argument that its large and

small garlic chunks were prepared or preserved by citric acid,

Commerce explained in its Preliminary Scope Ruling that "the addition

of citric acid in the blanching process does not necessarily exclude

Green Garden's large garlic chunks and small garlic chunks from the

*Order*." Appx1320. Commerce did not resolve the question of whether

Green Garden's garlic was excluded from the scope because Commerce

had already determined the garlic to be out-of-scope. *Id.* That is,

Commerce explained that "{t}he scope includes 'all grades of garlic,

whole or separated into constituent cloves, whether or not peeled, fresh,

chilled, frozen, provisionally preserved, or packed in water or other

ingredients or heat processing.'" Appx1319-1320 (quoting 1994

Antidumping Order on Fresh Garlic from China, Appx1135-1137).

Because Green Garden's garlic was not "'garlic, whole or separated into

constituent cloves, whether or not peeled,'" Commerce determined that

because Green Garden's garlic was not that, and instead was "reduced

in size beyond peeling," it was out of scope. Appx1320 (quoting

Appx1135-1137). Commerce did not revisit or alter this conclusion in its

Final Scope Determination. *See generally* Appx1345-1351. Therefore, Green Garden's claim that its inquiry garlic was expressly excluded from the Order due to further processing by citric acid has no basis in the record.

Green Garden's arguments to the contrary misunderstand the nature of Commerce's country-wide inquiry in this case. Commerce lawfully conducted a country-wide inquiry in this case by issuing questionnaires to the two mandatory respondents because they were the two largest producers or exporters based on CBP data.[2] *See* Appx1757-1762; *see also* 19 CFR 351.226(f)(3) (("the Secretary may limit issuance of questionnaires to a reasonable number of respondents."), and (m)(1). Therefore, Commerce's analysis focused on the production processes of these two respondents (Fenjun and Hengxin). And when Commerce asked them to describe their production processes, both mentioned the inclusion of citric acid in the production process but did not allege or provide evidence indicating that citric acid functions as a preservative in their production processes. *See* Appx2412-2413, 1782-

---

[2] Green Garden did not challenge Commerce's selection of these two mandatory respondents throughout the administrative review, nor does it challenge that determination now before this Court.

1783. Whether citric acid may function as a preservative in some other application is irrelevant in a country-wide inquiry, when Commerce's inquiry necessarily focuses on the information provided by selected companies in the preparation of comparable subject merchandise.

Indeed, Green Garden itself acknowledged this fact when it requested the rejection of rebuttal information submitted in response to respondents' questionnaire responses. In so doing, Green Garden wrote that "{the respondents'} questionnaire responses contain no information about the purpose or function of citric acid{,}" and that the comments that were submitted by I Love Produce discussing the purpose or function of citric acid "were not submitted to rebut, clarify, or correct factual information in the questionnaire responses." *See* Appx2456; *see generally* Appx2455-2458. Commerce agreed; the questionnaire responses of the respondents contained no information pertaining to the *purpose* or function of citric acid, merely that it was used in companies'

production processes.  Appx2490. For that reason, Commerce rejected I
Love Produce's filing as non-responsive.[3] *See generally* Appx2490-91.

Because "the *respondents* {had} not made any comment on the
function or purpose of citric acid in the production process of {inquiry
garlic}," Commerce reasonably determined that it had no basis to
conclude that the *respondents* used citric acid as a preservative.
Appx1027 (emphasis added); Appx2456; Appx2413-2414, 1787. As such,
Commerce appropriately found that Green Garden did not present a
situation that was comparable to the one in *Wheatland*. In *Wheatland,*
the Federal Circuit determined sufficient evidence on the record
supported a finding that the inquiry merchandise was specifically
excluded from the scope of the order through express exclusions based
on the plain and unambiguous language of the order. *Wheatland*, 161
F.3d at 1369. In this case, however, Commerce did not have comparable
evidence on the record to support a finding that the inquiry

---

[3] Green Garden is incorrect that this amounts to an instance when,
"without any warning or explanation, Commerce later weaponized
Plaintiff's rightful objection to I Love Produce's untimely comments in
order to justify its disregard for *Wheatland*." Pl. Br. at 30. Commerce
was justified in looking to Green Garden's own submissions and
commentary on the record in reaching its decision.

merchandise met an express exclusion to the Order—and indeed, Commerce did not make its final scope ruling relying on any such exclusion. Appx1027.[4] Accordingly, Commerce did not exceed its statutory authority by including inquiry garlic in the scope of the Order pursuant to a minor alterations analysis under 19 U.S.C. § 1677j(c).

