## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

| | | |
|---|---|---|
| **GREEN GARDEN PRODUCE, LLC,** | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| **UNITED STATES,** | ) | Court No. 24-00114 |
| Defendant, | ) | |
| and | ) | |
| **FRESH GARLIC PRODUCERS ASSOCIATION AND ITS INDIVIDUAL MEMBERS,** | ) | |
| Defendant-Intervenors. | ) | |

## <u>DEFENDANT INTERVENORS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD PURSUANT TO RULE 56.2</u>

JOHN M. HERRMANN
JOSHUA R. MOREY
KELLEY DRYE & WARREN LLP
Washington Harbour, Suite 400
3050 K Street, NW
Washington, DC 20007
(202) 342-8400

Counsel to Defendant-Intervenors

August 8, 2025

# **Table of Contents**

**Page**

Administrative Determination Under Review ........................................ 2

Issues Presented.................................................................................... 2

Standard Of Review ............................................................................. 5

Statement Of Facts ............................................................................... 5

Argument............................................................................................ 10

    I.     Commerce Lawfully Determined IQF Garlic Chunks
         Are Not Expressly and Unambiguously Excluded by
         the Order's Scope Definition ................................................. 10

         A.    *Wheatland* Is Inapposite ............................................ 10

         B.    Commerce Lawfully Determined the Record Does
               Not Support the Conclusion That IQF Garlic
               Chunks Are Prepared or Preserved by the
               Addition of Other Ingredients ................................... 13

    II.    Commerce Lawfully Determined That IQF Garlic
         Chunks Are Altered In Minor Respects From In-Scope
         Merchandise........................................................................ 18

    III.   Conclusion .......................................................................... 20

# <u>Table of Authorities</u>

**Page(s)**

## Cases

*Aluminum Extrusions Fair Trade Comm. v. United States*,
617 F. Supp. 3d 1296 (Ct. Int'l Trade 2023) ............................ 15-16, 17

*Bowman Transp. Inc. v. Arkansas-Best Freight Sys., Inc.*,
419 U.S. 281 (1974) ....................................................................... 5, 15

*Deacero S.A. de C.V. v. United States*,
817 F.3d 1332 (Fed. Cir. 2016) ................................................... 2-3, 10

*I.D.I. Int'l Dev. & Inv. Corp. v. United States*,
Slip Op. 21-82, 2021 Ct. Int'l Trade LEXIS 91
(July 6, 2021) ....................................................................................... 19

*Jacobi Carbons AB v. United States*,
313 F. Supp. 3d 1344 (Ct. Int'l Trade 2018) ............................... 19-20

*Jiangsu Zhongji Lamination Materials Co., (HK), Ltd. v.
United States*, Slip Op. 23-84,
2023 Ct. Int'l Trade LEXIS 88 (June 7, 2023) ............................ 19-20

*Manchester Tank & Equip. Co. v. United States*,
483 F. Supp. 3d 1309 (Ct. Int'l Trade 2020) ............................. 15-16, 17

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut.*,
463 U.S. 29 (1983) ........................................................................... 5, 15

*NMB Singapore Ltd. v. United States*,
557 F.3d 1316 (Fed. Cir. 2009) .......................................................... 16

*Timken Co. v. United States*,
699 F. Supp. 300 (Ct. Int'l Trade 1988) ............................................. 19

*Wheatland Tube Co. v. United States*,
161 F.3d 1365 (Fed. Cir. 1998) ................................................. *passim*

## Statutes and Regulations

19 U.S.C § 1677j(c) ....................................................................... 3, 4, 9, 18

## Administrative Determinations

*Antidumping Duty Order: Fresh Garlic from the People's
Republic of China*, 59 Fed. Reg. 59,209 (Nov. 16, 1994)
("the Order") ................................................................ *passim*

*Fresh Garlic From the People's Republic of China:
Affirmative Final Determination of Circumvention of the
Antidumping Duty Order*, 89 Fed. Reg. 50,256
(Dep't Commerce June 13, 2024) (Appx1036-1037), and
the accompanying *Issues and Decision Memorandum*
dated June 7, 2024 (Appx1022) ................................................ *passim*

