**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **GREEN GARDEN PRODUCE, LLC,** | **Ct. No. 1:24-cv-00114-MMB** |
|     ***PLAINTIFF*** | |
|     **v.** | |
| **UNITED STATES,** | |
|     ***DEFENDANT.*** | |

***REPLY BRIEF IN SUPPORT OF PLAINTIFF'S RULE 56.2***

***MOTION FOR JUDGMENT UPON THE AGENCY RECORD***

# TABLE OF CONTENTS

I. Commerce Unlawfully Expanded the Scope of the Order by Failing to Consider Whether the Inquiry Merchandise Was Expressly Excluded from the Scope of the Order.........................................................................2

    a. Preserved Garlic Is Expressly Excluded.............................................4

    b. The Inquiry Merchandise is Garlic Prepared or Preserved By The Addition of Other Ingredients, thus Expressly Excluded from the Order........................................................................................................7

II. Commerce's Circumvention Determination Lacks Substantial Evidence And Is Contrary To Law Because Commerce Admits That It Did Not Notify Plaintiff Of Deficient Responses Or Allow An Opportunity To Cure...........................................................................................11

    a. Plaintiff Maintains That Its Own Comments And Those Of The Respondents Were Not Deficient.........................................................13

    b. Commerce Did In Fact Apply Adverse Inferences...........................16

    c. Commerce Is Required To Provide Notice And An Opportunity To Cure Deficient Responses.....................................................................17

    d. Commerce Did Not Provide Notice Or An Opportunity To Cure.... 22

    e. Plaintiff Exhausted Its Administrative Remedies............................26

III. Defendant's Substantial Evidence Rebuttal on Minor Alteration Is Unpersuasive And Relies On Ex Post Facto Justifications......................27

    a. Expectations Of The Ultimate Users................................................28

    b. Marketing And Channels of Distribution.........................................32

    c. Commerce Did Not Address Whether Cutting Into Chunks Adds Significant Value...................................................................................36

IV. Conclusion..............................................................................................39

# TABLE OF AUTHORITIES

## Cases

Deacero S.A. de C.V. v. United States, 817 F.3d 1332 (Fed. Cir.
2016)…………………………………………………………..………………2

ILWU Loc. 142 v. Donovan,
10 C.I.T. 161, 164 (Ct. Int'l Trade  1986)..................................................28

Koyo Seiko Co. v. United States,
92 F.3d 1162, 1165 (Fed. Cir. 1996).................................................20, 21

Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State
Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)...............................7, 28

NTN Bearing Corp. of Am. v. United States,
997 F.2d 1453, 1458 (Fed. Cir. 1993)..........................................................19

Olympic Adhesives, Inc. v. United States,
899 F.2d 1565, 1572-75 (Fed. Cir. 1990)....................................................20

QVD Food Co. v. United States,
658 F.3d 1318, 1324 (Fed. Cir. 2011).........................................................19

SMA Surfaces, Inc. v. United States,
617 F.Supp.3d 1263, 1279 (Ct. Int'l Trade 2023)................................17,18

Ta Chen Stainless Steel Pipe v. United States,
1999 WL 1001194 at 14 (Ct. Int'l Trade 1999)..................................20, 21

Tianjin Mach. Imp. & Exp. Corp. v. United States,
806 F. Supp. 1008 (Ct. Int'l Trade 1992)...................................................19

Usinor Sacilor v. United States,
19 CIT 711, 745 (Ct. Int'l Trade 1995).......................................................21

Wheatland Tube Co. v. United States,
161 F.3d 1365 (Fed. Cir. 1998) ............................................................ 2, 4, 5

## Statutes

19 U.S.C. § 1677j(c) .................................................................................3

19 U.S.C. § 1677m(d) .............................................................................18

## Regulation

59 Fed. Reg. 59209 (November 16, 1994) ...............................................31

The opposition briefs of Defendant, the United States, and Defendant-Intervenor, Fresh Garlic Producers Association ("Defendant-Intervenor"), admit to grave errors and attempt to change course on certain issues. Upon reviewing these briefs, three main points become apparent.

First, the United States readily admits that the U.S. Department of Commerce ("Commerce")  did not consider a major issue: whether large and small garlic chunks (the "Inquiry Merchandise") are expressly excluded from the scope of the order. This point alone renders Commerce's minor alterations inquiry, which necessarily depends on such a consideration, contrary to law.

Second, Defendant admits that Commerce found the questionnaire responses[1] on the exclusion issue to be deficient, but did not notify Plaintiff of the deficiency or provide an opportunity to cure. Instead, Commerce contends that it had no obligation to notify Plaintiff and respondents or to request any additional information. This failure is

---

[1] The initial questionnaires are titled "requests for information," therefore, the questionnaire responses are in fact responses to Request for Information. *See* Appx2265, Appx2307.

1

also sufficient to render Commerce's determination unsupported by substantial evidence and contrary to law.

Third, Defendant's rebuttal arguments that the minor alterations analysis is supported by substantial evidence are flawed and rely at times on *ex post facto* rationalization through counsel. Therefore, they lack merit and judgment should be granted for Plaintiff.

Because these reasons demonstrate that the Commerce's Final Determination is contrary to law and not supported by substantial evidence, we respectfully reiterate our request that this Court grant judgment in favor of the Plaintiff in this case.

## I.    Commerce Unlawfully Expanded the Scope of the Order by Failing to Consider Whether the Inquiry Merchandise Was Expressly Excluded from the Scope of the Order

As a threshold matter, Defendant-Intervenor takes issue with Green Garden's characterization of *Wheatland Tube Co. v. United States*, 161 F.3d 1365 (Fed. Cir. 1998) and *Deacero S.A. de C.V. v. United States, 817 F.3d 1332 (Fed. Cir. 2016).* [Dkt. 31, at 3]. This criticism is perplexing, however, because Plaintiff, Defendant, and Defendant-Intervenor all agree that "[*Wheatland* and *Deacero*] stand for the proposition that following the publication of an antidumping or

countervailing duty order, Commerce cannot, pursuant to its minor alterations circumvention authority under 19 U.S.C. § 1677j(c), find that merchandise that has been 'expressly and unambiguously' excluded from the scope definition is covered by an order's scope." [Dkt. 32, at 3]; [Dkt. 24, at 15-19]; [Dkt. 30, at 21]. Because Plaintiff, Defendant, and Defendant-Intervenor extract the same rules from these cases, Plaintiff has not "incorrectly synthesized" anything. *See* Dkt. 32, at 2.

