**Slip Op. 26-51**

## UNITED STATES
## COURT OF INTERNATIONAL TRADE

─────────────

### Court No. 24-00114

─────────────

GREEN GARDEN PRODUCE, LLC,

*Plaintiff*,

v.

UNITED STATES,

*Defendant*,

and

FRESH GARLIC PRODUCERS ASSOCIATION
and its individual members,

*Defendant-Intervenors.*

─────────────

Before: M. Miller Baker, Judge

## OPINION

[Remanding Commerce's circumvention determination for reconsideration.]

Dated: May 15, 2026

*Shanshan Liang*, Liang & Mooney, PLLC, Tallahassee, FL, on the briefs for Plaintiff.

*Isabelle Aubrun*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, on the briefs for Defendant. Of counsel for Defendant was *Fee Pauwels*, Attorney,

**Ct. No. 24-00114**                                              **Page 2**

Office of Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, Washington, DC.

*John M. Herrmann* and *Joshua R. Morey*, Kelley Drye & Warren LLP, Washington, DC, on the briefs for Defendant-Intervenors.

   *Baker*, Judge: An antidumping order covers garlic cloves from China that are not preserved by other ingredients. An importer buys garlic chunks from that country. Everyone agrees that the pieces are outside the scope of that order because they're smaller than whole cloves.

   The Department of Commerce found that cutting cloves into pieces is a minor alteration that circumvents the order. The importer disagrees, contending that such processing is a material change to the garlic.

   It also argues that its evidence shows that its chunks are preserved by an extra ingredient. The importer asserts that the order expressly excludes such preserved garlic. If that's right, then the agency's circumvention decision cannot stand because any change that brings a good within a duty order's exclusion is a substantial alteration.

   The court holds that Commerce failed to adequately explain itself as to either issue and therefore remands for reconsideration.

I

The Tariff Act of 1930, as amended, allows Commerce to impose an antidumping duty on a "class or kind" of imported merchandise if it "finds that the merchandise reflects unfair pricing . . . and the [International Trade Commission] finds material injury to the domestic industry." *Canadian Solar, Inc. v. United States*, 918 F.3d 909, 917 (Fed. Cir. 2019) (citing 19 U.S.C. § 1673(1)). The duty order must "include 'a description of the subject merchandise, in such detail as [the agency] deems necessary.'" *Id.* The statute "defines 'subject merchandise' as 'the class or kind of merchandise that is within the scope of . . . an order under this subtitle.'" *Id.* (quoting 19 U.S.C. § 1677(25)).

But "whether a particular product is subject to or falls within the scope of an antidumping or countervailing duty order" is not always self-evident. *Fedmet Res. Corp. v. United States*, Slip Op. 24-136, at 3, 2024 WL 5088294, at *1 (CIT 2024) (cleaned up), *appeal pending*, No. 26-1160 (Fed. Cir.). By regulation, a producer, importer, or other interested party uncertain whether a duty order covers a commodity may ask Commerce to open a "scope inquiry" to clarify the decree's terms. *Id.*; *see generally* 19 C.F.R. § 351.225(a).[1]

---

[1] "This device is roughly analogous to the procedure by which a party uncertain of its rights or obligations may seek a declaratory judgment in federal court." *Fedmet*, Slip

(footnote continues on next page)

Ct. No. 24-00114                                    **Page 4**

In such a proceeding, the Department may not alter the existing boundaries of a duty order. *See Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1097 (Fed. Cir. 2002) ("Although the scope of a final order may be clarified, it cannot be changed in a way contrary to its terms.") (cleaned up).

Whatever the perimeter of a duty order, foreign producers have every incentive to "mak[e] minor alterations to products . . . in an effort to take [them] outside of the literal scope." *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1370 (Fed. Cir. 1998). To combat this type of circumvention of antidumping and countervailing duty laws, Congress enacted 19 U.S.C. § 1677j(c)(1).[2] It allows Commerce to determine "that certain types of articles are within the scope of a duty order, even when the articles do not fall within the order's literal scope." *Deacero S.A. de C.V. v. United*

---

Op. 24-136, at 3 n.1, 2024 WL 5088294, at \*1 n.1 (citing 28 U.S.C. § 2201). The Department may also self-initiate such an inquiry. *See* 19 C.F.R. § 351.225(b).