Green Garden argues that Commerce's dismissal of *Wheatland* hinges on a "demonstrably false accusation of failure to provide evidence on the record" regarding the function or purpose of citric acid. *See* Pl. Br. at 23-24. According to Green Garden, it in fact did put on the record evidence to support a claim that citric acid is used to preserve the garlic. *Id.* Not so. Green Garden did not provide any information with respect to the purpose of citric acid as concerns the *inquiry garlic* subject to the circumvention inquiry. Rather, the mandatory respondents' questionnaire responses "contain no information about the purpose or function of citric acid" from which Commerce could—or

---

[4] Commerce did not address or decide whether *Wheatland* would have applied even if citric acid functioned as a preservative. *See* Appx1027-1028 (finding instead certain arguments moot and, therefore, not addressing them).

should—have reached a determination.[5] Appx1027. When Commerce's determination applies on a country-wide basis, based on questionnaire responses from a reasonable number of respondents, Commerce appropriately found no record information regarding the purpose or function of citric acid in the inquiry merchandise.

In its submissions to Commerce, Green Garden did not argue that the evidence it submitted applied to the respondents' production processes. Rather, Green Garden repeatedly stated that *Green Garden's* inquiry garlic used citric acid as a preservative, rather than making any claim about Fenjun and Hegxin's use of citric acid. Appx1051 ("*Green Garden's* {inquiry garlic is} expressly excluded from the antidumping duty order because {it is} prepared or preserved by the addition of citric acid." (emphasis added)); *see also* Appx2570-2584 (Green Garden's Dec. 5, 2023 Comments) ("*Green Garden's* {inquiry garlic is} preserved by the addition of citric acid" (emphasis added)). Now in its appeal of Commerce's circumvention determination, Green Garden belatedly

---

[5] We do not disagree with Green Garden that there is no dispute that Green Garden adds citric acid to the inquiry merchandise. *See* Pl. Br. at 26. The dispute, rather, is what *purpose* the citric acid had and whether the use of citric acid means that the inquiry garlic satisfies an exclusion to the scope.

attempts to tie its request to the mandatory respondents—this must fail

because it was not exhausted before Commerce.[6]

And in any event, the information that Green Garden put on the

record does not demonstrate citric acid's purpose in the production

processes of the respondents. For example, Green Garden cites to its

submission of a CBP ruling classifying another company's garlic chunks

coated with citric acid, Pl. Br. at 24 – information that is neither

specific to the mandatory respondents, nor dispositive. *See* Appx1093-

1095 (Green Garden's Scope Ruling Request, CBP Ruling at Exhibit 1),

Appx1104-1112 (Prelim. Scope Ruling at 8, explaining that HTSUS

subheadings are not dispositive in determining whether a product is in-

scope). Green Garden also cites to its submission of general statements

indicating that citric acid may be used as a preservative, but these

sources are not specific to mandatory respondents or inquiry garlic. *See*

Pl. Br. at 24; *see also* Appx1139-1151 (Green Garden's Scope Ruling

Request at Exhibit 9, FDA definition of preservative), Appx11521160

(Exhibit 10, an article which generally discusses citric acid's possible

---

[6] For a detailed discussion of administrative exhaustion, *see* Section
III.A.

use as a flavor enhancer, emulsifier, sterilizing agent, or preservative, among other uses), Appx1353 (Exhibit 9, Google-Oxford Dictionary result of "preserve"). But as Commerce explained in its Final Circumvention Determination, none of this evidence responds to the mandatory respondents' use of citric acid in the production process, which is the central focus of Commerce's inquiry.

In sum, the record does not support a finding that the *respondents* used citric acid as a preservative. In the absence of that factual information on the record, which would have the effect of making inquiry merchandise excluded from the Order for being "prepared or preserved by the addition or other ingredients or heat processing," Appx1135, Commerce reasonably found that a circumvention inquiry was not forbidden.