*Scope Ruling for Certain Diced Garlic from the People's
Republic of China (Van Drunen)*
(Dep't Commerce June 28, 2021) ....................................................... 6-7

*Scope Ruling – Trinity Diced Garlic and Garlic Puree –
Antidumping Duty Order on Certain Fresh Garlic from
the People's Republic of China*
(Dep't Commerce July 22, 2021) ....................................................... 6-8

*Scope Ruling – Trinity IQF Garlic Cloves – Antidumping
Duty Order on Certain Fresh Garlic from the People's
Republic of China* (Dep't Commerce July 21, 2021) ......................... 6-8

*Glossary*

| Acronym | Item |
|---|---|
| Def.'s Resp. | Defendant's Response in Opposition to Plaintiff's Rule 56.2 Motion for Judgement on the Agency Record (ECF No. 30) |
| Defendant-Intervenors | Fresh Garlic Producers Association and its individual members, Christopher Ranch L.L.C., The Garlic Company, and Valley Garlic, Inc. |
| Dongsheng | Dongsheng Foods USA |
| IQF | Individually quick frozen |
| "inquiry merchandise" | individually quick frozen garlic chunks |
| Fenjun | Fenjun Foodstuff Co., Ltd. |
| Hengxin | Deesheng Hengxin Food Co., Ltd. |
| the Order | *Antidumping Duty Order: Fresh Garlic from the People's Republic of China*, 59 Fed. Reg. 59,209 (Nov. 16, 1994) |
| Plaintiff | Green Garden Produce, LLC |
| Pl.'s Br. | Plaintiff's Motion for Judgement on the Agency Record Pursuant to Rule 56.2 (ECF No. 24) |
| Trinity | Trinity Distribution Inc. |

| Acronym | Item |
|---|---|
| Van Drunen | RJ Van Drunen & Sons Inc., doing business as Van Drunen Farms |

This brief is filed on behalf of the Fresh Garlic Producers Association and its individual members, Christopher Ranch L.L.C., The Garlic Company, and Valley Garlic, Inc. (collectively, "Defendant-Intervenors"), in opposition to Green Garden Produce, LLC's ("Plaintiff") Motion for Judgment on the Agency Record Pursuant to Rule 56.2 (ECF No. 24) (hereinafter "Pl.'s Br."). Defendant-Intervenors urge this Court to reject Plaintiff's claims and to sustain the underlying agency determination.

This Court's scheduling order established a: (1) stagger between the deadlines for Defendant's and Defendant-Intervenors' response briefs; and (2) lower word count limit for Defendant-Intervenors' brief. Scheduling Order at 2 (ECF No. 21). Given the stagger and lower word count limit, Defendant-Intervenors incorporate by reference Defendant's Response in Opposition to Plaintiff's Rule 56.2 Motion for Judgment on the Agency Record (ECF No. 30) (hereinafter "Def.'s Resp."), which Defendant-Intervenors adopt and support except as otherwise noted.

## <u>Administrative Determination Under Review</u>

Plaintiff challenges certain aspects of the Department of Commerce's ("Commerce") final affirmative determination that individually quick frozen ("IQF") garlic chunks from China have been altered from subject merchandise in minor respects and, therefore, are subject to the antidumping duty order on fresh garlic from the People's Republic of China (the "Order"). *Fresh Garlic From the People's Republic of China: Affirmative Final Determination of Circumvention of the Antidumping Duty Order*, 89 Fed. Reg. 50,256, 50,257 (Dep't Commerce June 13, 2024) (Appx1036-1037), and the accompanying *Issues and Decision Memorandum* dated June 7, 2024 (Appx1022); *Antidumping Duty Order: Fresh Garlic from the People's Republic of China*, 59 Fed. Reg. 59,209 (Nov. 16, 1994) (hereinafter "the Order").