Therefore, if a product is expressly excluded, Commerce may not conduct a minor circumvention analysis. With this rule in mind, a primary issue then becomes: whether Plaintiff's product is expressly excluded from the scope of the order. Both Defendant and Defendant-Intervenor deny that Plaintiff's product is expressly excluded. *See, e.g.,* Dkt. 30, at 22 *and* Dkt. 32, at 3. The answer to this question depends on: 1) whether garlic prepared or preserved by the addition of ingredients (hereinafter "preserved garlic") is expressly excluded; 2) whether Plaintiff's product is preserved garlic.

   a. *Preserved Garlic Is Expressly Excluded.*

Plaintiff argues in its brief that preserved garlic is expressly

excluded from the scope of the Order. [Dkt. 24, at 19-20]. The Order

reads, in relevant part:

> The products subject to this antidumping duty order are all
> grades of garlic, whole or separated into constituent cloves,
> whether or not peeled, fresh, chilled, frozen, provisionally
> preserved, or packed in water or other neutral substance, *but
> not* prepared or preserved by the addition of other
> ingredients or heat processing.

Appx1135 (*Emphasis added*). The plain meaning of "but not" operates

as a direct exclusionary clause, carving out garlic prepared or preserved

by additional ingredients from the scope of the order.

This language is similar to exclusionary language in *Wheatland*,

which reads:

> All carbon steel pipes and tubes within the physical
> description outlined above are included within the scope of
> this investigation, *except* line pipe, oil country tubular goods,
> boiler tubing, cold-drawn or cold-rolled mechanical tubing,
> pipe and tube hollows for redraws, finished scaffolding, and
> finished rigid conduit. Standard pipe that is dual or triple
> certified/stenciled that enters the U.S. as line pipe of a kind
> used for oil or gas pipelines is *also not included* in this
> investigation.

161 F.3d at 1367 (Fed. Cir. 1998) (*emphasis added*). The *Wheatland*

court found that line pipe and dual certified pipe were expressly

excluded. *Id.*, at 1369. Therefore, like the pipes in *Wheatland* that are expressly excluded from the scope of the relevant order, garlic prepared or preserved by additional ingredients is expressly excluded from the scope of the order on fresh garlic from the People's Republic of China.

In its brief, Defendant-Intervenor does not properly address the "but not prepared or preserved" clause. Rather, Defendant-Intervenor concludes that the order excludes only mechanically harvested garlic and seed garlic, and "contains no express and unambiguous exclusion of IQF garlic chunks." [Dkt. 31, at 12-13].[2] Defendant-Intervenor misses the point. The question is not whether IQF garlic chunks are expressly excluded, but whether IQF garlic chunks *prepared or preserved by the addition of other ingredients* are expressly excluded. The plain language of the Order answers this question in the affirmative, and Defendant-Intervenor makes no counterargument.

---

[2] While the order also expressly excludes mechanically harvested garlic and seed garlic, Defendant-Intervenor advances no argument that such carve outs are mutually exclusive to the "but not prepared or preserved" clause. In fact, no language in the scope of the order suggests that mechanically harvested garlic and seed garlic are the only expressly excluded articles. Appx1135. Additionally, in *Wheatland*, the Court found the separate "except" and "also not included" language to expressly exclude both line pipe and dual-certified pipes. *See* 161 F.3d, at 1369.

Defendant itself admits that there is an express exclusion for preserved garlic: "[i]n the absence of factual information on the record, *which would have the effect of making inquiry merchandise excluded from the Order for being prepared or preserved by the addition of other ingredients or heat processing* Commerce reasonably found that a circumvention inquiry was not forbidden." [Dkt. 30, at 30] (*emphasis added*). Defendant also states that Commerce "did not need to answer whether Green Garden's merchandise was expressly excluded from the Order through *one of the specified exclusions as garlic 'prepared or preserved by the addition of other ingredients or heat processing.'*" [Dkt. 30, at 23] (*emphasis added*).  Additionally, Commerce previously opined: "the Plain language of the scope excludes garlic that has been 'prepared or preserved by the addition of other ingredients.'" *See* Appx 1320. Therefore, Commerce has admitted that there is a specified exclusion for preserved garlic.

As such, this Court should find that preserved garlic is expressly excluded from the scope of the order. The "but not prepared or preserved" clause is a direct carve-out for preserved garlic. Defendant agrees that the plain language of the order excludes preserved garlic,

6

and Defendant-Intervenor's brief fails to address this argument on its merits. If prepared garlic is expressly excluded, the issue then becomes whether Plaintiff's product is preserved garlic.

 b. *The Inquiry Merchandise is Garlic Prepared or Preserved By The Addition of Other Ingredients, thus Expressly Excluded from the Order*

An agency determination is arbitrary and capricious if the agency entirely fails to consider an important aspect of the problem. *See Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Having discussed that, under *Wheatland*, an express exclusion for preserved garlic is preclusionary to a circumvention analysis, whether a product is preserved garlic constitutes an important aspect of the problem that Commerce was required to consider.

Plaintiff argued in its brief that Commerce improperly decided this question, lacking substantial evidence. *See*, *e.g.*, Dkt. 24, at 22. Defendant responds by arguing that Commerce did not *improperly* decide this issue, Commerce simply did not decide it in the first place. *See*, e.g., Dkt. 30, at 22.