[2] "The class or kind of merchandise subject to" an antidumping or countervailing duty order "shall include articles altered in form or appearance in minor respects (including raw agricultural products that have undergone minor processing), whether or not included in the same tariff classification." 19 U.S.C. § 1677j(c)(1).

*States*, 817 F.3d 1332, 1337 (Fed. Cir. 2016); *see also* 19 C.F.R. § 351.226(j).[3]

In such an inquiry, the Department can extend a duty order to cover articles outside of its compass "as a result of a minor alteration to merchandise covered in the investigation." *Deacero*, 817 F.3d at 1338. It cannot, however, so extend an order to an article "expressly exclud[ed]" by that order. *Id.* (citing *Wheatland*, 161 F.3d at 1369–70). A modification to an article that brings it within an express exclusion "amount[s] to more than [an] 'insignificant alteration[ ] to an existing product.'" *Id.* (quoting *Nippon Steel Corp. v United States*, 219 F.3d 1348, 1356 (Fed. Cir. 2000)).

Although scope and circumvention proceedings are distinct, Commerce may collapse them together. *See* 19 C.F.R. § 351.225(d)(2) (authorizing the agency to address a scope application "in . . . a circumvention inquiry under § 351.226 . . . rather than initiating a scope inquiry"); *id.* § 351.225(i)(1) ("[T]he Secretary

---

[3] In a scope inquiry, the Department "may consider such criteria including, but not limited to, the overall physical characteristics of the merchandise (including chemical, dimensional, and technical characteristics), the expectations of the ultimate users, the use of the merchandise, the channels of marketing[,] and the cost of any modification relative to the total value of the imported products." 19 C.F.R. § 351.226(j).

**Ct. No. 24-00114**                                                **Page 6**

may, but is not required to, address scope issues in . . . a circumvention inquiry under § 351.226 . . . .").

## II

### A

In 1994, Commerce imposed an antidumping duty order on certain garlic from China. *See* 59 Fed. Reg. 59,209. The subject merchandise comprises

> all grades of garlic, *whole or separated into con-stituent cloves*, whether or not peeled, fresh, chilled, frozen, provisionally preserved, or packed in water or other neutral substance, *but not prepared or preserved by the addition of other ingredients* or heat processing. The differences between grades are based on color, size, sheath-ing, and level of decay. The scope of this Order does not include the following: (a) garlic that has been mechanically harvested and that is primar-ily, but not exclusively, destined for non-fresh use; or (b) garlic that has been specially pre-pared and cultivated prior to planting and then harvested and otherwise prepared for use as seed. The subject merchandise is used princi-pally as a food product and for seasoning.

Appx1023 (emphasis added). In a later scope inquiry, the Department clarified that any cutting or trimming of garlic cloves "beyond peeling" takes them out-of-scope. Appx1121.

Ct. No. 24-00114                                          Page 7

B

Green Garden Produce, LLC, imports two sizes of "peeled, trimmed, blanched, and individually quick-frozen garlic chunks coated with citric acid" from China. Appx1070–1071. Its large chunks are "three-fourths (¾) of a garlic clove with the two ends . . . trimmed off." Appx1071. Its small chunks are made by cutting its large ones into "four equal pieces." *Id.*

In 2023, Green Garden applied for a scope ruling on both types. Appx1068. It contended that its chunks fall within the order's exception—which the importer characterized as an exclusion—for garlic "preserved by the addition of other ingredients" because they are coated with citric acid. Appx1079. It also asserted that its chunks are out-of-scope because they are "reduced in size beyond constituent cloves." Appx1079–1080.

After the opening of Green Garden's scope inquiry, a group of domestic growers, the Fresh Garlic Producers Association, asked Commerce to begin a "circumvention inquiry with respect to *those same products*." Appx2032 (emphasis added). According to the Association, the importer's chunks are just minor alterations to otherwise-covered garlic cloves. Appx2037. The Department deferred this request pending resolution of the scope proceeding. Appx2224.

Commerce thereafter found Green Garden's chunks out-of-scope. Appx1348. The agency stated that "garlic cloves reduced in size beyond peeling are not covered."