III.   <u>Commerce's Determination Was Not Based on Facts Available with An Adverse Inference</u>

In its opening brief, Green Garden also argues that Commerce's determination is not supported by substantial evidence because Commerce "ignored evidence and improperly applied adverse inferences." Pl. Br. at 22. Specifically, Green Garden argues that Commerce resorted to adverse inferences when it determined that the

record did not contain sufficient evidence to support a finding that inquiry garlic is preserved by the addition of citric acid. Pl. Br. at 22-23. As an initial matter, the Court should not consider this argument because it was not exhausted before Commerce and is therefore waived on appeal to this Court. Even so, Green Garden's argument lacks any foundation in the record because Commerce did not rely on facts available in this case, let alone an adverse inference.

A.  Green Garden Failed To Exhaust Its Administrative Remedies With Respect To Its Argument That Commerce Resorted To The Facts Available And Applied Adverse Inferences

As an initial matter, Green Garden did not raise its adverse inferences argument before Commerce and it, therefore, failed to exhaust its administrative remedies with respect to this claim. Under 28 U.S.C. § 2637(d), Congress expressly mandated that the Court of International Trade "{s}hall, where appropriate, require the exhaustion of administrative remedies" in civil actions arising from Commerce's antidumping duty determinations. The statute reflects "a congressional intent that, absent a strong contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies." *Corus Staal*, 502 F.3d 1370, 1379 (Fed. Cir. 2007).

31

Additionally, exhaustion is "a requirement explicitly imposed by the agency as a prerequisite for judicial review." *Corus Staal*, 502 F.3d at 1379. Commerce's regulations make clear that a party's case brief "must present all arguments that continue in the submitter's view to be relevant to the Secretary's final determination or results." 19 C.F.R. § 351.309(c)(2); *see also Dorbest Ltd. v. United States*, 604 F.3d 1363, 1375 (Fed. Cir. 2010) ("Commerce regulations require the presentation of all issues and arguments in a party's administrative case brief"). This Court, therefore, "generally takes a strict view of the requirement that parties exhaust their administrative remedies before {Commerce} in trade cases." *Corus Staal*, 502 F.3d at 1379.

In this dispute concerning the circumvention inquiry, Green Garden did not present any argument to Commerce regarding the alleged improper application of adverse inferences. Rather, Green Garden devoted its administrative case brief to the following arguments: (1) Commerce did not adequately address Green Garden's contention that Green Garden's products are explicitly excluded from the scope of the antidumping duty Order (without any mention of adverse inferences); (2) Green Garden's products are distinct from the

32

products in a prior scope ruling concerning individual quick frozen garlic cloves from Trinity Distribution Inc., which were found to be within the scope (not at issue in this case); and (3) inquiry garlic is significantly altered from subject garlic. *See* Appx2573-2579. Because Green Garden failed to raise its "adverse inferences" argument before Commerce and does not articulate any basis upon which this Court could reasonably exercise its discretion to excuse the exhaustion requirement in this instance, the Court should decline to consider Green Garden's new claim.

      B.    <u>Regardless, Commerce Did Not Base Its Determination In This Circumvention Inquiry On Facts Available With An Adverse Inference</u>

Green Garden misunderstands Commerce's analysis of the evidence. Green Garden argues that, even if the record were missing factual information regarding the meaning of citric acid, Commerce improperly applied adverse inferences to the facts available in this case within the meaning of 19 U.S.C. § 1677e(b). Pl. Br. at 22-23. However, Commerce did not rely on facts otherwise available in this case.

Under 19 U.S.C. § 1677e(a), when necessary information is not available on the record, or an interested party or any other person

33

withholds information requested, fails to provide requested information by the required deadlines, significantly impedes a proceeding, or information provided cannot be verified, Commerce shall "use the facts otherwise available in reaching the applicable determination{.}" Additionally, under 19 U.S.C. § 1677e(b), Commerce may, when necessary information is not on the record due to the failure of an interested party to cooperate by acting to the best of its ability to comply with a request for information, use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available. When determining whether a respondent has complied to the "best of its ability," Commerce "assess{es} whether {a} respondent has put forth its maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation." *Nippon Steel*, 337 F.3d at 1382. Adverse inferences are not warranted "merely from a failure to respond" but rather in instances when Commerce reasonably expected that "more forthcoming responses should have been made." *Id*. at 1383.