## <u>Issues Presented</u>

**1. Whether Commerce lawfully determined that IQF garlic chunks (also referred to herein as "inquiry merchandise") are not expressly and unambiguously excluded by the Order's scope language.**

Yes. Plaintiff has incorrectly synthesized two seminal decisions of the U.S. Court of Appeals for the Federal Circuit addressing Commerce's circumvention authority. *Wheatland Tube Co. v. United States*, 161 F.3d

1365 (Fed. Cir. 1998) ("*Wheatland*") and *Deacero S.A. de C.V. v. United States*, 817 F.3d 1332 (Fed. Cir. 2016) ("*Deacero*") stand for the proposition that following the publication of an antidumping or countervailing duty order, Commerce cannot, pursuant to its minor alterations circumvention authority under 19 U.S.C. § 1677j(c), find that merchandise that has been "expressly and unambiguously" excluded from the scope definition is covered by an order's scope. Here, however, the Order's scope definition does not "expressly and unambiguously" exclude IQF garlic chunks, nor has Plaintiff pointed to any indication in the administrative record of Commerce's investigation that the parties contemplated excluding such merchandise from the Order's scope.

Further, regardless of whether the Order's scope language expressly and unambiguously excludes garlic that has been prepared or preserved by citric acid, Commerce correctly determined that the record does not support a conclusion that the IQF garlic chunks analyzed by Commerce are prepared or preserved by the addition of citric acid. Commerce selected and individually examined two exporters of the inquiry merchandise as mandatory respondents. As Commerce correctly

explained, neither respondent provided any evidence in its questionnaire responses that the citric acid used in the production of inquiry merchandise "prepared or preserved" the garlic. Rather, the respondents' questionnaire responses demonstrated the citric acid was used in connection with the blanching process that precedes the freezing process. Thus, Commerce correctly concluded that IQF garlic chunks are not expressly and unambiguously excluded from the Order's scope language.

### 2. Whether Commerce correctly determined that IQF garlic chunks are altered in minor respects under 19 U.S.C. § 1677j(c)?

Yes. Commerce appropriately weighed the evidence and determined that each factor normally examined by the agency supported a determination that inquiry merchandise was altered in form or appearance in minor respects under 19 U.S.C. § 1677j(c). Plaintiff's arguments to the contrary are nothing more than an invitation for the Court to reweigh the evidence, which it will not do. As a result, Commerce's final determination is supported by substantial evidence and otherwise in accordance with law.

## Standard Of Review

Defendant-Intervenors agree with and incorporate by reference the standard of review set forth by Defendant. *See* Def.'s Resp. at 20-21. Defendant-Intervenors also note that while Commerce must explain the basis for its decision, this Court "will . . . 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut.*, 463 U.S. 29, 43 (1983) (quoting *Bowman Transp. Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)).

## Statement Of Facts

Defendant-Intervenors agree with and incorporate by reference the Defendant's statement of facts. *See* Def.'s Resp. at 5-17. To supplement Defendant's statement of facts, Defendant-Intervenors provide below background on the history of IQF and frozen garlic scope inquiries that ultimately led to the underlying circumvention inquiry.

In August 2020, Dongsheng Foods USA ("Dongsheng") requested a scope ruling concerning whether certain IQF garlic that is chopped, minced, sliced, and pureed is subject to the Order. Appx2033,

Appx2059-2061. Commerce did not issue a scope ruling due to

Dongsheng's failure to submit a complete scope application.

Shortly thereafter, however, Commerce received three scope ruling

applications, as follows:

> 1. RJ Van Drunen & Sons Inc., doing business as Van
>    Drunen Farms ("Van Drunen"), requested a scope
>    ruling concerning imports of IQF garlic that has been
>    peeled, blanched, and diced to approximately 1/8-inch
>    pieces. Appx2034, Appx2070-2080.
>
> 2. Trinity Distribution Inc. ("Trinity") requested a scope
>    ruling concerning imports of IQF garlic that has been
>    peeled, blanched, and diced into 1/8-inch pieces, as well
>    as frozen garlic that has been pureed and poured into
>    molds. Appx2034, Appx2081-2088.
>
> 3. Trinity also requested a scope ruling concerning
>    imports of IQF garlic cloves, which had not been
>    further reduced in size beyond the clove. Appx2034,
>    Appx2089-2098.