Defendant states multiple times that Commerce did not consider whether Plaintiff's product was preserved garlic. *See id.* ("Commerce did not find that Green Garden's garlic fell under an express exclusion from the Order. Commerce made no finding as to whether the inquiry garlic was 'prepared or preserved by the addition [of] other ingredients…'"); *id.* ("Commerce did not need to answer whether Green Garden's merchandise was expressly excluded from the Order through one of the specified exclusions as garlic 'prepared or preserved by the addition of other ingredients or heat processing.'); *id.*, at 23 ("Commerce did not resolve the question of whether Green Garden's garlic was excluded from the scope…"); *id.*, at 23-24 ("Commerce did not revisit or alter this conclusion in its Final Scope Determination"); *and id.* at 27, n.4 ("Commerce did not address or decide whether *Wheatland* would have applied even if citric acid functioned as a preservative.") (*citation omitted*).

In doing so, Defendant admits that Commerce committed a rather egregious error. Defendant admits that a finding of an express exclusion would have completely precluded a circumvention inquiry. *Id.* at 30. Commerce also admits that Plaintiff raised the issue of express

exclusion in its circumvention inquiry comments. *Id.*, at 10. Yet,

Defendant readily admits that Commerce did not consider whether

Plaintiff's product was expressly excluded before it conducted a minor

circumvention analysis. *Id.* at 22-24.[3]

    In its brief, Defendant attempts to justify this failure by arguing

that Commerce had already found Plaintiff's product to be outside the

scope on other, non-preclusionary, grounds. *Id.*, at 23. Defendant

asserts:

> Commerce did not resolve the question of whether Green
> Garden's garlic was excluded from the scope because
> Commerce had already determined the garlic to be
> out-of-scope. That is, Commerce explained that the scope
> includes all grades of garlic, whole or separated into
> constituent cloves… Because Green Garden's garlic was not
> garlic, whole or separated into constituent cloves… and
> instead was reduced in size beyond peeling, it was out of
> scope.

---

[3] For its part, Defendant-Intervenor argues that "…Commerce considered the record evidence and determined it did not support a conclusion that IQF garlic chunks are not prepared or preserved by citric acid and, as a result, are not excluded from the scope definition." [Dkt. 32, at 13]. While the Final Determination does in fact state that the "record does not support a finding that the inquiry merchandise is preserved by the addition of citric acid," (Appx1026), this is contradicted by the above admissions made by Defendant that Commerce did not consider this issue at all.

*Id.* (*internal quotations, citations omitted*). In other words, Commerce asserts that because Green Garden's product was found to *impliedly* "[fall] outside the literal scope of the Order altogether," there was no requirement to answer whether the product was also *expressly* excluded from the scope of the order, which would preclude circumvention inquiry. *Id.* at 22. Consequently, Defendant asks this Court to agree with the proposition that Commerce may proceed with a circumvention inquiry which may be prohibited by a *Wheatland* express exclusion simply by determining that the product falls under a lesser, implied exclusion from the scope of the Order and refusing to determine whether the product is expressly excluded.

Defendant provides no reasoning, nor cites any authority to support this position. Commerce cannot be permitted to conduct circumvention inquiries when a product may be expressly excluded simply by declining to consider that question. To do so would deprive *Wheatland* of any meaning. Just as a court would be unreasonable in refusing to rule on a challenge to its subject matter jurisdiction, so too was Commerce unreasonable for refusing to determine whether Plaintiff's products are expressly excluded from the scope of the Order.

The finding of an implied exclusion is not sufficient, and is no justification for Commerce's actions.

As a consequence of its failure, Commerce's final circumvention determination is neither in accordance with law nor supported by substantial evidence. Commerce admittedly failed to consider an important aspect of the problem; one that could have precluded a circumvention inquiry in the first place. Its justification for doing so only opens the door to more erroneous administrative determinations. Therefore, judgment for the Plaintiff should be granted for this reason alone.

## II. Commerce's Circumvention Determination Lacks Substantial Evidence And Is Contrary To Law Because Commerce Admits That It Did Not Notify Plaintiff Of Deficient Responses Or Allow An Opportunity To Cure.

Plaintiff's brief argues that Commerce improperly applied adverse inferences by filling alleged record gaps without fairly requesting such information from the respondents. *See generally* Dkt. 24, at 22, 31-32. More specifically, Plaintiff's brief claims that Commerce determined that the responses were deficient[4] and "waited until it had made its

---

[4] Defendant's brief misunderstands Plaintiff: "Curiously, Green Garden appears to agree at least that 'Commerce makes no finding that either Plaintiff or Inquiry Respondents failed to cooperate by not acting to the

Final Determination before making any mention of a supposed lack of evidence." *Id*. at 32-33.

First and foremost, Defendant denies that Commerce applied adverse inferences. [Dkt. 30, at 39]. While Defendant agrees that Commerce made no formal finding that respondents failed to cooperate (Dkt. 30 at 35), Defendant's brief devotes significant attention to arguing that both Plaintiff's comments and the mandatory respondents' questionnaire responses are deficient on the issue of preservation by citric acid. *See e.g.* Dkt., 30 at 25; *id.*, at 26 ("Because the respondents had not made any comment on the function or purpose of citric acid in the production process of inquiry garlic, Commerce reasonably determined that it had no basis to conclude that the respondents used citric acid as a preservative.") (*internal quotations, citations omitted*); *id.* at 27; *id.* at 28 ("...Green Garden did not argue that the evidence it submitted applied to the responses' production process."); *Id.* at 29; *Id.*

_____

best of their abilities', even if it disagrees with the implications of such a confession." [Dkt. 30, at 35] (*internal citation omitted*). Plaintiff's purpose for saying this was to show that Commerce failed to follow procedure by applying adverse inferences without a formal finding of failure to cooperate. Plaintiff's brief nonetheless contends that "...Commerce accused the Inquiry Respondents of failing to produce information..." [Dkt. 24, at 32]; *see also* Appx1027. Plaintiff still contends that Commerce found the answers to be deficient.

at 30; *and Id.* at 34 ("...Commerce reasonably found a lack of evidence on the record to support a conclusion that citric acid was used as a preservative by respondents.").