*Id.* It reasoned that "[t]he plain language of the scope does not specify any size or particular level of smallness to which the garlic must be reduced beyond the whole or constituent clove of garlic to be considered outside the scope." Appx1348–1349. The Department also found it unnecessary to consider the importer's other theory—that the order excludes its chunks because they are coated with a preservative, citric acid. Appx1320.[4]

On the same day Commerce found Green Garden's chunks out-of-scope, it opened the Association's requested circumvention inquiry. Appx2247. The agency defined the "inquiry merchandise" by repeating verbatim the *importer's* description of its products in its scope application. *See* Appx1009.

Green Garden answered the Association's circumvention allegation. Appx1045. Among other things, the importer asked Commerce "to resolve" the theory the agency ducked in the scope proceeding—that the order excludes garlic chunks preserved with citric acid. Appx1051.

In support of that request, Green Garden appended its previous scope application. *See* Appx1047 n.1. It "restat[ed]" the arguments made in that filing. Appx1051. Citing the Federal Circuit's decisions in *Wheatland* and *Deacero*, the importer contended that

[4] Neither Green Garden nor any other interested party filed suit in this court to contest the scope ruling.

"[m]inor alteration inquiries are inappropriate when the antidumping duty order expressly excludes the allegedly altered product." *Id.* "Therefore, if the addition of citric acid results in the products being expressly excluded from the scope of the Order, the minor alteration inquiry must end." *Id.*

Commerce ignored Green Garden's request that it take up the scope issue and went ahead with the circumvention inquiry on a countrywide basis.[5] Appx2246. The agency selected two exporters, Fenjun and Hengxin,[6] as mandatory respondents[7] representative of all other Chinese producers because they had

---

[5] The relevant regulation allows the Department to apply a circumvention finding "on a country-wide basis to all products from the country at issue" that have either the same or similar "relevant physical characteristics, . . . regardless of producer, exporter, or importer." 19 C.F.R. § 351.226(m)(1)(ii), (iii).

[6] Fenjun Foodstuff Co., Ltd., and Qingdao Deeshenghengxin Food Co., Ltd. Appx1757.

[7] In antidumping duty investigations and administrative reviews, "mandatory respondents are presumed representative of the non-selected respondents." *PrimeSource Bldg. Prods., Inc. v. United States*, 111 F.4th 1320, 1331 (Fed. Cir. 2024). Commerce made such a finding here. *See* Appx1012 ("[The two mandatory respondents] accounted for a majority of the inquiry merchandise . . . . Accordingly, we find that [they] are representative of the experience of other producers and exporters of small and large garlic chunks.").

Ct. No. 24-00114                                    Page 10

the highest export volume of garlic based on Customs
data. Appx1757–1762.

Both reported that their processing applies citric
acid to garlic. Appx1782–1783, Appx1792, Appx1796
(Fenjun); Appx2413, Appx2422, Appx2426 (Hengxin).[8]
Neither, however, gave a reason for doing that.

Green Garden did not file any rebuttal to their sub-
missions.[9] A domestic producer, I Love Produce, no-
tionally did so. Green Garden and the two mandatory
respondents then asked the Department to strike the
filing because it did not respond to either Fenjun's or
Hengxin's reporting. Instead, according to the three
objectors, the challenged document "sought to dis-
credit *Green Garden's* claim that its products are pre-
served by adding another ingredient (i.e., citric acid)."
Appx2456 (emphasis added).

The agency agreed and rejected I Love Produce's fil-
ing as an untimely rebuttal to Green Garden's com-
ments. Appx2490–2491, Appx2492. Commerce then is-
sued supplemental questionnaires to Fenjun and

---

[8] They both also stated that they produce diced garlic, not
garlic chunks. Appx1771 (Fenjun); Appx2401 (Hengxin).
That distinction is immaterial here. Both forms of the prod-
uct are out-of-scope because they represent cutting up
whole cloves to some degree beyond peeling. *See* Appx1121.

[9] The importer's silence is unsurprising given that the
same law firm represented all three entities. *See*
Appx2455.