As discussed above, Commerce reasonably found a lack of evidence on the record to support a conclusion that citric acid was used as a

preservative by respondents. App1027-1028. This was not a finding

based on facts available. Indeed, Commerce did not find that

information regarding citric acid's function was necessary to its minor

alterations analysis within the meaning of 19 U.S.C. § 1677e(a), or that

the respondents impeded the proceeding or failed to submit requested

information. Nor did Commerce find that the respondents failed to act

to the best of their abilities to provide information pursuant to 19

U.S.C. § 1677e(b). Curiously, Green Garden appears to agree at least

that "Commerce makes no finding that either Plaintiff or Inquiry

Respondents failed to cooperate by not acting to the best of their

abilities," Pl. Br. at 31, even if it disagrees with the implications of such

a concession. Commerce found that respondents did not demonstrate, or

even assert, that their inquiry garlic was "prepared or preserved by the

addition of other ingredients or heat processing" due to its blanching

and cooling with citric acid. Appx1027-1028. In the absence of such an

assertion or evidence, Commerce reasonably determined that it had no

basis to reach the conclusion that Green Garden now advocates.

Green Garden contends that Commerce was required to ask

respondents about the role of citric acid in their production process. *See*

Pl. Br. at 32. This is incorrect. As this Court held in *SMA Surfaces*, neither the statute nor the regulations require Commerce to provide an opportunity for parties to explain or to correct information that was not requested by Commerce. *See SMA Surfaces, Inc. v. United States*, 617 F.Supp.3d 1263, 1279 (Ct. Int'l Trade 2023) (finding that, although Commerce may be required to provide an opportunity to remedy or to explain a deficient response to a request for information under 19 U.S.C. § 1677m(d), Commerce is not obligated by any statute or regulation to make a request for information in the first instance). Ultimately, "the burden of creating an adequate record lies with interested parties and not with Commerce." *QVD Food Co., Ltd. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011) (citing *Tianjin Mach. Imp. & Exp. Corp. v. United States*, 806 F. Supp 1008, 1015 (Ct. Int'l Trade 1992), and *NTN Bearing Corp. of Am. v. United States*, 997 F.2d 1453, 1458-59 (Fed. Cir. 1993)). To the extent Green Garden relies on *Koyo Seiko Co. v. United States*, 92 F. 3d 1162, 1165 (Fed. Cir. 1996) to claim that it was not on notice of its obligation to provide Commerce with information about the purpose of citric acid in its preparation of the inquiry merchandise, that reliance is misplaced. *See* Pl. Br. at 32. If

36

the role of citric acid were as important to Green Garden's

circumvention argument as it now claims, Green Garden should have

provided that rebuttal information without a direct instruction from

Commerce to do so. Commerce was not required to ask respondents

about the purpose of citric acid in their production process; rather, to

the extent that respondents felt that their product fell within a specific

scope exclusion, it was incumbent on the respondents to provide

evidence establishing this point.

IV.    Commerce's Affirmative Circumvention Determination Under
       The Minor Alterations Provision Is Supported By Substantial
       Evidence

Green Garden asserts that Commerce's minor alterations analysis

ignored evidence that inquiry garlic has different end users and

channels of distribution than in-scope garlic, and that modification of

in-scope garlic into inquiry garlic adds significant value. *See* Pl. Br. at

35-43. However, Commerce's affirmative circumvention determination

under the minor alterations provision is supported by substantial

evidence and is otherwise in accordance with law.

Consistent with its practice, regulations, and Congressional

intent, Commerce conducted its minor alteration inquiry by considering

the following five factors: (1) the overall physical characteristics of the inquiry merchandise, large and small garlic chunks; (2) the expectations of the ultimate end users of the inquiry merchandise; (3) the use of the inquiry merchandise; (4) the channels through which inquiry merchandise is sold; and (5) the cost of modifications relative to the total value of the imported product. In its Preliminary Determination, Commerce considered the record evidence and found that all five factors weighed in favor of a finding of circumvention.[7] *See* Appx1010-1011. And in its Final Determination, Commerce found no reason in the comments it received to alter its preliminary determination. *See* Appx1032-1035.