Commerce determined that Van Drunen's and Trinity's 1/8-inch

diced IQF garlic and Trinity's frozen garlic puree were not covered by

the Order's scope. Appx2034, Appx2077-2080, Appx2086-2088. In

particular, Commerce determined that:

> the scope's first sentence defines garlic subject to
> the *Order* as either being in whole form or
> separated into constituent cloves. Trinity's IQF
> 1/8-inch diced garlic and IQF garlic puree are
> neither "whole" nor "separated into constituent

cloves." The modifying phrase after "all grades of garlic," is "whole or separated into constituent cloves." This modifying phrase limits the scope because it lists only two types of covered garlic, whole garlic, and clove garlic. The scope does not describe any type of garlic reduced in size beyond constituent cloves, and it does not include any language or phrasing that could be interpreted as a non-exhaustive list of the types of garlic covered. The scope language then explains that whole garlic and garlic separated into constituent cloves are included whether they are "peeled, fresh, chilled, frozen, provisionally preserved or preserved by the addition of other ingredients or heat processing." This language also does not include diced garlic, garlic puree, or any garlic reduced in size beyond peeling.

Appx2087; Appx2078 (containing nearly identical language concerning Van Drunen's imports)). Commerce also cited a prior scope ruling in which the agency determined that "minced" garlic is not covered by Order's scope, because minced garlic is neither "whole" nor "separated into constituent cloves." Appx2087-2088; *see also* Appx2078.

In contrast, Commerce determined that Trinity's imports of IQF garlic cloves are covered by the plain language of the Order's scope. Appx2035, Appx2096. Specifically, Commerce found that "{b}ecause the scope covers garlic that is whole or separated into constituent cloves, regardless of whether it is cleaned, peeled, frozen, or packed in water or

other neutral substances, . . . Trinity's IQF garlic falls under the plain language of the scope of the Order" *i.e.*, garlic, whole or separated into constituent cloves. Appx2035, Appx2096. Commerce also rejected Trinity's argument that the IQF garlic cloves for which it requested a ruling were outside of the scope because the "blanching" process the cloves undergo before being individually quick frozen results in garlic that has been "preserved." Appx2035, Appx2096-2097.

On September 22, 2023, Plaintiff filed a scope ruling request concerning the following two frozen garlic products:

1. "Large chunks" that involve peeled cloves that have had their ends trimmed and then been blanched and individually quick frozen (Appx1070-1071); and

2. "Small chunks" that involve the same product as "large chunks," but which have also been sliced into smaller pieces. Appx1071.

Plaintiff claimed these products were not covered by the Order's scope based on Commerce's prior scope rulings involving General Mills' minced garlic, as well as Trinity's and Van Drunen's 1/8-inch diced IQF garlic and Trinity's frozen garlic puree. Appx1077-1081. None of those rulings, however, addressed IQF peeled clove garlic subjected to such minor modifications. Plaintiff's scope application, therefore, appeared to

be drafted specifically to test the limits of Commerce's analysis in prior scope rulings concerning the amount of processing that is required for a product to fall outside the Order's scope. Indeed, Plaintiff admitted that after U.S. Customs and Border Protection informed Green Garden that it considered the company's imports of IQF large garlic chunks to be subject to the Order's scope, Green Garden simply asked its suppliers to slice the cloves into smaller pieces. Appx1075-1076.

As set forth in Defendant's brief at pages 6 to 9, Commerce found that Plaintiff's large and small garlic chunks were not covered by the Order's scope language, based on similar reasoning applied to Trinity's and Van Drunen's 1/8-inch diced IQF garlic and Trinity's frozen garlic puree, (*i.e.*, the large and small garlic chunks were not "whole" or "separate into constituent cloves"), but did find it appropriate to conduct a minor alterations inquiry to determine if the large and small garlic chunks were "articles altered in form or appearance in minor respects" under 19 U.S.C. § 1677j(c).