If Commerce found that these responses were deficient, the issue then becomes whether Commerce had an obligation to allow Plaintiff and the other respondents to cure the deficiency.

   a. *Plaintiff Maintains That Its Own Comments And Those Of The Respondents Were Not Deficient.*

Plaintiff pointed out in its brief that Commerce claimed a lack of record evidence regarding the preservative purpose of citric acid, saying:

> Commerce…finds that the respondents have not made any comment on the function or purpose of citric acid in the production process of small and large garlic chunks," (Emphasis added); and [i]t is only after arguments to the contrary made prior to the Preliminary Determination were struck from the record that Green Garden claimed that citric acid is used to preserve small and large garlic chunks.

*See* Dkt. 24, at 23-24 (*quoting* Appx1027). Plaintiff then cited multiple places on the record where it had previously commented on the purpose of citric acid. *See id.*, at 24.

Now, after the fact, Defendant and Defendant-Intervenor both attempt to pivot by criticizing the evidence provided by Plaintiff, which

13

Commerce did not do on the administrative record. Both Defendant and Defendant-Intervenor make the point that "Green Garden did not argue that the evidence it submitted applied to the respondents' production process." [Dkt. 30, at 28]; *and see* Dkt. 32, at 17.

This argument is incorrect because Plaintiff is not a producer of garlic chunks, but rather an importer who sources its merchandise from, *inter alia*, the inquiry respondents. Appx1074-1075. Therefore, any evidence or comment related to "Plaintiff's" garlic chunks necessarily applies to the respondents' product.[5]

Furthermore, by implying that Plaintiff's generally applicable citric acid evidence is invalid simply because Plaintiff did not say "this evidence applies to Respondent's production process," Defendant is asking for magic words. Plaintiff provided evidence that citric acid is an ingredient that has a *per se* preservative effect on fresh produce

---

[5] Defendant attempts to argue that Plaintiff failed to exhaust administrative remedies in applying its citric acid evidence to respondents. [Dkt. 30, at 28-29]. However, this is the first time Commerce has made the case that Plaintiff's provided evidence does not apply to respondents. Appx1027 (Commerce's claim on the record was that Plaintiff's evidence was untimely). Moreover, the fact that Plaintiff sources from the inquiry respondents was placed on the record long before Commerce and Defendant-Intervenor made this argument. Appx1074-1075.

Case 1:24-cv-00114-MMB    Document 35    Filed 09/10/25    Page 19 of 45


including garlic. *See* Appx1051 (Arguing that citric acid is defined as a preservative and that CBP found citric acid-coated IQF garlic to be preserved); *and see* Appx1290 (Citric acid in concentrations of approximately 0.19% to 0.96% inhibits bacteria growth).

Commerce has acknowledged that both respondents use citric acid in their production process. Appx1027 (Commerce found respondents did not comment on the function or purpose of citric acid in the production, but did not question whether citric acid was in fact used in the production process). Moreover, the record reflects that respondents' products are cooled in a citric acid solution of 0.3% concentration. Appx1783, Appx2413. Because citric acid is a recognized preservative, and because the respondents used citric acid in sufficient concentration to produce a preservative effect, the record reflects that respondents' products are preserved by citric acid.

Therefore, Plaintiff reiterates its position that Commerce's finding regarding preservation by citric acid is contrary to law and not supported by substantial evidence. Defendant's and Defendant-Intervenor's arguments to the contrary neglect the fact that Plaintiff sources its product from the respondents. Additionally, the

record evidence demonstrates that citric acid is a preservative and that respondents use citric acid in their manufacturing process. Therefore, judgment should be granted in favor of Plaintiff.

b. *Commerce Did In Fact Apply Adverse Inferences.*

Plaintiff provided evidence from the very beginning that its product was preserved by the addition of citric acid. Appx1049-1052. Commerce then disregarded Plaintiff's evidence and based its decision instead on the perceived silence of the respondents. Appx1027. Commerce's reasoning punished Plaintiff and respondents with an adverse presumption – that the Inquiry Merchandise was not preserved by citric acid – leading Commerce to proceed with a minor alterations analysis.

Commerce attempts to deflect by claiming that it merely weighed the evidence, and that the respondents' silence left no record evidence to support a conclusion that the Inquiry Merchandise is expressly excluded. [Dkt. 30, at 34-35]. This is incorrect. Plaintiff provided such evidence, and Commerce then disregarded it and treated the alleged silence by respondents as dispositive. *See* Appx1049-1052, Appx1027.

16

Commerce then proceeded to fill the gap with punitive inferences, relying on the submissions of interested parties. *See* Appx1025-1027.

Therefore, the question then becomes whether Commerce was justified in its actions.

c. *Commerce Is Required To Provide Notice And An Opportunity To Cure Deficient Responses*

Even if Commerce had considered whether the Inquiry Merchandise is preserved garlic, which it did not, its determination would nonetheless be lacking substantial evidence and accord with law. Commerce felt that the respondents' answers to requests for information were deficient; therefore, Commerce was required to provide notice and an opportunity to cure.

Defendant responds to Plaintiff's brief by arguing that Commerce had no duty to provide an opportunity for parties to explain or correct their deficient responses, citing *SMA Surfaces, Inc. v. United States*, 617 F.Supp.3d 1263 (Ct. Int'l Trade 2023), as an authority. *Id.* at 36.

Defendant contends:

As this Court held in SMA Surfaces, neither the statute nor the regulations require Commerce to provide an opportunity for parties to explain or to correct information that was not requested by Commerce. See SMA Surfaces, Inc. v. United States, 617 F.Supp.3d 1263, 1279 (Ct. Int'l Trade 2023)

17

> (finding that, although Commerce may be required to
> provide an opportunity to remedy or to explain a deficient
> response to a request for information under 19 U.S.C. §
> 1677m(d), Commerce is not obligated by any statute or
> regulation to make a request for information in the first
> instance).