Ct. No. 24-00114                                            Page 11

Hengxin; their responses again did not address why they used citric acid. Appx1027 (agency memo noting that neither the companies' initial nor supplemental questionnaire responses addressed "the purpose or function of citric acid").[10]

Without acknowledging Green Garden's renewed scope request and the lurking exclusion issue, the Department preliminarily determined that Chinese exporters as a group were circumventing the duty order through minor alterations to otherwise in-scope garlic cloves. Appx1006. The agency based this tentative conclusion on its factual findings about the 19 C.F.R. § 351.226(j) factors:

- Diced garlic's overall physical characteristics are identical to in-scope garlic cloves "except in terms of . . . size." Appx1010–1011.

- Customers use diced and whole garlic cloves for the same food seasoning purposes. Appx1011.

- The respondents' marketing materials do not differentiate between diced and whole garlic cloves, whereas for other vegetables they do distinguish sliced from whole varieties. *Id.*

---

[10] The Department did not specifically request such information. *See* ECF 24, at 29–30 (Green Garden brief stating that "neither citric acid, preservatives, nor additives were addressed by Commerce in the questionnaires . . . .").

Ct. No. 24-00114                                Page 12

- Diced garlic has the same channels of marketing and distribution as in-scope garlic. *Id.*

- Finally, the "cost of modification relative to total value" is small. *Id.*

In commenting on the preliminary determination, Green Garden observed that the Department did not address its request that the agency find that the order excludes the inquiry merchandise because it is coated with citric acid, a preservative. Appx2573. The importer again reiterated its arguments for that proposition. Appx2573–2574. It also argued that for purposes of the 19 C.F.R. § 351.226(j) factors, cutting up garlic cloves is a major alteration. Appx2576–2579.

In its final determination, Commerce for the first time considered whether the order excludes garlic pieces coated with citric acid. It observed that the two respondents had not explained the function of this substance in their own production processes. Appx1026–1027. Therefore, "the record does not support a finding that small and large garlic chunks are preserved by the addition of other ingredients." *Id.* The Department did acknowledge, however, that Green Garden contended "that citric acid is used to preserve" these products. Appx1027. The agency summarily dismissed that contention by asserting that the importer only raised this issue in its comments on the preliminary determination. *Id.*

Finally, Commerce addressed Green Garden's contention that cutting garlic cloves into chunks is not a "minor alteration." Appx1032–1035. In response, the Department simply referred to its preliminary determination and called the company's objections "unconvincing." Appx1034.

## III

Invoking jurisdiction conferred by 28 U.S.C. § 1581(c), Green Garden brings this suit under 19 U.S.C. § 1516a(a)(2)(A)(ii) and (a)(2)(B)(vi) challenging the Department's final determination of circumvention. The Association intervened as a defendant. The parties have fully briefed the importer's motion for judgment on the agency record, which is ripe for disposition.

In § 1516a(a)(2) actions, "[t]he court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). The question is not whether the court would have reached the same decision on the same record. Rather, it is whether the administrative record as a whole permits Commerce's conclusion:

> Substantial evidence has been defined as more than a mere scintilla, as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. To determine if substan-

tial evidence exists, we review the record as a whole, including evidence that supports as well as evidence that fairly detracts from the substantiality of the evidence.

*Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (cleaned up); *see also SSIH Equip. S.A. v. U.S. Int'l Trade Comm'n*, 718 F.2d 365, 382 (Fed. Cir. 1983) (if Commerce makes a choice between "two fairly conflicting views," the court may not substitute its judgment even if its view would have been different "had the matter been before it *de novo*") (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

The court also reviews to ensure the agency engaged in "reasoned decisionmaking," meaning its result must be "within the scope" of its authority and "the process" it uses to reach that outcome "must be logical and rational." *Michigan v. EPA*, 576 U.S. 743, 750 (2015). The agency must "examine the relevant data and articulate a satisfactory explanation . . . including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (cleaned up). But courts will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Id.*

IV

A

Green Garden attacks Commerce's conclusion that the inquiry merchandise—the same garlic chunks identified in the importer's scope application—is not expressly excluded by the order's scope language. Recall that the Department based that finding on the absence of any record evidence of the purpose of the citric acid used by Fenjun and Hengxin. *See* Appx1027. According to Green Garden, its scope application that is on this record shows that its suppliers—including the two mandatory respondents—use that substance as a preservative. *See* ECF 24, at 21–31. It pummels the Department for ignoring that evidence and falsely asserting that Green Garden waited until commenting on the preliminary determination to "claim[ ] that citric acid is used to preserve small and large garlic chunks." Appx1027.