Now in its appeal to this Court, Green Garden alleges that Commerce's decision "provides no genuine reasoning for its conclusions," suggesting that Commerce did not provide an explicit analysis of every piece of evidence on the record. *See* Pl. Br. at 34. "An

---

[7] In its Final Determination, Commerce cited to the Preliminary Determination to address Green Garden's arguments and continued to find that the record evidence cited in the Preliminary Determination in Commerce's analysis of the minor alteration factors supported the conclusion that inquiry merchandise was minorly altered and circumventing the order. *See* Appx1034.

explicit explanation is not necessary, however, where the agency's decisional path is reasonably discernable." *See Wheatland*, 161 F.3d at 1369-70; *see also Pirelli Tyre Co. v. United States*, No. 2023-2266, 2025 WL 451382, at *4 (Fed. Cir. Feb. 11, 2025) ("The substantial-evidence standard requires Commerce to consider all evidence on the record, but such consideration does not necessitate explicit mention and discussion of each piece of evidence."). And in any event, Commerce correctly considered each relevant factor in its minor alterations analysis.

(1) Physical Characteristics. Commerce determined that "the physical characteristics of the inquiry {garlic} are the same as that of in-scope fresh garlic, except in terms of their size." Appx1026-1027. Green Garden has not challenged Commerce's findings regarding this factor; rather, Green Garden argues that the reduced size of inquiry garlic influences the later factors. *See* Pl. Br. at 34.

(2) Expectations of Ultimate Users, and (3) Use of Merchandise. Regarding the expectation of the ultimate users and use of the merchandise, Commerce determined that the expectations of the ultimate user and the use of the merchandise for inquiry garlic are the same as subject garlic, which supports a finding that inquiry

merchandise is only minorly altered. Appx1011. In making this

determination, Commerce cited marketing materials provided by both

the petitioners and respondents indicating inquiry garlic is, similarly to

subject garlic, "sold to industrial users, restaurants, and for purchase in

retai{l} establishments." *Id.*

Green Garden argues that Commerce did not specifically address

the ITC report from the underlying investigation, which states that

fresh garlic "*may* be used or cooked, whole (such as in baked garlic), or

in cloves. In such instances, it is valued for its appearance as well as

flavor." Pl. Br. at 35; *see also* Appx1476 (emphasis added). According to

Green Garden, this statement demonstrates that end users have

different expectations for inquiry garlic than subject garlic because

inquiry garlic's visual aesthetic is not material, as shown by the use of

lower grade garlic. Pl. Br. at 35-36. However, Green Garden disregards

important context. The cited ITC report states in the sentence following

that quoted by Green Garden that "{fresh garlic} may also be used in

chopped or pureed form." Appx1476.  The footnote accompanying this

sentence states that "{a}ccording to industry sources, these forms of

processed fresh garlic are often displayed alongside fresh garlic as an

alternative to using unprocessed fresh garlic bulbs." *Id.* Although
Commerce did not explicitly cite the ITC report in its decision,
Commerce's decisional path is reasonably discernable because
Commerce stated that inquiry garlic and subject garlic can both be
further processed into garlic powder, dips, mashes, and salads, similar
to the discussion in the ITC report. *See* Appx1027; *see also* Appx1476.

Green Garden also claims that "Commerce declare{d} all garlic
products used as a "food product or seasoning" are substantially
similar." Pl. Br. at 35. This is a misstatement of Commerce's findings.
Commerce in its Preliminary Determination cited the text of the Order
which states "{t}he subject merchandise is used principally as a food
product and for seasoning." Appx1027. Commerce additionally analyzed
the primary uses of inquiry merchandise by end users, citing record
evidence provided by respondents that subject fresh garlic could be
reasonably substituted with inquiry merchandise. *Id.* This goes to the
heart of the expectations of the ultimate user and the end use of the
inquiry merchandise: respondents directly stated that one could
reasonably be substituted for the other. Commerce therefore
determined, and the evidence supports, that the factors of the

41

expectations of ultimate users and the end use of inquiry garlic

supported a finding that inquiry garlic was minorly altered.

(4) Channels of Marketing. Commerce found that inquiry garlic

and subject garlic are in the same channels of marketing and

distribution, and that this factor "supports a finding that the inquiry

merchandise is minorly altered." Appx1027. Green Garden argues that

"its products meet the needs of a vastly different consumer base than

that of fresh garlic" because inquiry garlic is sold mainly to institutional

users rather than wholesalers and distributors. Pl. Br. at 36. However,

this information provided by Green Garden conflicts with other

evidence on the record provided by both the petitioners and the

respondents. As Commerce stated in the *Preliminary Determination*:

> The petitioners provided marketing materials to
> demonstrate that {inquiry garlic} is generally used in the
> same applications as fresh garlic and that it is similarly sold
> to industrial users, restaurants, and for purchase in retai{l}
> establishments.

appx1027; *see also* Appx2037, Appx2174-2191. Additionally, the

respondents provided company brochures that did not differentiate

between fresh garlic and inquiry garlic, while making differentiations

between sliced and diced forms for other vegetables. Appx1027; *see also*

Appx1920, 2442. Commerce reasonably afforded more weight to this respondent-specific evidence and found that the factor of channels of marketing and distribution weighed in favor of a finding that inquiry garlic was minorly altered.