## Argument

### I.  Commerce Lawfully Determined IQF Garlic Chunks Are Not Expressly and Unambiguously Excluded By The Order's Scope Definition

#### A.  *Wheatland* Is Inapposite

In arguing that Commerce unlawfully expanded the Order's scope to cover IQF garlic chunks because they are "expressly excluded," Green Garden discusses two seminal cases *Wheatland Tube Co. v. United States*, 161 F.3d 1365 (Fed. Cir. 1998) ("*Wheatland*") and *Deacero S.A. de C.V. v. United States*, 817 F.3d 1332 (Fed. Cir. 2016) ("*Deacero*"), but draws an incorrect conclusion about their meaning. Pl.'s Br. at 15-20.

As Plaintiff states, *Wheatland* stands for the proposition that Commerce cannot later find that merchandise that has been specifically excluded from an order's scope is covered through a circumvention inquiry. Pl.'s Br. at 15. However, Plaintiff's interpretation of *Wheatland* is overly broad. Plaintiff notes that the scope definition of the order at issue in *Wheatland* contained language that explicitly excluded certain standard pipe; "Standard pipe that is dual or triple certified/stenciled that enters the U.S. as line pipe of a kind used for oil or gas pipelines is also not included in this investigation." *Id.* at 17 (citing *Wheatland*, 161

F.3d at 1367). Commerce added this language to the scope of the antidumping duty order following comments on the record filed by the domestic industry that dual and triple certified/stenciled standard pipe entering under Harmonized Tariff Schedule of the United States codes other than the code for standard pipe were not covered the investigation's scope. *Wheatland*, 161 F.3d at 1367. Given the explicit exclusion of "standard pipe that is dual or triple certified/stenciled," and history of the investigation, Commerce declined to initiate a circumvention inquiry filed on behalf of the domestic industry regarding line pipe and dual certified pipe used in standard pipe applications, instead finding that these products were specifically excluded and not covered by the scope. *Id.*, 161 F.3d at 1368. The Court of Appeals for the Federal Circuit sustained Commerce's decision not to initiate a circumvention inquiry or find that the line pipe was covered by the order's scope language because "Commerce would have had to conclude that section 1677j(c)" and the agency's regulations "authorize {Commerce} to interpret the scope of an antidumping order to cover an article that the order *expressly and unambiguously* excludes from the

kind or class of article covered by it." *Id.*, 161 F.3d at 1370 (emphasis added).

In contrast to the scope language at issue in *Wheatland*, IQF garlic chunks are not "expressly and unambiguously" excluded from the Order's scope, which provides in relevant part:

> The products subject to this antidumping duty order are all grades of garlic, whole or separated into constituent cloves, whether or not peeled, fresh, chilled, frozen, provisionally preserved, or packed in water or other neutral substance, but not prepared or preserved by the addition of other ingredients or heat processing. The differences between grades are based on color, size, sheathing and level of decay.
>
> The scope of this order does not include: (a) Garlic that has been mechanically harvested and that is primarily, but not exclusively, destined for non-fresh use; or (b) garlic that has been specially prepared and cultivated prior to planting and then harvested and otherwise prepared for use as seed.

Appx1008. While the Order's scope does expressly and unambiguously exclude two types of garlic products – garlic that has been mechanically harvested and primarily destined for non-fresh use (often referred to as "dehy" garlic in the garlic industry) and "seed" garlic (*i.e.*, garlic that U.S. producers grow and harvest for the purpose of replanting as seed),

it contains no express and unambiguous exclusion of IQF garlic chunks. Indeed, unlike the record of the standard pipe proceeding at issue in *Wheatland*, Plaintiff has not identified any discussion of IQF garlic chunks that would indicate the parties intended to exclude these products from the Order's scope.

### B. Commerce Lawfully Determined the Record Does Not Support the Conclusion That IQF Garlic Chunks Are Prepared or Preserved by the Addition of Other Ingredients

Plaintiff argues that Commerce's determination that IQF garlic chunks are not expressly and unambiguously excluded from the Order's scope is unsupported by record evidence citing to general information that Plaintiff – an importer of the inquiry merchandise – submitted in comments on Defendant-Intervenors' circumvention application. Pl.'s Br. at 24-26. Contrary to Plaintiff's claims, Commerce considered the record evidence and determined it did not support a conclusion that IQF garlic chunks are not prepared or preserved by citric acid and, as a result, are not excluded from the scope definition.