*Id*. Defendant misapprehends the *SMA Surfaces* case, which does not

support its position. This Court in *SMA Surfaces* said:

> Commerce may, in certain circumstances, "determine[ ] that
> a response to a request for information" is deficient and
> "shall, to the extent practicable, provide that person with an
> opportunity to remedy or explain the deficiency." 19 U.S.C. §
> 1677m(d). *Yet § 1677m(d) is ultimately inapposite because*
> *SMA Surfaces's exhibits were not "a response to a request for*
> *information" by Commerce but an appendix to its own Scope*
> *Ruling Request.* Without any other statute or regulation
> obligating Commerce to ask for additional evidence before a
> final determination, the burden of developing an adequate
> record falls on SMA Surfaces, not Commerce.

617 F. Supp. 3d, at 1279-1280 (*emphasis added*). Therefore, the *SMA*

*Surfaces* court found that, in the case of an appendix to scope ruling

request, Commerce was not required to provide an opportunity to cure a

deficiency. In *SMA Surfaces*, the evidence at issue was not a request for

information, so § 1677m(d) did not apply. Here, because some of the

allegedly deficient responses were, in fact, responses to requests for

information, Commerce shall promptly inform the respondents the

nature of the deficiency and provide the respondents with an

opportunity to remedy or explain the deficiency, if Commerce in fact deemed respondents' responses were deficient on the issue of preservation of garlic . *See* Appx2265, Appx2307.[6]

The other cases that Defendant cites are themselves inapposite, because they do not deal with an opportunity to remedy or explain deficient response to a request for information. *See QVD Food Co. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011) (Discussing Commerce's act of placing documents on the record *sua sponte*, not a deficient response to a request for information); *and Tianjin Mach. Imp. & Exp. Corp. v. United States*, 806 F. Supp. 1008 (Ct. Int'l Trade 1992) (Discussing Plaintiff's argument that Commerce should use the factual verification process to cure a deficient response, not an opportunity to explain or cure deficient response to a request for information); *NTN Bearing Corp. of Am. v. United States*, 997 F.2d 1453, 1458 (Fed. Cir. 1993) (Discussing a deficient request for substantial value-added exclusion, not a deficient response to a request for information).

These cases are only useful for reciting the "truism" that the burden of making an accurate record lies with the respondent(s); a

---

[6] These documents were titled "Request for Information."

truism which does not absolve Commerce of its obligation to fairly request information. *Ta Chen Stainless Steel Pipe v. United States*, 1999 WL 1001194 at 14 (Ct. Int'l Trade 1999) ("Commerce grounds its argument on the truism that the respondent has the burden of creating an accurate record. This truism, however, cannot obviate Commerce's obligation to let the respondent know what information it really wants.") (*Internal citations omitted*).

In response to Plaintiff's argument that *Koyo Seiko Co. v. United States*, 92 F.3d 1162 (Fed. Cir. 1996) requires Commerce to fairly request information before resorting to adverse inferences (Dkt 24, at 32), Defendant simply concludes, without explanation, that Plaintiff's "reliance is misplaced." [Dkt. 30, at 36].

Plaintiff's reliance is not misplaced. The Federal Circuit in *Koyo* said: "Koyo correctly states that unless the requisite information has been fairly requested, it is inappropriate to take recourse to secondary evidence such as the best information that can be gleaned from other sources." *Koyo Seiko Co.*, 92 F.3d, at 1165 (*citing Olympic Adhesives, Inc. v. United States*, 899 F.2d 1565, 1572-75 (Fed. Cir. 1990)). While the *Koyo* court ultimately ruled against the plaintiff on that issue, it did so

because: "[I]t is sufficiently clear that Commerce requested from Koyo

cost data for all bearings that continued to be subject to the

antidumping duty order after use to make finished products in the

United States. Koyo appears to have understood what was needed…"

*Id*.

    *Koyo* is not the only case to identify this rule. *See Ta Chen*, 1999

WL 1001194 at 12 (Ct. Int'l Trade 1999) (remanding where Commerce

did not provide the respondent with a remedial opportunity to place

certain information on the record.); *and Usinor Sacilor v. United States*,

19 CIT 711, 745 (Ct. Int'l Trade 1995) ("Commerce's failure to provide

plaintiffs with notice pertaining to the absence of information that

would have allowed the ITA to ascertain the likely effects of [France]'s

subsidy programs deprived plaintiffs of their right to participate in the

investigation below, and renders Commerce's determination

unsupported by substantial evidence and otherwise contrary to law.")

    Therefore, unless Commerce provided notice of the deficiency and

an opportunity to clarify or supplement the record, its determination is

contrary to law and unsupported by substantial evidence. This is the

case in the instant matter: Plaintiff submitted that its products were

expressly excluded from the AD Order due to the use of citric acid as preservative, thus arguing circumvention inquiry was precluded; Commerce issued Request for Information to the inquiry Respondents without soliciting any information regarding to citric acid or preservation; Respondent's response to the Request for Information stated that citric acid was used during production. Commerce never followed up about the citric acid's preservative function. Under *Koyo* and *SMA Surfaces*, if Commerce truly deems Respondents' responses deficient, it has the obligation to request further information. Commerce cannot fail to act and then fault Plaintiff and Respondents for lack of record evidence.

### d. Commerce Did Not Provide Notice Or An Opportunity To Cure

Unlike *Koyo*, here, Commerce did not request from Plaintiff (or from the mandatory respondents) any information related to the purpose of citric acid in the manufacturing process:

> If the role of citric acid were as important to Green Garden's circumvention argument as it now claims, Green Garden should have provided that rebuttal information without a direct instruction from Commerce to do so. Commerce was not required to ask respondents about the purpose of citric acid in their production process; rather, to the extent respondents felt that their product fell within a specific

> scope exclusion, it was incumbent on the respondents to
> provide evidence establishing this point.

[Dkt. 30, at 37].

It would also be unreasonable to assume that Plaintiff and the other respondents were aware that there was any perceived lack of evidence on the record as to citric acid's preservative properties; nonetheless, Commerce waited until the Final Determination to state that there was insufficient evidence regarding preservation by citric acid. *See* Appx1027. Prior to Commerce's Final Determination, Plaintiff and Respondents believed that the record contained (and in fact, the record does contain) sufficient information regarding preservation by citric acid.