The government does not defend that assertion—nor could it. Instead, it offers new reasons to justify Commerce's failure to consider the evidence in Green Garden's scope application. That alone requires a remand for the Department to consider the importer's submission. Under the doctrine of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), "courts may not accept . . . counsel's *post hoc* rationalizations for agency action." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168–69 (1962). The Department's exercise of discretionary authority may be "upheld, if at all, on the

Ct. No. 24-00114                                    Page 16

same basis articulated in the order by the agency it-
self." *Id.*

In any event, the government's principal (new) jus-
tification does not withstand scrutiny. The govern-
ment contends that in this context of a country-wide
inquiry, the Department properly focused on the infor-
mation provided by Fenjun and Hengxin "in the prep-
aration of comparable subject merchandise." ECF 30,
at 25.[11] But the Department didn't limit its considera-
tion to *their* information. As discussed below, the
agency also relied on evidence submitted by the Asso-
ciation in connection with the 19 C.F.R. § 351.226(j)
factors.

In any event, that Commerce deemed the two man-
datory respondents as representative of Chinese pro-
ducers generally didn't excuse it from its obligation to
at least consider record evidence submitted by inter-
ested parties that detracts from its finding. *See CS*

---

[11] "Indeed," the government contends, "Green Garden itself
acknowledged this fact when it requested the rejection" of
I Love Produce's submission about the purpose of citric acid
because it was not responsive to Fenjun and Hengxin's an-
swers to the questionnaires. *Id.* But the importer did not
contend that the filing was irrelevant to the circumvention
inquiry; far from it. Instead, it argued that because it ad-
dressed *Green Garden's* evidence rather than the respond-
ents' answers, it was untimely. *See* Appx2457. Commerce
agreed. *See* Appx2491 (rejecting the submission as "un-
timely filed as [it] should have been filed within 14 days of"
Green Garden's response to the circumvention allegation).

*Wind Vietnam Co. v. United States*, 832 F.3d 1367, 1373 (Fed. Cir. 2016) ("The substantiality of evidence must take into account whatever in the record fairly detracts from its weight."); *cf. Shelter Forest Int'l Acquisition, Inc. v. United States*, 497 F. Supp. 3d 1388, 1399, 1402 (CIT 2021) (finding an abuse of discretion when the Department refused to consider voluntarily submitted information from a non-selected company and the rejection was "likely to lead to an inaccurate and punitive result"), *aff'd*, 2022 WL 2155965, at \*\*6–7 (Fed. Cir. 2022) (noting the CIT correctly found that rejecting the information was an abuse of discretion). On remand, the Department must at least consider Green Garden's evidence that the latter characterizes as showing that Chinese producers generally—including its suppliers Fenjun and Hengxin[12]—use citric acid to preserve garlic chunks.

Finally, the government's alibi fails for a third reason. Circumvention was not the only issue on the table. Green Garden asked Commerce to take up the

---

[12] The government erroneously argues that "Green Garden did not argue that the evidence it submitted applied to the respondents' production processes." ECF 30, at 28. The importer points out that its scope application on this record stated that its suppliers include Fenjun and Hengxin. *See* ECF 35, at 14 & n.5 (citing Appx1074–1075); *see also* Appx1781 (Fenjun questionnaire response stating, "Green Garden will provide entry documents demonstrating that the actual exporters were Fenjun's customers"), Appx2412 (Hengxin response saying same).

Ct. No. 24-00114 Page 18

exclusion theory that the agency dodged in deciding the earlier scope proceeding. As explained above, the relevant regulation authorized the Department to consider that (related) scope question in the circumvention inquiry. *See* 19 C.F.R. § 351.225(d)(2), (i)(1).[13]

Commerce, though, arbitrarily ignored Green Garden's request. On remand, it must entertain the theory that the agency circumvented (pun intended) in the scope proceeding—that the order expressly excludes the importer's garlic chunks because they are preserved with citric acid. Or it must provide a reasonable justification for declining to do so. What it cannot do is what it did here—use a circumvention inquiry to make a back-door scope ruling while arbitrarily turning a blind eye toward the scope applicant's contrary evidence.