(5) Cost of Any Modification. Commerce also found that the cost of modification relative to the value of the final product weighed in favor of a finding of circumvention. Appx1027-1028.  Green Garden argues that "Commerce provided no record evidence" for the conclusion that "the lower grade garlic used for {inquiry garlic} provides no added value to the merchandise{.}" Pl. Br. at 41. This is incorrect. Commerce cited data submitted by the petitioners demonstrating that the average unit value of imports of inquiry garlic was *lower* than that of fresh garlic subject to the Order. Appx1027; *see also* Appx2110-2113. Commerce also cited the respondents' questionnaire responses, which indicated that making inquiry garlic allows respondents to use a lower grade of garlic than fresh garlic cloves, bringing the price of inquiry garlic below that of whole garlic cloves. Appx1027-1028; *see also* Appx1798; Appx2428; Appx1963; Appx2000-2001.

Green Garden also argues that Commerce "invents a new factor not enumerated in 19 C.F.R. § 351.226(j)" when it included in its analysis the reduced cost associated with using lower grade garlic in the production of inquiry garlic. Pl. Br. at 42-43. Green Garden fails to understand, however, that Commerce was considering the totality of modifications; Commerce considered both the increased cost of modification due to the additional labor, machinery, and equipment costs, as well as the reduced cost of modification due to the use of a cheaper input, lower grade garlic. *See* App1027-1028. In total, the modifications led to a reduced cost of inquiry garlic when compared to subject fresh garlic. *Id.* As such, Commerce reasonably found that the cost of modification relative to the total value supported a finding that inquiry garlic is minorly altered. Appx1028.

As demonstrated above, Commerce provided a reasoned analysis with citation to the record evidence for each factor of a minor alteration analysis. That Green Garden disagrees with Commerce's conclusion from that evidence does not mean that Commerce's determination was unlawful. Because Commerce's decision is supported by substantial evidence and in accordance with law, the Court should uphold

44

Commerce's minor alterations analysis with respect to the inquiry garlic.

CONCLUSION

For these reasons, the Court should deny Green Garden's motion for judgment on the agency record and sustain Commerce's Final Circumvention Determination in its entirety.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Reginald T. Blades, Jr.
Reginald T. Blades, Jr.
Assistant Direction

FEE PAUWELS
Attorney
Department of Commerce
Office of Chief Counsel for Trade
Enforcement & Compliance
1401 Constitution Avenue, NW
Washington, DC 20005

/s/ Isabelle Aubrun
Isabelle Aubrun
U.S. Department of Justice
Commercial Litigation Branch
Civil Division
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
(202) 616-0465
isabelle.aubrun2@usdoj.gov

Dated July 18, 2025

*Attorneys for Defendant, the United States*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains no more than 8,311 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Century Schoolbook).

/s/ Isabelle Aubrun

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

Before: The Honorable M. Miller Baker, Judge

| | |
|---|---|
| GREEN GARDEN PRODUCE, LLC, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| THE UNITED STATES, | ) Court No. 24-00114 ) ) |
| Defendant, | ) ) |
| and | ) ) |
| FRESH GARLIC PRODUCERS ASSOCIATION, CHRISTOPHER RANCH, L.L.C., THE GARLIC COMPANY, and VALLEY GARLIC | ) ) ) ) ) |
| Defendant- Intervenor. | ) ) ) |

## <u>ORDER</u>

Upon consideration of plaintiff's motions for judgment on the agency record, all responses thereto, and all other pertinent papers, it is hereby

ORDERED that plaintiff's motion is DENIED; and it is further

ORDERED that the Department of Commerce's determination is sustained; and it is

further

     ORDERED that judgment shall enter in favor of the United

States.

     **SO ORDERED.**

                                    _____

                                    The Hon. M. Miller Bake, Judge

Dated:_____, 2025

      New York, New York