In its *Issues and Decision Memorandum*, Commerce states that the "record does not support a finding that the inquiry merchandise is

preserved by the addition of citric acid." Appx1026. In order to determine whether IQF garlic chunks are in fact preserved by the addition of citric acid, Commerce focused on the most probative evidence available on the record – the questionnaire responses of two Chinese *producers* of the inquiry merchandise. Specifically, Commerce noted that the two mandatory respondents' questionnaire responses did not demonstrate that citric acid was used to prepare or preserve the IQF garlic chunks. Appx1027 (stating that "respondents' questionnaire responses contain no information about the purpose or function of citric acid").

Indeed, mandatory respondent Deesheng Hengxin Food Co., Ltd. ("Hengxin") states in its questionnaire response that the difference in the manufacturing process for subject and inquiry merchandise is that "Hengxin has to trim heads of the garlic cloves and cut/slice the garlic into smaller pieces." Appx2405. Hengxin also explains that the "citric acid aqua solution" used in the production process is for "blanching" and makes no claim that the solution has any relation to preservation of the merchandise, instead explaining the processing operations as involving:

- • Diced garlic is boiled in 0.3% citric acid aqua solution at 96-100°C for 90 seconds. This process is called blanching.

- • Blanched diced garlic is then cooled in 0.3% citric acid aqua solution for five (5) minutes. The temperature of the citric acid aqua solution is usually 5-10°C.

Appx2413. Again, there is no mention of preservation in Hengxin's description.

The other mandatory respondent – Fenjun Foodstuff Co., Ltd. ("Fenjun") – provided nearly identical responses to Commerce's questionnaire and made no mention of citric acid acting as a preservative or preserving the inquiry merchandise. Appx1775, Appx1782-1783.

While Commerce could have been more explicit in citing to the specific pages of respondents' questionnaire responses in finding that the responses did not support a conclusion that "the inquiry merchandise is preserved by the addition of citric acid," this Court "will . . . 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut.*, 463 U.S. 29, 43 (1983) (quoting *Bowman Transp. Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)). Indeed, "{a}n explicit

-15-

explanation is not necessary . . . where the agency's decisional path is reasonably discernible.'" *Wheatland*, 161 F.3d at 1369-70 (citation omitted). Further, regarding factual evidence, "{a}lthough Commerce must consider 'whatever in the record fairly detracts' from its conclusion and must grapple with all 'important aspect{s} of the problem,' it is 'not required to address every piece of evidence submitted by participating parties . . . .'" *Aluminum Extrusions Fair Trade Comm. v. United States*, 617 F. Supp. 3d 1296, 1313 (Ct. Int'l Trade 2023) (citations omitted); *see also Manchester Tank & Equip. Co. v. United States*, 483 F. Supp. 3d 1309, 1316-17 & n.7 (Ct. Int'l Trade 2020) ("While Plaintiffs fail to identify evidence that detracts from the agency's findings, their questioning of the evidence is somewhat understandable. Although Commerce cited record evidence in its analysis, certain of its citations are misdirected and do not obviously support the associated findings. Nevertheless, examining the agency's reasoning and referenced record evidence as a whole, the court is able to reasonably discern the path of the agency's reasoning.") (citing *NMB Singapore Ltd. v. United States*, 557 F.3d 1316, 1319 (Fed. Cir. 2009)).

As Defendant notes, the only information Green Garden claims detracts from Commerce's finding is general evidence on the use of citric acid as a preservative. Def.'s Resp. at 29-30. None of the sources identified by Green Garden, however, supports a finding that IQF garlic chunks are preserved by citric acid. *See also* Appx2594-2599 (explaining why none of these sources demonstrates IQF garlic chunks are preserved by citric acid rather than being "provisionally preserved" or preserved by freezing).

Commerce's determination to rely on the mandatory respondents' questionnaire responses in a country-wide circumvention inquiry, rather than Green Garden's generic evidence regarding citric acid, is reasonable and satisfies this Court's substantial evidence standard. *Aluminum Extrusions Fair Trade Comm.*, 617 F. Supp. 3d at 1313; *Manchester Tank & Equip. Co.*, 483 F. Supp. 3d at 1316-17 & n.7.