While Commerce again relies on its position that "Green Garden wrote that '{the respondents} questionnaire responses contain no information about the purpose or function of citric acid," this out-of-context quote is not an admission that Plaintiff knew that Commerce would find the responses to be deficient. *See* Dkt. 30, at 25. Nor is it an admission that Commerce fairly requested the requisite information, or that Plaintiff knew Commerce wanted particular additional information regarding citric acid. The record shows that

23

Commerce made no determination that information regarding citric acid was deficient until the Final Determination. *See* Appx1027.

Again, Plaintiff made this statement in a limited context. Plaintiff had argued and provided evidence in its circumvention inquiry comments that the Inquiry Merchandise was preserved by citric acid. Appx1051-1054. At the time, Plaintiff had no indication that Commerce felt this evidence was not sufficient to make a determination. After the time to comment had expired, an interested party attempted to attack these arguments and evidence in a comment to the questionnaire responses. *See* Appx2492. Plaintiff correctly pointed out that the arguments were directed not at the questionnaire responses, but rather at the circumvention inquiry comments; thus the interested party's comment should be removed from the administrative record as untimely. *See* Appx2490-2492. Plaintiff did not argue that the questionnaire responses were deficient, nor did Plaintiff allege that its circumvention inquiry comments were deficient.

Additionally, when Commerce rejected the interested party's comments as untimely, it made no mention of record deficiencies related

to citric acid.[7] Appx2490. Commerce merely agreed that the arguments were untimely directed at information in the circumvention inquiry comments. *Id.* It was not until the Final Determination that Commerce concluded that there was insufficient evidence. *See* Appx1027. As such, Commerce did not provide Plaintiff and respondents with notice of any deficiency before making the Final Determination, nor did it provide them with any opportunity to cure.

Therefore, Commerce's determination was unsupported by substantial evidence and contrary to law. Commerce did not claim insufficient evidence regarding the purpose of citric acid until its Final Determination. It did so without any notice or opportunity to remedy this supposed deficiency. Commerce's only response is a claim that it had no obligation to give Plaintiff or any respondent an opportunity for a cure – a claim which is refuted by the case law. As such, Commerce

---

[7] For the sake of clarity, while Commerce did determine that "[respondents'] questionnaire responses contain no information about the purpose or function of citric acid," thus the interested party's comments were untimely, Commerce did not say that the respondents' questionnaire responses were deficient or that the record was lacking sufficient evidence regarding the function or purpose of citric acid. *See* Appx2490. Commerce even acknowledges that Plaintiff made "comments regarding the issue that garlic chunks are preserved by adding citric acid." *Id.*

should fail on this issue and judgment should be granted for the Plaintiff.

e. *Plaintiff Exhausted Its Administrative Remedies.*

Defendant attempts to defeat the merits of Plaintiff's argument by claiming that Plaintiff failed to exhaust administrative remedies. [Dkt. 30, at 31]. In doing so, Defendant misunderstands two important arguments that Plaintiff made: 1) that Commerce applied adverse inferences without any notice or formal findings; 2) that Commerce applied adverse inferences only in making its Final Determination.

In its brief, Plaintiff alleges that Commerce applied adverse inferences without any finding that "either Plaintiff or Inquiry Respondents failed to cooperate by not acting to the best of their abilities." [Dkt. 24, at 31]. Therefore, Commerce did not announce, and consequently did not notify Plaintiff, that it intended to use adverse inferences. Defendant responds that "Green Garden did not present any argument to Commerce regarding the alleged improper application of adverse inferences." [Dkt. 30, at 32].

It would not have been possible for Plaintiff to present such an argument to Commerce because Plaintiff had no notice of Commerce's

intent to use adverse inferences.  By the time Commerce had tacitly

applied adverse inferences, it was already too late. Commerce made the

adverse inferences in its Final Determination, making it impossible for

Plaintiff to have addressed them in its administrative case brief.

Consequently, Plaintiff's only recourse was to file the current

action. Commerce's adverse inferences were made without warning and

only appeared in Commerce's Final Determination, after which an

administrative remedy was impossible. In misunderstanding Plaintiff's

arguments, Defendant fails to refute these contentions. Therefore,

Defendant's exhaustion argument should be rejected.

## III. Defendant's Substantial Evidence Rebuttal on Minor Alteration Is Unpersuasive And Relies On *Ex Post Facto* Justifications

If the Court finds that Commerce is precluded from conducting

circumvention inquiry because the Inquiry Merchandise is expressly

excluded from the AD Order, the Court shall not consider Commerce's

Minor Alteration analysis. If the Court does not grant judgment in favor

of Plaintiff on *Wheatland* grounds, then the following reply shall be

considered.

While Defendant-Intervenor is correct that this Court will uphold a decision of less than ideal clarity, it is a "fundamental principle of administrative law that agency action must be upheld on the basis articulated by the agency, and not by *post hoc* rationalizations of counsel." *ILWU Loc. 142 v. Donovan*, 10 C.I.T. 161, 164 (Ct. Int'l Trade 1986) (*Citing Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). Plaintiff is also in agreement that, to be upheld, Commerce's path must be "reasonably discerned." *See* Dkt. 32, at 15 (*citing Motor Vehicle Manufacturers Ass'n*, 463 U.S., at 43).

However, in arguing that Commerce's Final Determination on the minor alteration issue is supported by substantial evidence, Defendant's justifications are unpersuasive. Additionally, Defendant addresses Plaintiff's arguments at times by using *post hoc* justifications which do not appear in the administrative record. These considerations are improper and should be rejected.

a. *Expectations Of The Ultimate Users.*

Commerce reached its determination in part because "[t]he Order specifically states that the Inquiry Merchandise is used principally as a

food product and for seasoning," and "the primary use of small and large garlic chunks is for making roasted garlic powder… dips, mashes, and salads." Appx1011.