Finally, the government argues that Green Garden's scope application does not show that the respondents or Chinese producers generally use citric acid to preserve garlic chunks. ECF 30, at 29–30. On remand, the Department can address this post hoc rationale in the first instance. Similarly, it can consider the Association's contention that the scope language the importer relies on does not expressly and unambig-

---

[13] Because the importer so raised the scope question in the circumvention inquiry as the regulations permit, the court has jurisdiction to address it. This action, therefore, does not represent an untimely challenge to the Department's failure to take up the issue in its scope proceeding.

uously exclude garlic chunks preserved with citric acid. *See* ECF 32, at 10–13. The court, of course, expresses no view on these questions.

\*   \*   \*

In the circumvention inquiry, Green Garden asked Commerce to find that the order excludes its garlic chunks—which *were* the inquiry merchandise—because they are preserved with citric acid. The Department sidestepped that question, just as it did in the earlier scope proceeding. On remand, the agency must entertain it or provide a reasonable justification for not doing so. And even if it gives such a justification, it must still address the importer's argument that its evidence shows that producers of inquiry merchandise use citric acid as a preservative and therefore such goods are excluded.

B

Green Garden challenges Commerce's finding that the inquiry merchandise—small and large garlic chunks—is "altered in form or appearance in such minor respects" that it should be included within the scope of the order. Appx1034. In making that determination, the Department considered the non-exclusive factors enumerated by regulation. *See* 19 C.F.R. § 351.226(j).

*Overall physical characteristics*: The importer appears not to dispute the Department's conclusion that

Ct. No. 24-00114                                        **Page 20**

Fenjun and Hengxin's diced garlic has the same physical characteristics as garlic cloves except size. *See* Appx1010–1011 (preliminary decision); *see also* Appx1034–1035 (finding Green Garden's arguments "unconvincing" and reiterating the preliminary determination's findings in summary form); ECF 24, at 34 (importer's brief, not disputing the point and instead arguing that garlic size affects the other relevant factors). The court therefore presumes that the agency's "overall physical characteristics" finding is supported by substantial evidence. *See* 28 U.S.C. § 2639(a)(1) (in this court, agency action "is presumed to be correct" and challengers to such action have the "burden of proving otherwise").

*Expectations of ultimate users and use of merchandise*: The agency said the Association's evidence showed that out-of-scope garlic chunks are primarily used to make roasted garlic powder. Appx1011. Fenjun and Hengxin, for their part, reported that full cloves could be substituted for their diced garlic used for making powder or puree. *Id.* Observing that the antidumping duty order states that the subject merchandise "is used principally as a food product and for seasoning," the Department found that the expectations of the ultimate users and the use of the merchandise were the same for both in-scope cloves and Fenjun and Hengxin's diced garlic. *Id.*

Green Garden argues that other evidence on the record that Commerce failed to consider detracts from

that conclusion. It cites an International Trade Commission report saying that in some applications, whether a garlic clove is cut up matters for appearance and other reasons. ECF 24, at 35–36. As a result, the importer contends, the garlic chunks are not substitutable for the cloves covered by the order. *Id.*

The government argues that even though the Department did not "explicitly cite" the Commission's report, its "decisional path is reasonably discernable." *See* ECF 30, at 40–42. In that regard, the government observes that an agency need not explicitly address every piece of evidence when the path to its conclusion is apparent. *Id.* at 38–39 (citing *Wheatland*, 161 F.3d at 1369–70). And the Association argues that Green Garden simply asks the court to re-weigh the evidence. *See* ECF 32, at 19.

The government is correct that "an agency adjudicator . . . need not address every piece of evidence in the record," but it overlooks that "the failure to do so risks a remand if such evidence is susceptible of a fair inference that detracts from the agency's conclusion." *Commc'ns Workers of Am. Local 4123 ex rel. Former Emps. of AT&T Servs., Inc. v. U.S. Sec'y of Labor*, 518 F. Supp. 3d 1342, 1352–53 (CIT 2021) (citing *Novartis AG v. Torrent Pharms. Ltd.*, 853 F.3d 1316, 1328 (Fed. Cir. 2017)). Here, the Commission report fairly detracts from the Department's conclusion about user expectations and the use of inquiry merchandise.