## II.  Commerce Lawfully Determined That IQF Garlic Chunks Are Altered In Minor Respects From In-Scope Merchandise

Green Garden also challenges Commerce's minor alterations analysis under 19 U.S.C. § 1677j(c).[1] Pl.'s Br. at 34-43. Defendant addressed each of these arguments in its response brief, which Defendant-Intervenors incorporate by reference. Def.'s Br. at 37-45.

One of the key findings ignored by Green Garden is that Commerce has previously determined IQF garlic cloves are in-scope merchandise. *See, e.g.*, Appx1010 (comparing inquiry merchandise with IQF garlic cloves subject to a scope ruling decision issued to Trinity Distribution Inc.). Thus, Commerce correctly compared the minor differences between respondents' IQF garlic chunks and in-scope IQF garlic cloves, with the sole difference being the trimming of the cloves' ends (for large IQF garlic chunks) and the slicing of cloves into smaller pieces (for small IQF garlic chunks). *Id.*

---

[1]    As discussed in the *Issues and Decision Memorandum*, Commerce normally considers (1) overall physical characteristics; (2) expectations of ultimate users; (3) use of merchandise; (4) channels of marketing and distribution; and (5) cost of any modification relative to the value of the imported products. Appx1034.

Commerce also addressed each of Green Garden's arguments regarding the expectations of the ultimate users, the use of the merchandise, and the channels of marketing and distribution, which were all the same for inquiry and subject merchandise. Appx1011. Regarding the cost of the modification, Commerce also addressed the record evidence submitted by respondents finding the claimed value of the modification was small. Appx1011-1012. In sum, Commerce analyzed the record of evidence and found that all five factors supported an affirmative determination. Green Garden's arguments to the contrary are simply a request to reweigh the evidence that this Court should reject. *See, e.g.*, *I.D.I. Int'l Dev. & Inv. Corp. v. United States*, Slip Op. 21-82 at 23, 2021 Ct. Int'l Trade LEXIS 91, at *19 (July 6, 2021) ("But '{i}t is not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record.'") (quoting *Timken Co. v. United States*, 699 F. Supp. 300, 306 (Ct. Int'l Trade 1988)); *Jiangsu Zhongji Lamination Materials Co., (HK) Ltd. v. United States*, Slip Op. 23-84 at 17, 2023 Ct. Int'l Trade LEXIS 88, at *14-15 (June 7, 2023) ("Even if reasonable minds might differ, the substantial

evidence standard is met.") (citing *Jacobi Carbons AB v. United States*, 313 F. Supp. 3d 1344, 1352 (Ct. Int'l Trade 2018)).

## III.  <u>Conclusion</u>

For the reasons above, Defendant-Intervenors respectfully urge this Court to reject Plaintiff's claims and to sustain Commerce's final determination.

Respectfully submitted,

<u>/s/ John M. Herrmann</u>
JOHN M. HERRMANN
JOSHUA R. MOREY
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC 20007
(202) 342-8400
jherrmann@kelleydrye.com
jmorey@kelleydrye.com

Counsel to Defendant-Intervenors

Dated: August 8, 2025

## CERTIFICATE OF COMPLIANCE
## WITH COURT OF INTERNATIONAL TRADE
## STANDARD CHAMBERS PROCEDURES

Pursuant to this Court's Scheduling Order dated October 18, 2024 (ECF No. 21), setting the word limitation to the response brief of Defendant-Intervenors Fresh Garlic Producers Association and its individual members, Christopher Ranch L.L.C., The Garlic Company, and Valley Garlic, Inc. ("Defendant-Intervenors") to 7,000 words, counsel for Defendant-Intervenors certifies that the attached response brief contains <u>3505 words</u>, including footnotes. The word count certification is made in reliance on the word-count feature contained in Microsoft Enterprise – 365.

Respectfully submitted,

/s/ John M. Herrmann
JOHN M. HERRMANN
JOSHUA R. MOREY
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC 20007
(202) 342-8400
jherrmann@kelleydrye.com
jmorey@kelleydrye.com

Counsel to Defendant-Intervenors

Dated: August 8, 2025