Plaintiff argued in its brief that the reduction in size of chunked garlic is a "factor that determines this product's uses and distinguishes these products from in-scope products," and that this factor was not properly considered. [Dkt. 24, at 35]. Plaintiff argued that, instead, Commerce's oversimplified analysis "declares that all garlic products used as a 'food product or seasoning' are substantially similar."[8] Additionally, Plaintiff argued that Commerce ignored evidence that the ITC report from the underlying investigation identified uses for whole

---

[8] Commerce contends that this is a misstatement of the findings. [Dkt. 30, at 41]. Plaintiff believes that this is a fair characterization, given that Commerce's findings reflect the Petitioners' Request For Circumvention Inquiry, where Defendant-Intervenor made a near identical argument. *See* Appx1011 ("The Order specifically states that "{t}he subject merchandise is used principally as a food product and for seasoning." Therefore, we preliminarily find that the expectations of the ultimate user and the use of the merchandise for inquiry merchandise are the same as in-scope fresh garlic…"), *compare* Appx2038 ("The Order's scope specifically provides that '{t}he subject merchandise is used principally as a food product and for seasoning.' Green Garden's noted use of large and small "garlic chunks" – making roasted garlic powder, i.e., a seasoning – is therefore consistent with the use of all fresh garlic covered by the scope.")

garlic cloves, which could not be substituted by garlic chunks. *Id.*, at 35-36.

In response, Defendant first represents that it relied on "marketing materials" when considering this factor, as well as a finding that "inquiry garlic is, similarly to subject garlic, sold to industrial users, restaurants, and for purchase in retail establishments." [Dkt. 30, at 40] (citation modified). This is contrary to the record, which shows that Commerce considered this evidence in relation to "Channels of Marketing and Distribution," not "Expectation of the Ultimate Users and Use of the Merchandise." Appx1011. Defendant cannot use *post hoc* rationalization to make an argument that Commerce did not make on the administrative record. In any case, these marketing materials will be discussed in detail below.

Defendant then proceeds to admit that Commerce "did not specifically address the ITC report from the underlying investigation." [Dkt. 30] at 40. While Defendant tries to justify this failure by discussing the context of the ITC report, this amounts to another *post hoc* rationalization of Commerce's decision that did not appear on the record. *Id*. Even so, the additional quotations provided by Defendant do

not detract from Plaintiff's point that garlic chunks are incapable of being used in applications where whole garlic cloves are required, whether for aesthetic, culinary, or other purposes; this renders their uses and user expectations fundamentally different.

Defendant then responds to Plaintiff's argument that Commerce's determination overgeneralizes garlic food products and seasoning, declaring them all to be substantially similar. [Dkt. 30, at 41]. Defendant merely reiterates Commerce's position that fresh garlic could be reasonably substituted with Inquiry Merchandise. *Id*. This is a misreading of the questionnaire responses, which repeatedly state that whole garlic and cloves can be used in place of garlic chunks, but that in many cases, garlic chunks cannot be used in place of whole garlic and cloves. *See e.g.* Appx2417-2419.

Additionally, Commerce's line of reasoning deprives the scope language of its meaning. The scope of the Order covers only garlic that is "whole or separated into constituent cloves." *See* 59 Fed. Reg. 59209 (November 16, 1994). Garlic used as a "food product or seasoning," however, encompasses virtually every form of garlic. Using Commerce's

logic, all downstream processed forms of garlic are minorly altered. This cannot be.

While it is true that whole garlic and garlic chunks can be further processed in similar ways to fresh garlic – that is, into dips, mashes, salads, and powder – garlic chunks cannot be used in applications which require whole garlic or whole cloves. Commerce treats the ability to substitute chunked garlic with whole garlic in downstream processing as dispositive, but provides no authority to support this conclusion.

Because Commerce's argument does not logically flow from the evidence that it cited, and because Defendant relies on *ex post facto* justifications, Defendant's argument should be rejected.

  b. *Marketing And Channels of Distribution*

In its brief, Plaintiff recounts its prior arguments that the channels of marketing and distribution of the Inquiry Merchandise are different from whole fresh garlic because they cater to different consumer bases. [Dkt. 24] at 36. It was in the Preliminary Determination that Commerce first found that the Inquiry Merchandise was sold to "industrial users, restaurants, and for purchase at retail

establishments." Appx1011. In its comments to Commerce's Preliminary Determination, Plaintiff had addressed incorrect assumptions by Commerce and argued that garlic chunks are not sold in supermarkets, grocery stores, or restaurants. Appx2578. Plaintiff's brief also cited evidence that the garlic chunks are sold in 35 to 50 pound bulk bags to institutional users, to whom the visual appearance of the garlic is immaterial. [Dkt. 24] at 36 (*citing* Appx1062).

In the Final Determination, Commerce stated:

> We find Green Garden's arguments related to these factors unconvincing. Commerce previously addressed arguments related to these factors in the Preliminary Determination and, for the purposes of this final determination, continues to find that record evidence supports a conclusion that small and large garlic chunks are minorly altered and are circumventing the Order, ...the channels of marketing and distribution for inquiry merchandise are the same as fresh garlic.

Appx1034-1035. Therefore, Commerce did not address Plaintiff's arguments in the Final Determination. It merely incorporated by reference the reasoning of the Preliminary Determination, and concluded that this factor favors circumvention. Thus, Commerce's determination is not supported by substantial evidence as it failed to

address these arguments and evidence in its Final Determination. *Id*. at 37.

Defendant's brief responds to Plaintiff's with more *post hoc* justification. Specifically, Defendant contends that other record evidence conflicts with Plaintiff's information, and claims that it "reasonably afford more weight to respondent-specific evidence." [Dkt. 30 at 42-43]. These arguments were not made in Commerce's Final Determination, nor are they responsive to Preliminary Determination comments made by Plaintiff, which rebutted this reasoning. As such, the Court should not consider Defendant's arguments from outside the administrative record.

Even so, Plaintiff's unaddressed comments explain the flaws in Defendant's argument. Defendant cites to the Preliminary Determination at Appx1027 to say "The petitioners provided marketing materials to demonstrate that {inquiry garlic} is generally used in the same applications as fresh garlic and that it is similarly sold to industrial users, restaurants, and for [retail] purchase…" [Dkt. 30 at 42]. Plaintiff previously pointed out that Petitioners' marketing materials are not specific to garlic chunks, but rather IQF garlic

34

generally, which the evidence shows is "...available in whole cloves, nuggets, diced into 4mm pieces, or as a frozen puree…" *See* Appx2578; *quotation from* Appx2183; *see also* Appx1032. Therefore, petitioners' marketing materials say little about how garlic chunks are actually marketed.