Ct. No. 24-00114                                    Page 22

Commerce chose to ignore it. Remand is thus required for the agency to reconsider this § 351.226(j) factor.

*Channels of marketing and distribution*: Citing the Association's evidence and the respondents' reporting, Commerce determined that garlic chunks "have the same channels of marketing and distribution as in-scope . . . garlic." Appx1011.

Green Garden argues that its evidence contradicts this finding. ECF 24, at 35–36. The government responds that Commerce reasonably placed greater weight on the respondents' information. ECF 30, at 43.

The problem, once again, is that the bare-bones nature of the Department's analysis gives no indication that it even considered any of the importer's evidence. As with its discussion of user expectations and use of the merchandise, its preliminary analysis of channels of marketing and distribution consisted of a single paragraph citing submissions from the Association and Fenjun and Hengxin but not mentioning any of Green Garden's arguments. *See* Appx1011. And its final determination consisted of the same conclusory paragraph noted above in which it simply stood by its preliminary conclusions. *See* Appx1034. The government may be correct that Commerce "afforded more weight" to the evidence it cited—but it also might not be. The Department's silence means there is no way to know, thus requiring remand for reconsideration of the channels of marketing and distribution.

*Cost of modification relative to total value*: The final enumerated factor under the regulation is "the cost of any modification relative to the total value of the imported products." 19 C.F.R. § 351.226(j). Fenjun and Hengxin stated that if they used the same grade of garlic that they use for their whole cloves, their diced garlic would cost around 20 percent more because of higher production costs. Appx1798 (Fenjun); Appx2428 (Hengxin). But they explained that their use of lower-grade garlic to make the diced version means that product costs less than whole cloves. *Id.*

Commerce found that the "lower grade garlic used for [the] diced" version "provides no added value to the merchandise." Appx1012. Thus, it concluded, the cost of modification relative to total value "supports a finding that the inquiry merchandise is minorly altered." *Id.* In effect, the Department treated the use of lower-grade cloves to make diced garlic as part of the modification (along with the dicing).

Green Garden argues that if Commerce had compared the lower-grade garlic's *pre-modification* sales price to that of *diced garlic*, it would have found significant value added, "as much as 21.3%." ECF 24, at 38. The government responds that the agency permissibly found that the record evidence showed that using a lower grade brought "the price of inquiry garlic below that of whole garlic cloves." ECF 30, at 43. "In total, the modifications led to a reduced cost of inquiry garlic when compared to subject fresh garlic." *Id.* at 44.

Ct. No. 24-00114                                    Page 24

The government's arguments miss the mark. The duty order applies to "*all grades of garlic*, whole or separated into constituent cloves." 59 Fed. Reg. at 59,209 (emphasis added). Fenjun's and Hengxin's use of lower-grade cloves to make their diced product is not a *modification* of the in-scope clove, in contrast to the dicing itself.

The regulation instructs the Department to consider "the cost of any modification relative to the total value of the imported products." 19 C.F.R. § 351.226(j). The question, then, is whether the modification—the dicing—creates a significant difference in value between the imported diced garlic and the in-scope (and low-grade) clove inputs used to make it. The question is not whether the cost of modification *plus* the cost of the lower-grade garlic is less than the sales price of higher-grade cloves. *Cf.* Appx1012 ("[T]he price of diced garlic is slightly cheaper than garlic cloves."). Lower-grade garlic is still in-scope "subject merchandise" under the order's plain terms.

Commerce's finding that "the lower grade garlic used for diced garlic provides no added value to the merchandise" fails to answer the question the regulation instructs the agency to address. The court therefore remands for reconsideration of this factor as well.

**Ct. No. 24-00114**                                                  **Page 25**

*    *    *

The court remands for further proceedings consistent with this opinion.

Dated:  May 15, 2026          /s/ *M. Miller Baker*
        New York, NY          Judge