Regarding marketing materials from the respondents, Defendant claims in its brief that the materials do not "differentiate between fresh garlic and inquiry garlic, while making differentiations between sliced and diced forms of other vegetables." [Dkt. 30, at 42].

A review of the cited materials, Appx1920 and Appx2442, shows that Commerce's assumptions based on these materials are incorrect. While it is true that the materials feature "garlic" and "garlic cloves" which are not described as "sliced," "diced," or "chunked," it is not true that the materials uniformly differentiate between sliced and diced forms of other vegetables. In Appx1920, "Garlic" is shown alongside sliced peaches, apricots, pineapple, broccoli, and peppers, which are similarly not described as "sliced," "diced," or "chunked." On Appx2442, "Garlic Clove" is paired with sliced green onions, green beans, broccoli, and cauliflower, none of which are described as "sliced," "diced," or

"chunked." The differentiation between sliced and unsliced versions of vegetables is totally random and says nothing about the channels of marketing and distribution of these products.

Additionally, both respondents repeatedly answered in their questionnaire responses that they do not market garlic chunks ("diced garlic"). *See*, *e.g.*, Appx2430-2431, Appx1799-1800. Rather, they receive purchase orders from customers and produce the garlic products in accordance with those purchase orders. Appx2430 and Appx1800. Because these respondents do not market garlic chunks, it would be nonsensical to include garlic chunks in their marketing materials.

Therefore, Commerce's determination on this factor is not based on substantial evidence. Commerce did not address Plaintiff's comments in its Final Determination, and it is not permitted to do so after the fact. Even so, Commerce's reasoning relies on misreadings of the cited materials, and its conclusion does not logically flow from these materials.

c. *Commerce Did Not Address Whether Cutting Into Chunks Adds Significant Value*

In its brief, Plaintiff took issue with Commerce's cost of modification analysis, in which Commerce determined that "the lower

grade garlic used for diced garlic provides no added value to the merchandise…" [Dkt. 24, at 41]; *quote from* Appx1012. Plaintiff's Preliminary Determination comments on this issue went unaddressed in the Final Determination. Appx2579; *compare* Appx1034-1035.

Plaintiff's primary issue with Commerce's conclusion is that it is nonsensical. Petitioners first argued that garlic chunks are generally less expensive than whole garlic and cloves. Appx2038. Plaintiff rebutted that the lower cost was attributable to a value of raw input, but that the chopping nonetheless added significant value to the raw input. Appx1063. Commerce then requested information regarding whether the cost of modification, that is, the cost to chop garlic cloves into chunks, adds value to the finished merchandise. *See e.g.* Appx1798. Plaintiff and respondents proffered evidence that the modification adds significant value to the raw input, upwards of 21.3%. *See e.g. Id.* Then, in making its determination, and without notice, Commerce considered the low value input as the modification under review, not the chopping of garlic into chunks. Appx1012.

Now in its brief, Defendant tries to backpedal and claim that Commerce considered "the totality of modifications; …both the

increased cost of modification due to additional labor, machinery, and
equipment costs, as well as the reduced cost of modification due to the
use of a cheaper input…" [Dkt. 30, at 44]. This argument does not
appear in either the Preliminary nor the Final Determination.

Therefore, not only is this justification unpersuasive, it is also *ex
post facto*, and should not be considered. Even so, this argument lacks
merit because Commerce provides no reasoning from which the Court
can discern its decisional path. Commerce agrees that using lower
quality garlic reduces the cost of the finished product. [Dkt. 30, at 44].
Commerce agrees that chopping the garlic increases the cost of the
finished product. *Id*. What Commerce does not explain, even after the
fact, is 1) why using low value inputs constitutes a modification;[9] and 2)
why the reduced value of the raw inputs nullifies the value added
through chopping. Because Commerce provides no reason and no
authority for these conclusions, its decision on this factor should be
rejected.

---

[9] It is notable that the grade of garlic used has no impact on the scope of
the Order, which covers "...all grades of garlic…" Appx1135. Therefore it
is not reasonable to consider low grade garlic inputs to be a
"modification" in the meaning of an anti-convention inquiry; it would be
futile to attempt to circumvent the scope of the Order by "modifying"
the merchandise with a lower grade of garlic.

## IV. Conclusion

To conclude, judgement should be granted in favor of the Plaintiff for three reasons: first, Commerce did not consider whether the Inquiry Merchandise was expressly excluded from the scope of the Order because of preservation by citric acid; second, Commerce ignored evidence and applied adverse inferences without notice or an opportunity to cure; third and finally, Commerce's arguments in support of its minor alterations analysis are unpersuasive and rely on reasoning of counsel after the fact. Therefore, Commerce's Final Determination is unsupported by substantial evidence and is otherwise contrary to law. As such, Plaintiff respectfully requests that this Court rule in its favor.

Dated: September 10, 2025

Respectfully submitted,

**LIANG + MOONEY, PLLC**
/s/ Shanshan Liang
Shanshan Liang, Esq.
Fla. Bar No. 112991
2104 Delta Way, Suite #1
Tallahassee, FL 32303
Telephone: (850) 893-0670
Email: sliang@customscourt.com
*Counsel for Plaintiff Green Garden Produce, LLC*

## Certificate of Compliance with Word Limitation

I hereby certify that the document contains 6,824 words, excluding the parts of the document that are exempted from the word count, and therefore is in compliance with the word limitations set forth in this Court's Chambers Procedures.

Executed: September 10, 2025

/s/ Shanshan Liang
Shanshan Liang, Esq.

## CERTIFICATE OF SERVICE

A true and accurate copy of the foregoing was electronically filed on September 10, 2025, via the Court's ECF filing system, which automatically serves notice on counsel of record.

/s/ Shanshan Liang
Shanshan Liang, Esq.